# EXHIBIT

# "A"

 # Service of Process Transmittal

10/15/2018
CT Log Number 534221556

**TO:** Julianne Blanchette
Starwood Waypoint Homes
1717 Main St Ste 2000
Dallas, TX 75201-4657

**RE:** **Process Served in Georgia**

**FOR:** Primestar Fund I TRS, Inc. (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Oni Roberts, Pltf. vs. BANK OF AMERICA, CORPORATION, et al., Dfts. // To: PrimeStar Fund I TRS, Inc. |
| **DOCUMENT(S) SERVED:** | Summons, Affidavit, Complaint, Attachment(s), Exhibit(s) |
| **COURT/AGENCY:** | DeKalb County Superior Court, GA<br>Case # 18CV10026 |
| **NATURE OF ACTION:** | Foreclosure Litigation - Mortgage |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Lawrenceville, GA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 10/15/2018 at 10:25 |
| **JURISDICTION SERVED :** | Georgia |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after service, exclusive of the day of service |
| **ATTORNEY(S) / SENDER(S):** | Oni Roberts<br>5371 Charity Way<br>Stone Mountain, GA 30083<br>404-518-6496 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 10/15/2018, Expected Purge Date: 10/20/2018<br><br>Image SOP<br><br>Email Notification, Julianne Blanchette julianne.blanchette@invitationhomes.com<br><br>Email Notification, Legal Department legal@invitationhomes.com<br><br>Email Notification, Kimberly Gardner kim.gardner@invitationhomes.com<br><br>Email Notification, Brian Neighbarger bneighbarger@invitationhomes.com |
| **SIGNED:** | C T Corporation System |
| **ADDRESS:** | 289 S Culver St.<br>Lawrenceville, GA 30046-4805 |
| **TELEPHONE:** | 214-932-3601 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Oni Roberts, Case No.: 18CV10026

Plaintiff

VS

CT Corporation System
for PrimeStar Fund I TRS, Inc.

289 S. Culver Street

Lawrenceville, GA 30046-4805 (Gwinnett County)
Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ________________ day of ________________, 20________.

Honorable Debra DeBerry
Clerk of Superior Court

By________________________
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of DeKalb County

**For Clerk Use Only**

Date Filed ______________ MM-DD-YYYY Case Number ______________

**Plaintiff(s)**

Roberts Oni

Last First Middle I. Suffix Prefix

Last First Middle I. Suffix Prefix

Last First Middle I. Suffix Prefix

Last First Middle I. Suffix Prefix

**Defendant(s)**

Bank of America Corporation; Fay Servicing, LLC

Last First Middle I. Suffix Prefix

US BanCorp a/k/a US Bank National Association

Last First Middle I. Suffix Prefix

StateBridge Company, LLC; PrimeStar Fund I TRS, Inc.

Last First Middle I. Suffix Prefix

Wilmington Savings Fund Society, FSB; Brett J. Chaness Esq

Last First Middle I. Suffix Prefix

**Plaintiff's Attorney** Oni Roberts Propria Persona **Bar Number** ______________ **Self-Represented** ☒

**Check One Case Type in One Box**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☒ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
- ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

16CV5275 ______________
Case Number Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. ______________
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

______________

## General Civil and Domestic Relations Case Filing Information Form

☒ Superior or ☐ State Court of DeKalb County

For Clerk Use Only

Date Filed ______ MM-DD-YYYY Case Number ______

**Plaintiff(s)**

| Last | First | Middle I. | Suffix | Prefix |
|---|---|---|---|---|
| Roberts | Oni | | | |
| | | | | |
| | | | | |
| | | | | |

**Defendant(s)**

Bank of America Corporation; Fay Servicing, LLC

Last First Middle I. Suffix Prefix

US BanCorp a/k/a US Bank National Association

Last First Middle I. Suffix Prefix

StateBridge Company, LLC; PrimeStar Fund I TRS, Inc.

Last First Middle I. Suffix Prefix

Wilmington Savings Fund Society, FSB; Brett J. Chaness Esq

Last First Middle I. Suffix Prefix

Plaintiff's Attorney Oni Roberts Propria Persona Bar Number ______ Self-Represented ☒

**Check One Case Type in One Box**

**General Civil Cases**

- ☐ Automobile Tort
- ☐ Civil Appeal
- ☒ Contract
- ☐ Garnishment
- ☐ General Tort
- ☐ Habeas Corpus
- ☐ Injunction/Mandamus/Other Writ
- ☐ Landlord/Tenant
- ☐ Medical Malpractice Tort
- ☐ Product Liability Tort
- ☐ Real Property
- ☐ Restraining Petition
- ☐ Other General Civil

**Domestic Relations Cases**

- ☐ Adoption
- ☐ Dissolution/Divorce/Separate Maintenance
- ☐ Family Violence Petition
- ☐ Paternity/Legitimation
- ☐ Support – IV-D
- ☐ Support – Private (non-IV-D)
- ☐ Other Domestic Relations

**Post-Judgment – Check One Case Type**

- ☐ Contempt
  - ☐ Non-payment of child support, medical support, or alimony
- ☐ Modification
- ☐ Other/Administrative

☐ Check if the action is related to another action(s) pending or previously pending in this court involving some or all of the same parties, subject matter, or factual issues. If so, provide a case number for each.

16CV5275 ______
Case Number Case Number

☒ I hereby certify that the documents in this filing, including attachments and exhibits, satisfy the requirements for redaction of personal or confidential information in O.C.G.A. § 9-11-7.1.

☐ Is an interpreter needed in this case? If so, provide the language(s) required. ______
Language(s) Required

☐ Do you or your client need any disability accommodations? If so, please describe the accommodation request.

______

______

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Oni Roberts, ______________________ Case No.: ______________

______________________

______________________

Plaintiff

VS

CT Corporation System
Bank of America Corporation

289 Culver Street

Lawrenceville, GA 30046-4805 (Gwinnett County)

Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ________________ day of ________________, 20________.

Honorable Debra DeBerry
Clerk of Superior Court

By________________________

Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Oni Roberts, ______________________ Case No.: ______________

______________________

______________________

Plaintiff

VS

Registered Agent Solutions, Inc,
for Fay Servicing . LLC

900 Old Roswell Lakes Parkway, Ste.310

Roswell, GA 30076 (Fulton County)

Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This __________________day of ________________, 20________.

Honorable Debra DeBerry
Clerk of Superior Court

By______________________
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Oni Roberts, ______________ Case No.: ______________

______________

______________

Plaintiff

VS
CT Corporation System, Inc.
for US BanCorp, a/k/a US Bank National Association

1010 Dale St., N.

St. Paul, MN 55117-5603
Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):
You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ______________ day of ______________, 20________.

Honorable Debra DeBerry
Clerk of Superior Court

By______________
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Oni Roberts, ______________________ Case No.: ______________

______________________

______________________

Plaintiff

VS

Incorp Services, Inc.
for StateBridge Company, LLC

2000 Riveredge Parkway, N.W., Suite 885

Atlanta, GA 30328

Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This __________________ day of ________________, 20________.

Honorable Debra DeBerry
Clerk of Superior Court

By__________________________
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Oni Roberts, ______________________ Case No.: ______________

______________________

______________________

Plaintiff

VS

Wilmington Savings Fund Society, FSB

500 Delaware Avenue

Wilmington, DE 19801

Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ________________ day of ________________, 20________.

Honorable Debra DeBerry
Clerk of Superior Court

By______________________
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

Oni Roberts, Case No.: ____________

____________

____________

Plaintiff

VS
Brett J. Chaness, Esq.
Rubin Lublin Law Office

3145 Avalon Place, Suite 100

Peachtree Corners, GA 30071
Defendant

# SUMMONS

TO THE ABOVE NAMED DEFENDANT(S):
You are hereby summoned and required to file electronically with the Clerk of said court at https://efilega.tylerhost.net/ofsweb and serve upon the Plaintiff's attorney, whose name, address and email is:

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

An answer to the complaint which is herewith served upon you, within 30 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

This ____________ day of ____________, 20________.

Honorable Debra DeBerry
Clerk of Superior Court

By____________
Deputy Clerk

E-Filing and E-Service

Pursuant to the Superior Court of DeKalb County's E-File Order, dated December 27, 2016, and available at www.dksuperiorclerk.com/civil, the parties must file all documents electronically through eFileGA unless expressly exempted under the Rule. All orders and notices from the Court will be electronically filed and served through eFileGA. The parties must register for an eFileGA account, link their service contact information with the case and the party represent, and take whatever steps are necessary to ensure that correspondence from eFileGA reaches the parties' inboxes. To access eFileGA, please go to http://www.odysseyefilega.com/

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum sheet is used.

DEKALB COUNTY SUPERIOR COURT

STATE OF GEORGIA

Oni Roberts,
Plaintiff,

vs. Bank Of America Corporation, Fay Servicing, LLC, PrimeStar Fund I TRS, INC, Wilmington Savings Fund, FSB, US BanCorp aka US Bank National Association, Bret Chaness Esq. StateBridge Company, LLC
Defendant.

Civil Action

Case Number 18CV10026

# AFFIDAVIT OF POVERTY

I am the ☒ Plaintiff ☐ Defendant in this case. I am filing this *Affidavit of Poverty* under OCGA § 9-15-2, to ask that I be relieved from paying the court costs.

I hereby swear or affirm, before a notary public, that the following information is true:

1.

Because I am indigent, I am unable to pay the filing fee, service fee, and other costs which are normally required in the court.

2.

My income comes from the following sources: *[Check all that apply.]*

☐ Earnings from my job ☒ Other work ☐ Social Security or SSI ☐ Unemployment benefits
☐ VA benefits ☐ Disability Insurance or Worker's Compensation ☐ Child Support
☐ TANF ☐ Pension or Retirement Benefits ☐ Alimony ☒ Help from family or friends

3.

My average gross income (before taxes) is $ 780.00 per month; my net income (after taxes) is $ 625.50 per month.

In addition to my own income, my other family members living with me have a total income of $ N/A per month.

4.

I have $ 178.28 in my savings account(s), and $ 402.18 in my checking account(s).

5.

The amount of my rent or mortgage payment is $ N/A per month.

*[Check one of these:]* ☐ I am current on my payments. ☒ I am N/A months in arrears.

6.

I pay $ N/A per month in child support, alimony or other support to other family members who do not live with me.

7.

I support the following dependents who live with me: N/A

8.

I have the following special financial circumstances:

☐ I do not have any income of any kind, and I am paying my expenses in the following way:

☒ I have a bankruptcy going on or just recently completed. The court case number for my bankruptcy is: 18-65399 PMB.

☒ Other (explain): I am recently divorced as of 7/24/2018 (see attached) DeKalb County Superior Case # 18-FM 5981-9 I Am Currently getting back on my feet from the bankruptcy and divorce.

☒ Plaintiff ☐ Defendant *(Check & sign here)*

Subscribed and sworn before me on October 2018

Notary Public

Janet Diane McDonald
NOTARY PUBLIC
DeKalb County
State of Georgia
My Commission Expires February 13, 2022

*prose Affid of Poverty Rev App'd 8-2010.wpd*

10/12/2018

To the Honorable Superior Court Judge.

I, Oni Roberts do not have any utility bills in my name. I Am recently divorced as of July 24/2018 and have been dismissed from my Bankruptcy Case.

Regarding Bank accounts. I have been working with a Cash App account, aswell as Venmo, and Paypal. They do not provide Statements.

I Am Just now recovering from Surgery on June 13, 2018. I will be solidyfing employment this month. I have been working on my case during recovery and this Case is Complete with all supporting evidence not Included in previous cases.

Sincerly,

[signature]



**IT IS ORDERED as set forth below:**

**Date: October 10, 2018**

Paul Baisier

**Paul Baisier**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| In re: | CASE NUMBER |
|---|---|
| **TWANISHA ONI ROBERTS,** | **18-65399-PMB** |
| Debtor. | CHAPTER 13 |

**ORDER (I) DENYING DEBTOR'S**
**MOTION TO EXTEND STAY AND (II) DISMISSING CASE**

This matter comes before the Court on a pleading filed by the Debtor referenced above (the "Debtor") entitled *Emergency Motion* (Docket No. 18)(the "Motion") on October 9, 2018. In the Motion, the Debtor seeks to extend the automatic stay in this case, as it is her second bankruptcy case filed within the last year. The Debtor asserts in the Motion that she filed this case in good faith, and requests additional time to obtain counsel to assist her in the prosecution of this case.

As noted in the Motion, the Debtor has a prior bankruptcy case that was dismissed within the twelve (12) month period that preceded the filing of this case, Case No. 18-50881-PMB (the "Prior Case"). In fact, the order of dismissal in the Prior Case (Prior Case, Docket No. 31)(the

"Dismissal Order") was entered with a finding under 11 U.S.C. § 109(g), rendering the Debtor ineligible to file another Chapter 13 case for a period of 180 days from the date of the Dismissal Order. The Dismissal Order was entered on April 10, 2018 and this case was filed on September 13, 2018; accordingly, the Debtor filed this case only 156 days after the Dismissal Order in violation of the Section 109(g) finding in the Dismissal Order.

Moreover, for the automatic stay of this case to be extended pursuant to 11 U.S.C. § 362(c)(3)(B), the Debtor must show that she filed this case in good faith. The fact that this case was filed in violation of the Section 109(g) finding of the Dismissal Order, however, suggests a lack of good faith on the part of the Debtor.

Upon consideration of the foregoing, it is hereby

**ORDERED** that the Motion is **DENIED**. And it is further

**ORDRED** that this case is **DISMISSED**.

The Clerk is directed to serve a copy of this Order upon the Debtor, the Chapter 13 Trustee, the United States Trustee, and all parties on the mailing matrix in this case.

**[END OF DOCUMENT]**



GEORGIA
CORPORATIONS DIVISION

GEORGIA SECRETARY OF STATE
BRIAN P. KEMP

HOME (/)

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | PRIMESTAR FUND I TRS INC. | Control Number: | 15001743 |
| Business Type: | Foreign Profit Corporation | Business Status: | Revoked |
| Business Purpose: | NONE | | |
| Principal Office Address: | 8665 East Hartford Dr, Suite 200, Scottsdale, AZ, 85255, USA | Date of Formation / Registration Date: | 1/6/2015 |
| Jurisdiction: | Delaware | Last Annual Registration Year: | 2017 |
| Dissolved Date: | 09/07/2018 | | |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | C T Corporation System |
| Physical Address: | 289 S Culver St, Lawrenceville, GA, 30046-4805, USA |
| County: | Gwinnett |

### OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| Arik Prawer | CFO | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |
| Fred Tuomi | CEO | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |
| Ryan Berry | Secretary | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |

Back Filing History Name History

Return to Business Search

**IN THE SUPERIOR COURT OF DEKALB COUNTY**
**STATE OF GEORGIA**

| | | |
|---|---|---|
| **PRIME STAR FUND 1 TRS, INC.,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **File No.:** 16CV5275 -2 |
| **ONI ROBERTS,** | ) | |
| **Defendant.** | ) | |

**ORDER GRANTING MOTION TO PROCEED IN FORMA PAUPERIS**

The Court has reviewed Defendant's Motion to Proceed In Forma Pauperis and upon review of the Defendant's Affidavit and other pleadings it appears to the Court that the affiant is unable to pay the filing fees and associated costs of this action. The court approves the petition to file in forma pauperis at this time, but if, upon further information, the court determines that Defendant does not qualify, costs may be assessed at the court's discretion.

SO ORDERED this 2nd day of May, 2016.

Asha F. Jackson
JUDGE ASHA F. JACKSON
DeKalb County Superior Court
Division 2

STONE MOUNTAIN JUDICIAL CIRCUIT SUPERIOR COURT DEKALB COUNTY, GA

State of Georgia, DeKalb County,
The undersigned officer of DeKalb Superior Court certifies that this is a true and correct copy of the original document which is on file and of record in the Office of the Clerk of Superior Court. Witness my hand and seal of the Superior Court of DeKalb County Georgia.
This 29 day of Aug. 2016
Signature
Deputy Clerk, DeKalb County Superior Court

SCANNED



FILED 7/24/2018 9:42 AM Clerk of Superior Court DeKalb County

IN THE SUPERIOR COURT OF DEKALB COUNTY
STATE OF GEORGIA

| | |
|---|---|
| SHAWN WILLIAMS, Plaintiff | ) CIVIL ACTION |
| vs. | ) FILE NO. 18FM5981-9 |
| TWANISHA ONI BAKER, Defendant. | ) |

FINAL JUDGMENT AND DECREE OF DIVORCE

The above-styled divorce action came before the Court on a Domestic Calendar on July 24, 2018.

Upon consideration of this case, upon evidence submitted as provided by law, it is the judgment of the Court that a total divorce be granted, that is to say, a divorce *a vinculo matrimonii*, between the parties to the above stated case upon legal principles.

It is considered, ordered, and decreed by the Court that the marriage contract heretofore entered into between the parties to this case, from and after this date, be and is set aside and dissolved as fully and effectually as if no such contract had ever been made or entered into. Plaintiff and Defendant, formerly husband and wife, in the future shall be held and considered as separate and distinct persons altogether unconnected by any nuptial union or civil contract, whatsoever, and both shall have the right to remarry.

The Settlement Agreement Without Minor Children between the parties filed on June 7, 2018 is hereby incorporated into this decree.

The costs of these proceedings are taxed against the Plaintiff.

The Defendant is restored to her former name, to wit: Twanisha Oni Baker

SO ORDERED this 24 day of JULY, 2018.

WINSTON P. BETHEL, JUDGE
SITTING BY DESIGNATION FOR
MARK ANTHONY SCOTT, JUDGE
STONE MOUNTAIN JUDICIAL CIRCUIT

cc: Shawn Williams, Pro Se
Twanisha Oni Baker, Pro Se

CLERK OF SUPERIOR COURT DEKALB COUNTY, GA
2018 OCT 12 PM 4:10
FILED

IN THE SUPERIOR COURT OF DEKALB COUNTY
State of Georgia

| | | |
|---|---|---|
| Oni Roberts, | § | |
| Plaintiff | § | |
| v. | § | |
| BANK OF AMERICA, CORPORATION; | § | Civil Action |
| FAY SERVICING, LLC; | | |
| US BANCORP; | § | File No. ________________ |
| STATEBRIDGE COMPANY, LLC; | § | |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, (As Trustee for the Prime Star – H Fund I Trust); | § | ***JURY TRIAL DEMANDED*** |
| PRIMESTAR FUND, I TRS, INC; | § | |
| BRET J. CHANESS, Esq; | § | |
| Defendants | § | |

VERIFIED EMERGENCY PETITION FOR TEMPORARY RESTRAINING ORDER AND/OR INTERLOCUTORY INJUNCTION

COMES NOW, Plaintiff, Oni Roberts, ("Plaintiff" or "Ms. Roberts"), who respectfully files her ***Verified Emergency Petition for Temporary Restraining Order/Interlocutory Injunction***, pursuant to Uniform Superior Court Rule 6.7[1], and O.C.G.A. §9-11-65(b) against the listed Defendants, and shows this Honorable as follows:

§ 9-11-65. Injunctions; restraining orders:

[1] Upon written notice and good cause shown, the assigned judge may shorten or waive the time requirement applicable to emergency motions, except motions for summary judgment, or grant an immediate hearing on any matter requiring such expedited procedure. The motion shall set forth in detail the necessity for such expedited procedure.

Uniform Superior Court Rule 6.7, GA R UNIF SUPER CT Rule 6.7; Current with amendments received through May 1, 2018. (Ga. Unif. Super. Ct. R. 6.7).

FILED 10/12/2018 3:56 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

IN THE SUPERIOR COURT OF DEKALB COUNTY
State of Georgia

| | | |
|---|---|---|
| Oni Roberts, | § | |
| Plaintiff | § | |
| v. | § | |
| BANK OF AMERICA, CORPORATION; | § | Civil Action |
| FAY SERVICING, LLC; | | |
| US BANCORP; | § | File No. 18CV10026 |
| STATEBRIDGE COMPANY, LLC; | § | ***JURY TRIAL DEMANDED*** |
| WILMINGTON SAVINGS FUND SOCIETY, FSB, (As Trustee for the Prime Star – H Fund I Trust); | § | |
| PRIMESTAR FUND, I TRS, INC; | § | |
| BRET J. CHANESS, Esq; | § | |
| Defendants | § | |
| | § | |

**VERIFIED EMERGENCY PETITION FOR TEMPORARY RESTRAINING ORDER AND/OR INTERLOCUTORY INJUNCTION**

COMES NOW, Plaintiff, Oni Roberts, ("Plaintiff" or "Ms. Roberts"), who respectfully files her ***Verified Emergency Petition for Temporary Restraining Order/Interlocutory Injunction***, pursuant to Uniform Superior Court Rule 6.7[1], and O.C.G.A. §9-11-65(b) against the listed Defendants, and shows this Honorable as follows:

§ 9-11-65. Injunctions; restraining orders:

---

[1] Upon written notice and good cause shown, the assigned judge may shorten or waive the time requirement applicable to emergency motions, except motions for summary judgment, or grant an immediate hearing on any matter requiring such expedited procedure. The motion shall set forth in detail the necessity for such expedited procedure.

Uniform Superior Court Rule 6.7, GA R UNIF SUPER CT Rule 6.7; Current with amendments received through May 1, 2018. (Ga. Unif. Super. Ct. R. 6.7).

> (b) Temporary restraining order; when granted without notice; duration; hearing; application to dissolve or modify. A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if:
>
> (1) It clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and
>
> (2) The applicant's attorney certifies to the court, in writing, the efforts, if any, which have been made to give the notice and the reasons supporting the party's claim that notice should not be required.
>
> Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance, shall be filed forthwith in the clerk's office and entered of record, and shall expire by its terms within such time after entry, not to exceed 30 days, as the court fixes, unless the party against whom the order is directed consents that it may be extended for a longer period.

Ga. Code Ann. § 9-11-65 (West)

## I. JURISDICTION AND VENUE

1. Jurisdiction is proper in DeKalb County Superior Court, pursuant to Ga. Const. 1983, Art. VI, § IV, 11.

2. Jurisdiction is also proper in this Court because it concerns title to real property: "The superior courts ... shall have exclusive jurisdiction ... in cases respecting title to land, ***Setlock v. Setlock***, 286 Ga. 384, 688 SE2d 346 (2010); in divorce cases; and in equity cases".

3. The judges of the superior courts have authority to grant for their respective circuits writs of certiorari, supersedeas, quo warranto, mandamus, habeas corpus, and bail in actions ***ex delicto*** (O.C.G.A. § 15-6-9(1); writs of injunction, prohibition, and ***ne exeat*** (O.C.G.A. § 15-6-9(3))[2], as well as to entertain bills ***quia timet*** (O.C.G.A. § 15-6-9(2));

---

[2] See ***Fuller v. Williams***, 150 Ga. App. 730, 258 S.E.2d 538 (1979); judgment rev'd, 244

Superior Courts correct errors made by lower courts on appeal and have jurisdiction to grant equitable relief.

4.     Venue is proper in this Court, as the subject of this complaint is real property and title thereto; the property is located within DeKalb County.

     II.                                     THE PARTIES[3]

5.     Plaintiff, Oni Roberts during all times relevant has owned and resided at 5371 Charity Way, Stone Mountain, GA 30083.

6.     **Defendant Bank of America Corporation.** ("BAC") during all times relevant has been a Foreign for profit Corporation, the parent of Bank of America, N.A., Bank of America Home Loans Servicing, etc., they are organized and existing under the laws of Delaware; their principal place of business located at 100 North Tryon Street, Charlotte, NC 28255. Service of process will be perfected upon BAC through service upon their **Registered Agent:  CT Corporation System, 289 Culver Street, Lawrenceville, GA 30046-4805, Gwinnett County.**

7.     **Defendant Fay Servicing, LLC,** ("Fay") during all times relevant has been a Foreign Limited Liability Company, organized and existing under the laws of Delaware, with their principal place of business located at 440 S. LaSalle St., 20th Floor, Chicago, IL 60605. Service of process will be perfected upon Fay, through service upon their **Registered Agent: Registered Agent Solutions, Inc., 900 Old Roswell Lakes Parkway,**

---

Ga. 846, 262 S.E.2d 135 (1979); s.c., 153 Ga.App. 282, 266 S.E.2d 806 (1980).

[3] Contemporaneously herewith, Plaintiff has filed a formal complaint against the entities herein, this Emergency Petition is directed only toward the entity attempting to evict Plaintiff, PrimeStar Fund, I TRS, Inc. and their attorneys, agents, etc. and whomever they may use for the eviction.

**Suite 310, Roswell, GA 30076, Fulton County.**

8. **Defendant US Bancorp, a/k/a US Bank National Association** (As Trustee for PROF-2013-53 REMIC Trust, III, ("USB"), during all times relevant has not been registered to do business within the State of Georgia; and is organized and existing under the laws of Delaware. USB will be served through the Registered Agent in Minnesota: **CT Corporation System, Inc., 1010 Dale St. N., St Paul, MN 55117-5603.**

9. **Defendant StateBridge Company, LLC** ("StateBridge") during all times relevant, has been a Foreign Limited Liability Company, organized and existing under the laws of Colorado. Service of process will be perfected upon Statebridge through service upon their **Registered Agent: Incorp Services, Inc., 2000 Riveredge Parkway, N.W., Suite 885, Atlanta, GA 30328.**

10. **Defendant Willmington Savings Fund Society, FSB** (As Trustee for the Prime Star – H Fund I Trust ("WSFS")), during all times relevant has not been registered to do business within the State of Georgia. WSFS is located at **500 Delaware Avenue, Wilmington, DE 19801** where they can be served with process.

11. **Defendant PrimeStar Fund I TRS, Inc** ("Primestar"), during all times relevant has been a Foreign for Profit Corporation organized and existing under the laws of Delaware. Their principal place of business is located at 8665 East Hartford Dr., Suite 20, Scottsdale, AZ 85255. Service of process will be perfected upon Primestar, through their Registered Agent: **CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046-4805 in Gwinnett County.**

12. **Defendant Brett J. Chaness, Esq.** ("Chaness") during all times relevant, has been a partner and a member of the Litigation Department at Rubin Lublin, LLC., which during

all relevant times, was located in Peachtree Corners. Service of process will be perfected upon Chaness by personally serving him at the **Rubin Lublin Law office located at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071.**

13. **Busch White Norton, LLP ("BWN")** and **Baker Donelson** during all times relevant has been a law firm that represented the foreclosing entity.

14. Plaintiff is informed and believes that information and belief alleges, that at all times mentioned in this complaint, defendants were the agents and that their employees were acting within the course and scope of that agency and employment.

15. The Defendants, and each of them, were the agents, employees, representatives, partners, officers, principals and/or joint venturers of each of the remaining defendants, and in doing the things hereinafter alleged, were acting within the scope, course and purpose of such agency, employment or position, or within the apparent scope, course and purpose of such agency, employment or position and with permission and consent of each of the remaining defendants.[4]

## II. BRIEF BACKGROUND

16. On July 25, 2006, Plaintiff purchased the property commonly known as 5371 Charity Way, Stone Mountain, GA 3008 in DeKalb County; the property is more thoroughly described as:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION; AS PRE

---

[4] Whenever, appearing in this complaint, each and every reference to Defendants or to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them unless said reference is specifically qualified.

PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED QT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PUROSE OF INCORPORATING HEREIN.

17. The special Warranty Deed ***EXHIBIT A*** being **Instrument Number 2006-0155444**, and recorded into DeKalb County Georgia Records, **Book 19045, Page 29**, and shows that Deutsche Bank National Trust Company, as Trustee, having sold the property to Oni Roberts, and Forrest G. Roberts, Jr.[5]

18. To fund the purchase of the property, Plaintiff signed a Promissory Note, and Security Deed in favor of Bank of America, N.A., a National Banking Association ***EXHIBIT B***, **Instrument Number 2006-0155445**, and recorded at DeKalb County Georgia Records, **Book 19045, Page 31**; the loan number was **xxxxxx1371**.

19. Litton Loan Servicing, 4828 Loop Central Drive, Houston, TX 77081,was the loan servicer for the alleged Account Number: **xxxx9718**; Plaintiff does not know when, why, or by whom the loan number had been changed.

20. Plaintiff had been denied actual knowledge in violation of state statutes, federal statutes, and FDCPA and RESPA, of the true secured creditor and holder of the note, yet the legal duty to disclose was present.

21. Plaintiff still isn't exactly sure who foreclosed upon her, Looking at the Deed Under Power of Sale ("DUP") ***EXHIBIT C***, recorded 11/13/2015, just exactly who foreclosed is difficult to determine, StateBridge had begun the foreclosure; but the DUP shows:

[5] When the property was purchased, Oni Roberts was married to Forrest G. Roberts, Jr., but has since divorced, and Mr. Roberts is no longer a part of the property, and is not a party in this action.

> "THIS INDENTURE is made as of this 6th day of October, 2015...duly appointed agent and attorney-in-fact, Wilmington Savings Fund Society FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013 Remic Trust III as assignee of Bank of America, N.A., Lender"), with an address of c/o Busch White Norton, LLP, **3300 Cumberland Boulevard, Suite 300, Atlanta, GA 30339** and Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust ("Grantee") with an address of c/o Statebridge Company, LLC, **5680 Greenwood Plaza Blvd., Suite 100, South Greenwood Village, CO 80111.**

22. If you look up the address: **3300 Cumberland Boulevard, Suite 300, Atlanta, GA 30339**, the webpage that comes up, is not for Busch White Norton, LLP, or even for Wilmington Savings Fund Society, FSB, the webpage shows: "Pope & Land Real Estate".

23. The other address, **5680 Greenwood Plaza Blvd., Suite 100, Greenwood Village CO 80111** is shown as "Statebridge Company".

24. Are we to assume that Busch White Norton LLP in reality is Pope & Land Real Estate; and that Wilmington Savings Fund Society in reality is Statebridge Company?

25. One thing is certain, the foreclosure was not what everyone has been told.

26. The DUP goes on to state on page 2:

> "WHEREAS, Lender did expose the hereinafter described property for sale to the highest and best bidder for cash on the first Tuesday in October, 2015 within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb, Georgia, before the Courthouse door un said County and offered said property for sale at public outcry to the highest bidder for cash, when and where Grantee bid **ONE HUNDRED AND NO/100THS DOLLARS ($100.00)**; and
>
> WHEREAS, the aforementioned bid was the highest and best bid, the hereinafter described property was knocked off to Grantee for sum bid by Grantee.;

27. Wilmington Savings Bank Fund Society, FSB and PrimeStar Fund, I TRS, Inc., and their attorneys knowingly, willingly, wantonly, and with malicious intent, acted in bad

faith, and with blatant disregard of Plaintiff's property Rights, Federal Law and Georgia Statutes have perpetrated a fraud; wrongfully foreclosed upon subject real property, and has further, made a mockery of Georgia non-judicial foreclosure laws, claiming that they auctioned the property for $100.00 to the best and highest bidder..

28. Plaintiff has filed, contemporaneously herewith filed her Verified Complaint in addition to this Emergency Verified Petition; which outlines the grounds that the foreclosure had been wrongful, the manner of the sale under power, and other conditions calling for the setting aside of the sale.

29. To the best of Plaintiff's knowledge and belief, and from what she has been able to determine from the DeKalb County Georgia Records, there were several changes in lender/servicer, never recorded, and many question remain unanswered.

30. Without proper notice to Plaintiff, and in fact, while Plaintiff was in the middle of a loan modification, PrimeStar Fund, I TRS, Inc. and their attorneys, and while a promise not to foreclose had been given, Plaintiff was allegedly foreclosed upon and bought and sold at auction for $100.00.

31. Foreclosure by Defendant Wilmington/Statebridge and their attorneys were in violation of not only the Security Deed, and O.C.G.A. §44-14-162, but also in violation and all known non-judicial foreclosure laws.

32. Plaintiff has been alerted that this week, the Sheriff's office is going to evict Plaintiff.

33. As shown in this Emergency Verified Petition, and her Verified Complaint filed contemporaneously herewith; not only were the requirements to conduct a non-judicial sale under power violated, but the property was not called out at auction[6], and claims made that

[6] Plaintiff's neighbor attended the auction the full time and will testify to the facts about the failure to call Plaintiff's property out at auction.

it was auctioned to the highest and best bidder for $100.00.

34. After not being called out at auction, the Deed Under Power created as proof of the foreclosure and sale under power, shows that the property was bought and sold for $100.00.

35. Without intervention by this Court, Plaintiff will wrongfully be evicted from her home this week.

36. These Defendants have knowingly, willingly, wantonly, fraudulently and illegally continued on to foreclose and execute Sale Under Power, while in the middle of a loan modification, but were also in direct violation of The Real Estate Settlement Procedures Act.

MEMORANDUM OF LAW IN SUPPORT OF TEMPORARY RESTRAINING ORDER/INTERLOCUTORY INJUUNCTION

37. Plaintiff incorporates fully and by this specific reference the statements in paragraphs 1 through 36 of this Petition as if stated fully herein.

38. Plaintiff has notified defendants involved, that she has sought an Emergency TRO; see ***EXHIBIT D***, so it is not as if she has not alerted defendants to this action or TRO.

39. Pursuant to O.C.G.A. § 9-11-65(b) holds: "A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if:

> (1) It clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and
>
> (2) The applicant's attorney certifies to the court, in writing, the efforts, if any, which have been made to give the notice and the reasons supporting the party's claim that notice should not be required.

40. Plaintiff has filed a Verified Petition, at the same time she filed her Verified Complaint, both documents are sworn under Oath, which in turn is as an Affidavit.

41. The facts, and evidence shows that the property was not sold at auction, it would

have been impossible for the property to sale for a mere $100.00.

42. The Deed Under Power further shows it is questionable who sold, who bought, and who had a right to either one, especially since Plaintiff had not been properly noticed prior to the Sale Under Power, and while in the middle of a loan modification application.

43. Further, Plaintiff has, within this Verified Petition, shown her efforts to give defendants affected, notice by sending them the entire Verified Petition; See ***Exhibit D***, it is not only Plaintiff's sworn Petition, but also she had a professional FAX a copy to the effected parties.

44. It has been held that

> "A motion for interlocutory injunction or a TRO is an extraordinary motion, which is time sensitive, unlike other motions, because it seeks to preserve the status quo until a full hearing can be held to avoid irreparable harm. If a TRO is granted ex parte, then a hearing for interlocutory injunction must be held within 30 days or the TRO is dissolved as a matter of law. OCGA § 9–11–65(b). There is nothing in either the Civil Practice Act or the USCR that prohibits a trial judge from setting an interlocutory injunction hearing in less than 30 days, because such motion is an extraordinary emergency procedure in law or in equity to protect rights from harm in an emergency created by the respondent.

***Focus Entm't Int'l, Inc. v. Partridge Greene, Inc.***, 253 Ga. App. 121, 123, 558 S.E.2d 440, 443 (2001). See also: ***Stubbs v. Bank of Am.***, 844 F. Supp. 2d 1267, 1269 (N.D. Ga. 2012), wherein the Court held:

> "Georgia courts have long recognized that harm to an interest in land is irreparable due to the "unique character of the property interest." ***Focus Entm't Int'l v. Partridge Greene***, 253 Ga.App. 121, 558 S.E.2d 440, 446 (Ga.Ct.App.2001). The real property interest holds a special place in our legal system as in our society, especially in cases involving the potential loss of that most important, tangible piece of emotional and physical stability—the home".

45. The Focus Court had gone on to teach that foreclosure is one such instance which "injunction is appropriate" because "when an interest in land is threatened with harm",

"such harm is deemed to be irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed." See the following:

> "(a) Land, under Georgia law, is deemed sufficiently unique that it is entitled to equitable remedies to protect such interest in land. ***Rife v. Corbett***, 264 Ga. 871 (455 SE2d 581) (1995) (injunction to protect an easement); ***Benton v. Patel***, 257 Ga. 669, 672 (1) (362 SE2d 217) (1987) (injunction to stop foreclosure); ***Black v. American Vending Co.***, 239 Ga. 632, 634 (2) (238 SE2d 420) (1977) ("the law regards as sufficiently unique that equity will enforce a contract for [land] sale or lease"); ***Clark v. Cagle***, 141 Ga. 703, 705-706 (1) (82 SE 21) (1914) (specific performance of contract to sell land). Therefore, when an interest in land is threatened with harm, equitable injunctive relief is appropriate, because such harm is deemed to be irreparable to the unique character of the property interest, i.e., money damages are not adequate compensation to protect the interest harmed. See generally ***Central of Ga. R. Co. v. Americus Constr. Co.***, 133 Ga. 392, 398 (65 SE 855) (1909) (irreparable injury defined to enjoin a nuisance); see also ***Roth v. Connor***, 235 Ga. App. 866, 868-869 (1) (510 SE2d 550) (1998) (property interests of grantor and others in restrictive covenants for their benefit)."

***Id.***

46. Plaintiff has shown that without an Emergency Order, she will be evicted this week, even though she can show that the foreclosure was wrongful, and violated all of the non-judicial foreclosure statutes imaginable.

47. Plaintiff has been learning more about the foreclosure than she had known in the past, and can finally now, bring the full truth into the Court about what transpired, even though it had long been secreted from her.

48. Plaintiff's Petition is further verified, and Plaintiff has shown that prior to coming to this Court to file this Emergency Verified Petition, she had a professional FAX it to the effected defendants.

49. Plaintiffs Verified Complaint, filed contemporaneously herewith, shows that Defendants have practiced a pattern of refusing to provide Plaintiff with facts, that she is legally entitled to, and in violation of RESPA 2605(e).

50. Defendants' own recorded documents shows that they have perpetrated a fraud upon the Courts to get as far as they have gotten with the numerous violations of statutes and regulations GA has in place to prevent this scenario from taking place.

51. Even though Plaintiff provided credible evidence that she has notified the effected defendants of the Emergency TRO, O.C.G.A.. §9-11-65 allows the Court to grant such Orders without notice to opposition in certain circumstances.

52. Plaintiff being thrown out of her home, while attempting to prove the facts stated within her Verified Complaint, and stated herein, a Verified Petition, would expose Plaintiff to potentially ruinous financial liability, would be cruel and unusual punishment, when all Plaintiff has ever wanted to do, is pay for her home and be left alone.

53. Plaintiff is not one of those that everyone hears about seeking a free house; Plaintiff continues to intend on paying for her home, but without the predatory type of loan, the kind of which caused the housing bubble to burst once already and appears to be going to do so again.

CONCLUSION AND PRAYER FOR RELIEF

Plaintiff, prior to coming to the Court with her Verified Complaint and her Verified Emergency Petition, had a professional send a FAX to the effected Defendants, showing a full, correct, complete copy of this Verified Petition for TRO/Injunction.

Plaintiff has shown that her property allegedly sold for $100.00, while the county property tax shows that the property is worth over $300,000.00. That defendants' actions

were made blatantly in bad faith, with no respect to Plaintiff's rights, and in violation of Georgia foreclosure laws, violations of federal laws, violations of regulations to prevent this very thing from happening.

Plaintiff regrets that this has to be done in an Emergency situation. Plaintiff should not be evicted, and forced to try to bring this to the Courts while living in her car, when the foreclosure should never have happened.

Plaintiff Prays that this Honorable Court will Grant this Emergency Petition, preventing her eviction, and that the Petition will go on to be granted as an Injunction pending the outcome of her Verified Complaint.

Respectfully submitted, this 12th day of October, 2018,

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083
(404) 518-6496

**VERIFICATION AND CERTIFCATION OF SERVICE**

Oni Roberts, having appeared before me, the undersigned notary, who after being duly sworn deposes and says:

I am over the age of twenty-one (21) and competent to testify in this matter, I suffer from no known disabilities, and I make this statement under penalty of perjury, and from first-hand knowledge. I have prepared and reviewed the foregoing Verified Petition, all statements, facts, and Exhibits are true and correct. All Exhibits are true, correct, unaltered copies. If called upon to testify at trial, I will testify exactly as I have herein.

I further Certify that I have, this day also caused to be sent, by a professional, a FAX of this Verified Petition, alerting them that I will be filing the same this day, see Exhibit D.

Oni Roberts

Sworn to and Subscribed Before Me

This 2 day of October, 2018

NOTARY PUBLIC, State of Georgia

My Commission Expires:

Janet Diane McDonald
NOTARY PUBLIC
DeKalb County
State of Georgia
My Commission Expires February 13, 2022

# EXHIBIT A

## Special Warranty Deed

Deed Book 19045 Pg 29
Filed and Recorded Aug-15-2006 08:16am
2006-0155444
Real Estate Transfer Tax $302.00
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

File #5032 / 5371 Charity Way
Oni Roberts

Return to:
Shuping, Morse & Ross, LLP
6259 Riverdale Road
Riverdale, GA 30274
Attn: Reconveyance Dept.

**SPECIAL WARRANTY DEED**

**STATE OF TEXAS**
**COUNTY OF HARRIS**

**THIS INDENTURE** is made the 25th day of ______ July ______, in the year **TWO THOUSAND SIX** between

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE**

as party or parties of the first part, hereinafter called Grantor and

**ONI ROBERTS and FORREST G. ROBERTS, JR.**

as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors, and assigns where the context requires or permits).

**WITNESSETH** that: **GRANTOR**, for and in consideration of the sum of Ten and no/100 Dollars ($10.00) and other valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PURPOSE OF INCORPORATING HEREIN.

**THIS CONVEYANCE** is executed subject to all easements, covenants and restrictions of record.

**TO HAVE AND TO HOLD** the said tract or parcel of land, with all and singular the

**EXHIBIT A - Special Warranty Deed - Page - 001**

Deed Book 19045 Pg 30
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining to the proper use, benefit and behoof of said Grantee forever in **FEE SIMPLE**.

**AND THE SAID GRANTOR WILL WARRANT AND FOREVER DEFEND** the right and title to the above described property unto the said Grantee against the claims of all persons claiming by, through or under Grantor only.

**IN WITNESS WHEREOF**, the Grantor has signed and sealed this deed, the day and year above written.

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE**

By: Stacey Bayley
Name: Stacey Bayley
Title: Vice President
LITTON LOAN SERVICING, LP
By: ATTORNEY-IN-FACT
Name: __________
Title: __________

(CORPORATE SEAL)

Signed, sealed and delivered in the presence of:

Witness Shoemaker Caesar

Notary Public

CAROL C. CHARLTON
MY COMMISSION EXPIRES
APRIL 19, 2010

**EXHIBIT A - Special Warranty Deed - Page - 002**

# EXHIBIT B

## Security Deed

Deed Book 19045 Pg 31
Filed and Recorded Aug-15-2006 08:14am
2006-0155445
Georgia Intangible Tax Paid $906.00
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

Return To: LOAN # 6864351371
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256

RETURN TO:
SHUPING, MORSE & [illegible]
6259 Riverdale Road
Riverdale, GA 30274-1698

Prepared By:
CHRISTINA PAYNE
BANK OF AMERICA, N.A.
9000 SOUTHSIDE BLVD., #600
JACKSONVILLE, FL 322560000

5032
ROBERTS

[Space Above This Line For Recording Data]

LOAN # 6864351371

# SECURITY DEED

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "Security Instrument" means this document, which is dated JULY 25, 2006 , together with all Riders to this document.

**(B)** "Borrower" is ONI ROBERTS AND FORREST G ROBERTS JR., MARRIED

Borrower is the grantor under this Security Instrument.

**(C)** "Lender" is BANK OF AMERICA, N.A.

Lender is a NATIONAL BANKING ASSOCIATION organized and existing under the laws of THE UNITED STATES OF AMERICA .

EXHIBIT B - Security Deed - Page - 001

Lender's address is 9000 SOUTHSIDE BLVD., #600, JACKSONVILLE, FL 322560000

Lender is the grantee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated JULY 25, 2008. The Note states that Borrower owes Lender THREE HUNDRED TWO THOUSAND AND 00/100 Dollars (U.S. $ 302,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 01, 2038.

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

WAIVER OF BORROWER'S RIGHTS AND CLOSING ATTORNEY'S AFFIDAVIT

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and

Initials: [signature]

EXHIBIT B - Security Deed - Page - 002

restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of DEKALB [Name of Recording Jurisdiction]:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF." EXHIBIT "A"

Parcel ID Number: 1601432043 which currently has the address of
6371 CHARITY WAY [Street]
STONE MOUNTAIN [City], Georgia 30083 [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. *Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.* Borrower shall pay when due the principal of, and interest on, the debt evidenced by the

Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the

term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and

Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security

Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with

Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental

EXHIBIT B - Security Deed - Page - 012

protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.**

**Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power**

and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.

EXHIBIT B - Security Deed - Page - 014

7/16/2018

GSCCCA.org - Image Index

Deed Book 19045 Pg    45

BORROWER ACCEPTS AND AGREES to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.
IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

_____ (Seal)                    _____ (Seal)
-Borrower                                   -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                                   -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower                                   -Borrower

_____ (Seal)                    _____ (Seal)
-Borrower              FORREST O ROBERTS JR  -Borrower

STATE OF GEORGIA,          CLAYTON          County ss:
Signed, sealed and delivered in the presence of:

Unofficial Witness

Notary Public,
State of Georgia

-6(GA) (0010)          Page 15 of 15          Form 3011 1/01
EVGA 01/26/05 12:47 PM 6664351371

EXHIBIT B - Security Deed - Page - 015

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PURPOSE OF INCORPORATING HEREIN.

7/16/2018                                   GSCCCA.org - Image Index

GEORGIA -

GRANTOR: OKI ROBERTS

Deed Book 19045 Pg 47
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

LENDER:  BANK OF AMERICA, N.A.

DATE OF SECURITY DEED:  07/25/06

## WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_____    _____ (Seal)
                                      OKI ROBERTS          —Grantor

_____    ✓ _____ JR (Seal)
                                                           —Grantor

_____    _____ (Seal)
Notary Public                                              —Grantor

                                     _____ (Seal)
                                                           —Grantor

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CLOSING ATTORNEY'S AFFIDAVIT

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me

_____            on the date set forth above
Notary Public                                 _____
                                              Closing Attorney

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## FORECLOSURE CLOSING DISCLOSURE

O.C.G.A. Section 7-1-1014(b) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that secures the collateral for the mortgage loan through foreclosure.

_____    ✓ _____ JR
OKI ROBERTS

_____    _____

GSCCCA.org exam          7/03
VMP Mortgage Solutions (800)521-7291

**EXHIBIT B - Security Deed - Page - 017**

C95C 07/24/06 12:47 PM 894(3(131)

# EXHIBIT C

## Deed Under Power of Sale

2016154258 DEED BOOK 25259 Pg 309
Filed and Recorded:
11/13/2016 12:23:18 PM
Real Estate Transfer Tax $0.00
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

[ABOVE SPACE RESERVED FOR RECORDING OFFICE USE]

AFTER RECORDING, PLEASE RETURN TO:
Matthew B. Norton, Esq.
Busch White Norton, LLP
3330 Cumberland Boulevard, Suite 300
Atlanta, Georgia 30339

Cross Reference:
Deed Book 19045, Page 31
DeKalb County Records

STATE OF FLORIDA

COUNTY OF HILLSBOROUGH

DEED UNDER POWER OF SALE

THIS INDENTURE is made as of this 6th day of October, 2015, by Oni Roberts and Forrest G Roberts, Jr., each a Georgia resident ("Grantor"), acting through his duly appointed agent and attorney-in-fact, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), with an address of c/o Busch White Norton, LLP, 3330 Cumberland Boulevard, Suite 300, Atlanta, Georgia 30339, and Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust ("Grantee"), with an address of c/o Statebridge Company, LLC, 5680 Greenwood Plaza Blvd., Suite 100S, Greenwood Village, CO 80111;

WITNESSETH:

WHEREAS, Grantor executed and delivered to Lender that certain Security Deed, dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31, of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as may have been modified, amended and assigned from time to time, the "Security Deed"), conveying the hereinafter described property, to secure the payment of a promissory note dated July 25, 2006 (as may have

been replaced, renewed, extended, modified, amended and/or assigned from time to time (as the case may be); the "Note"), together with any and all other indebtedness owing by Grantor to Lender;

WHEREAS, default in the payment of the Note occurred, and whereas by reason of said default, Lender elected pursuant to the terms of the Security Deed and Note to declare the entire outstanding indebtedness secured by the Security Deed immediately due and payable;

WHEREAS, the entire outstanding indebtedness still being in default, Lender on behalf of Grantor, and according to the terms of the Security Deed and the laws of the State of Georgia, did legally and properly advertise the Property (as hereinafter defined) for sale once a week for four (4) consecutive weeks immediately preceding the foreclosure sale in the official newspaper in which the Sheriff of DeKalb County, Georgia published legal advertisement;

WHEREAS, notice of the initiation of proceedings to exercise a power of sale was given pursuant to Official Code of Georgia Section 44-14-162.2;

WHEREAS, Lender did expose the hereinafter described property for sale to the highest and best bidder for cash on the first Tuesday in October, 2015 within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb, Georgia, before the Courthouse door in said County and offered said property for sale at public outcry to the highest bidder for cash, when and where Grantee bid ONE HUNDRED AND NO/100THS DOLLARS ($100.00); and

WHEREAS, the aforementioned bid by Grantee was the highest and best bid, the hereinafter described property was knocked off to Grantee for said sum bid by Grantee;

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, Grantor has bargained, sold, granted, and conveyed and by these presents does hereby bargain, sell, grant, and convey to Grantee, its heirs, representatives, successors, and assigns, the following described property, to-wit:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLATS ARE HEREBY REFERENCED TO FOR THE PURPOSE OF INCORPORATING HEREIN.

Together with all the rights, members and appurtenances thereto appertaining; also, all the estate, right, title, interest, claim or demand of Grantor, Grantor's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same. All of the foregoing are referred to herein as the "Property."

Grantor hereby designates Grantee, as successor-in-title to Grantor by virtue of this instrument as the declarant under any Declaration of Covenants, Conditions, Restrictions and Easements (or any similar document) affecting the Property.

TO HAVE AND TO HOLD the Property and every part thereof unto said Grantee, its successors and assigns, to its own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as Grantor, or its successors, heirs or assigns, did hold and enjoy the same, subject, however, to unpaid real estate ad valorem taxes and governmental assessments and to all prior restrictions, rights-of-way, easements and other matters of record, if any, appearing prior to the date of the Security Deed and those appearing after the date of the Security Deed and consented to by Grantee.

[Balance of this page intentionally left blank]

DEED BOOK 25259 Pg 312
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

IN WITNESS WHEREOF, Lender, as agent and attorney-in-fact for Grantor, has hereunto affixed its hand and seal, as of the day and year first above written.

Signed, sealed and delivered in the presence of:

Unofficial Witness Caron Carter

Notary Public

My Commission Expires: 11-9-15

Notary Public State of Florida
Amy E Hill
My Commission EE143181
Expires 11/09/2015

[AFFIX NOTARIAL SEAL]

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.)

By: ______________________ [SEAL]
Name: Jamie Rand
Title: Vice President

AS AGENT AND ATTORNEY-IN-FACT FOR GRANTOR



GEORGIA SECRETARY OF STATE
BRIAN P. KEMP

HOME (/)

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | PRIMESTAR FUND I TRS INC. | Control Number: | 15001743 |
| Business Type: | Foreign Profit Corporation | Business Status: | Revoked |
| Business Purpose: | NONE | | |
| Principal Office Address: | 8665 East Hartford Dr, Suite 200, Scottsdale, AZ, 85255, USA | Date of Formation / Registration Date: | 1/6/2015 |
| Jurisdiction: | Delaware | Last Annual Registration Year: | 2017 |
| Dissolved Date: | 09/07/2018 | | |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | C T Corporation System |
| Physical Address: | 289 S Culver St, Lawrenceville, GA, 30046-4805, USA |
| County: | Gwinnett |

### OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| Arik Prawer | CFO | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |
| Fred Tuomi | CEO | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |
| Ryan Berry | Secretary | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |

Back

Filing History Name History

Return to Business Search

**EXHIBIT D**

**Proof Defendants have been notified by FAX**

**and Certified Mail**

Dekalb County Sheriff office:
Sgt. A Malone · Fax # (404) 371-3098

Bret Chaness ESQ
for Prime Star Fund I TRS
fax # (404) 601-5846

Certified Mail # 7017 1000 0001 0141 5808

Bret Chaness
c/o Rubin Lublin LLC
3145 Avalon Ridge Place Suite 100
Peachtree Corners, GA 30071

FILED
2018 OCT 12 PM 4:09
CLERK OF SUPERIOR COURT
DEKALB COUNTY GA

IN THE SUPERIOR COURT OF DEKALB COUNTY
State of Georgia

| | | |
|---|---|---|
| Oni Roberts,<br>Plaintiff | § | |
| v. | § | |
| BANK OF AMERICA, CORPORATION;<br>FAY SERVICING, LLC;<br>US BANCORP;<br>STATEBRIDGE COMPANY, LLC;<br>WILMINGTON SAVINGS FUND SOCIETY, FSB, (As Trustee for the Prime Star – H Fund I Trust);<br>PRIMESTAR FUND, I TRS, INC;<br>BRET J. CHANESS, Esq;<br>Defendants | § § § § § § § § | Civil Action<br><br>File No. 18CV10026-2<br><br>*JURY TRIAL DEMANDED* |

VERIFIED COMPLAINT

COMES NOW, Plaintiff, Oni Roberts, ("Plaintiff" or "Ms. Roberts"), who respectfully files this ***Verified Complaint,*** and shows this Honorable as follows:

## I. BRIEF INTRODUCTORY STATEMENT

The entities named herein, have in the past, they currently are, and will in the future continue to violate Ms. Roberts' civil and Constitutional Rights, the due process clause, and over two hundred (200) years of Georgia Real Estate laws.

Defendants have stepped beyond their respective rights and abilities and in the process of so doing, have caused Ms. Roberts serious harm and injury resulting in liability

FILED 10/12/2018 3:56 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA

IN THE SUPERIOR COURT OF DEKALB COUNTY
State of Georgia

| | | |
|---|---|---|
| Oni Roberts, Plaintiff | § | |
| v. | § | |
| BANK OF AMERICA, CORPORATION; FAY SERVICING, LLC; US BANCORP; STATEBRIDGE COMPANY, LLC; WILMINGTON SAVINGS FUND SOCIETY, FSB, (As Trustee for the Prime Star – H Fund I Trust); PRIMESTAR FUND, I TRS, INC; BRET J. CHANESS, Esq; Defendants | § § § § § § § § § | Civil Action<br>File No. 18CV10026<br>***JURY TRIAL DEMANDED*** |

VERIFIED COMPLAINT

COMES NOW, Plaintiff, Oni Roberts, ("Plaintiff" or "Ms. Roberts"), who respectfully files this ***Verified Complaint***, and shows this Honorable as follows:

## I. BRIEF INTRODUCTORY STATEMENT

The entities named herein, have in the past, they currently are, and will in the future continue to violate Ms. Roberts' civil and Constitutional Rights, the due process clause, and over two hundred (200) years of Georgia Real Estate laws.

Defendants have stepped beyond their respective rights and abilities and in the process of so doing, have caused Ms. Roberts serious harm and injury resulting in liability

for damages to Ms. Roberts.

Some of the defendants have ignored, and failed and refused to timely and properly respond to ***Notice of Error and Debt Validation Requests ("NEDVR")***, as well as ***Qualified Written Requests ("QWR's)***, and have committed fraud upon the Courts in Georgia to obtain rulings in their favor.

Plaintiff, was not provided with proper foreclosure notice, in violation of Georgia statute, and in breach of contract. The property was not sold at auction, thereby power of sale within the security deed, could not be utilized. The Deed Under Power shows that the entity alleging to be lender, purchased the property for $100.00. The sale was illegal, and did not take place in accordance with strict Georgia laws, and was never consummated, under the laws of Georgia.

## II. JURISDICTION AND VENUE

1. Jurisdiction is proper in DeKalb County Superior Court, pursuant to Ga. Const. 1983, Art. VI, § IV, 11.

2. Jurisdiction is also proper in this Court because it concerns title to real property: "The superior courts ... shall have exclusive jurisdiction ... in cases respecting title to land, ***Setlock v. Setlock,*** 286 Ga. 384, 688 SE2d 346 (2010); in divorce cases; and in equity cases".

3. The judges of the superior courts have authority to grant for their respective circuits writs of certiorari, supersedeas, quo warranto, mandamus, habeas corpus, and bail in actions *ex **delicto*** (O.C.G.A. § 15-6-9(1); writs of injunction, prohibition, and ***ne exeat***

(O.C.G.A. § 15-6-9(3))[1], as well as to entertain bills ***quia timet*** (O.C.G.A. § 15-6-9(2)); Superior Courts correct errors made by lower courts on appeal and have jurisdiction to grant equitable relief.

4. Venue is proper in this Court, as the subject of this complaint is real property and title thereto; the property is located within DeKalb County.

III. THE PARTIES

5. Plaintiff, Oni Roberts during all times relevant has owned and resided at 5371 Charity Way, Stone Mountain, GA 30083.

6. **Defendant Bank of America Corporation.** ("BAC") during all times relevant has been a Foreign for profit Corporation, the parent of Bank of America, N.A., Bank of America Home Loans Servicing, etc., they are organized and existing under the laws of Delaware; their principal place of business located at 100 North Tryon Street, Charlotte, NC 28255. Service of process will be perfected upon BAC through service upon their **Registered Agent: CT Corporation System, 289 Culver Street, Lawrenceville, GA 30046-4805, Gwinnett County.**

7. **Defendant Fay Servicing, LLC,** ("Fay") during all times relevant has been a Foreign Limited Liability Company, organized and existing under the laws of Delaware, with their principal place of business located at 440 S. LaSalle St., 20th Floor, Chicago, IL 60605. Service of process will be perfected upon Fay, through service upon their **Registered Agent: Registered Agent Solutions, Inc., 900 Old Roswell Lakes Parkway,**

---

[1] See ***Fuller v. Williams***, 150 Ga. App. 730, 258 S.E.2d 538 (1979), judgment rev'd, 244 Ga. 846, 262 S.E.2d 135 (1979); s.c., 153 Ga.App. 282, 266 S.E.2d 806 (1980).

**Suite 310, Roswell, GA 30076, Fulton County.**

8. **Defendant US Bancorp, a/k/a US Bank National Association** (As Trustee for PROF-2013-53 REMIC Trust, III, ("USB"), during all times relevant has not been registered to do business within the State of Georgia; and is organized and existing under the laws of Delaware. USB will be served through the Registered Agent in Minnesota: **CT Corporation System, Inc., 1010 Dale St. N., St Paul, MN 55117-5603.**

9. **Defendant StateBridge Company, LLC** ("StateBridge") during all times relevant, has been a Foreign Limited Liability Company, organized and existing under the laws of Colorado. Service of process will be perfected upon Statebridge through service upon their **Registered Agent: Incorp Services, Inc., 2000 Riveredge Parkway, N.W., Suite 885, Atlanta, GA 30328.**

10. **Defendant Willmington Savings Fund Society, FSB** (As Trustee for the Prime Star – H Fund I Trust ("WSFS")), during all times relevant has not been registered to do business within the State of Georgia. WSFS is located at **500 Delaware Avenue, Wilmington, DE 19801** where they can be served with process.

11. **Defendant PrimeStar Fund I TRS, Inc** ("Primestar"), during all times relevant has been a Foreign for Profit Corporation organized and existing under the laws of Delaware. Their principal place of business is located at 8665 East Hartford Dr., Suite 20, Scottsdale, AZ 85255. Service of process will be perfected upon Primestar, through their Registered Agent: **CT Corporation System, 289 S. Culver St., Lawrenceville, GA 30046-4805 in Gwinnett County.**

12. **Defendant Brett J. Chaness, Esq.** ("Chaness") during all times relevant, has been a partner and a member of the Litigation Department at Rubin Lublin, LLC., which during

all relevant times, was located in Peachtree Corners. Service of process will be perfected upon Chaness by personally serving him at the **Rubin Lublin Law office located at 3145 Avalon Ridge Place, Suite 100, Peachtree Corners, GA 30071.**

13. **Busch White Norton, LLP ("BWN")** and **Baker Donelson** during all times relevant have been a law firm that represented the foreclosing entity.

14. Plaintiff is informed and believes that information and belief alleges, that at all times mentioned in this complaint, defendants were the agents and that their employees were acting within the course and scope of that agency and employment.

15. The Defendants, and each of them, were the agents, employees, representatives, partners, officers, principals and/or joint venturers of each of the remaining defendants, and in doing the things hereinafter alleged, were acting within the scope, course and purpose of such agency, employment or position, or within the apparent scope, course and purpose of such agency, employment or position and with permission and consent of each of the remaining defendants.[2]

## IV. STATEMENT OF FACTS PERTINENT TO ALL CLAIMS

16. On July 25, 2006, Plaintiff purchased the property commonly known as 5371 Charity Way, Stone Mountain, GA 3008 in DeKalb County; the property is more thoroughly described as:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY,

---

[2] Whenever, appearing in this complaint, each and every reference to Defendants or to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them unless said reference is specifically qualified.

GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PRE PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED QT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PUROSE OF INCORPORATING HEREIN.

17. The special Warranty Deed ***EXHIBIT A*** being **Instrument Number 2006-0155444**, and recorded into DeKalb County Georgia Records, **Book 19045, Page 29**, and shows that Deutsche Bank National Trust Company, as Trustee, having sold the property to Oni Roberts, and Forrest G. Roberts, Jr.[3]

18. To fund the purchase of the property, Plaintiff signed a Promissory Note, and Security Deed in favor of Bank of America, N.A., a National Banking Association ***EXHIBIT B***, **Instrument Number 2006-0155445**, and recorded at DeKalb County Georgia Records, **Book 19045, Page 31**.

19. Litton Loan Servicing, 4828 Loop Central Drive, Houston, TX 77081,was the loan servicer for the alleged Account Number: xxxx9718.

20. Bank of America was the alleged lender for loan #: xxxxxx1371.

21. The Security Deed, § 2 describes how Plaintiff's payments were to be applied, and the way late payments are handled.

22. The Security Deed, § 3 describes the escrow, bills the escrow covers, the amount of money that RESPA allows the lender to hold for escrow, how the funds are to be handled, as well as shortages and overages of escrow funds.

[3] When the property was purchased, Oni Roberts was married to Forrest G. Roberts, Jr., but has since divorced, and Mr. Roberts is no longer a part of the property, and is not a party in this action.

23. The Security Deed, § 19 provides information about the Borrower has the right to reinstate after acceleration; § 20 provides information about the lender selling the note and loan servicer changes; § 22 covers acceleration, and remedies.

24. § 22 States: "Lender ***shall***[4] give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument...The notice ***shall*** specify: (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower, by which default must be cured; and (d) that failure to cure the default on or before the date specified ... may result in acceleration of the sums secured ... and sale of the property".

25. "The notice ***shall*** further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale..".

26. After having never been late, or missed a payment for six (6) years, Plaintiff and Plaintiff (her) ex-husband ("her ex") began suffering financial difficulties due to the economy.

---

[4] Unmistakably mandatory character, requiring that certain procedures "***shall,***" "***will,***" or "***must***" be employed ***Hewitt v. Helms***, 459 US 460 - Supreme Court 1983; "mandatory language, the words '***shall***', '***must***', or '***will***' In sum, the use of 'explicitly mandatory language,' ...establishment of "specified substantive predicates" to limit discretion, ...." ***Hewitt v. Helms***, 459 U. S., at 472. ".. is perfectly clear and unambiguous. ***Pleasant v. Luther***, 195 Ga.App. 889, 890(1), 395 S.E.2d 79 (1990). Its language is mandatory. ***Preece v Turman Realty Company***, Inc. 228 Ga. App. 609, 492 S.E.2d 342 (1997). "To create a constitutionally protected liberty interest, a state must employ `language of an unmistakably mandatory character, requiring that certain procedures "***shall,***" "***will,***" or "***must***" be employed ... '" ***Russ v. Young***, 895 F.2d 1149, 1153 (7th Cir.1990) (quoting ***Hewitt***, 459 U.S. at 471-72, 103 S.Ct. at 871). Protected due process liberty interests can be created, however, when a state "plac[es] substantive limitations on official discretion," ***Olim v. Wakinekona***, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983).

27. Plaintiff and her ex were experiencing difficulties, and money problems had begun to show up due to the economy.

28. Plaintiff filed for a Loan Modification, which at that time, 04/07/2010, paperwork showed that even though there had been nothing notifying Plaintiff and her ex that BAC Home Loans Servicing as an alleged affiliate of Bank of America, N.A., and showing the alleged Loan #: xxxxx9326, had apparently taken over, which violated not only the security deed, but RESPA as well.

29. Specifically, RESPA provides that "[e]ach servicer of any federally related mortgage loan shall notify the borrower in writing of any assignment, *842 sale, or transfer of the servicing of the loan to any other person." Id. § 2605(b)(1). Subsection (c) similarly provides that: "[e]ach transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer." Id. § 2605(c). ***Madura v. Bac Home Loans Servicing, LP,*** 593 F. App'x 834, 841–42 (11th Cir. 2014).

30. 04/2012 Plaintiff and her ex, jointly filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division.

31. The Chapter 13 was converted to a Chapter 7, Bankruptcy for which discharge was granted on 05/06/2014, with the Trustee's Final Report of 02/02/2015.

32. The loan or servicing rights, allegedly sold on 02/01/2014, to Fay Servicing, who gave the loan another new account number: xxxxxx8404 ***EXHIBIT C.***

33. Under Fay Servicing, the loan allegedly was sold into a Trust: U.S. Bank National Association as Trustee for PROF-2013-M4 Grantor Trust I, using that same loan number

of xxxxxx8404, ***EXHIBIT D***, even though when Plaintiff purchased the Property, the loan was already in a Trust ***Exhibit A***.

34. July 07, 2014, Plaintiff had applied for a loan modification with Fay ***EXHIBIT E***.

35. Plaintiff had complied with all of Fay's demands, such as an inspection (Appraisal), instead of Fay granting a modification, they sold the loan servicing rights to StateBridge while a modification would have been effective September 03, 2014.

36. September 16, 2014 Plaintiff received a letter from StateBridge confirming the transfer, and showing the loan number at that time as xxxxxx1276 ***EXHIBIT F***.

37. On September 23, 2014 Plaintiff received a letter from StateBridge stating that the amount currently due was: $307,526.47; Unpaid Principal $272,561.97; Interest $19,815.00; Escrow Balance Owed: $14,942.00; Corporate Advance Balance $207.50 ***EXHIBIT G***.

38. At that same time, Plaintiff learned through written correspondence concerning the property that Wilmington Savings Fund Society, FSB, solely as Trustee for Primestar -H Fund I Trust c/o Prime Asset Fund @ P. O. Box 447, Odessa, FL 33556-0447, had taken the loan/servicing over, with the account number at that time was xxxxxx2982 ***EXHIBIT H***.

39. On September 23, 2014 Plaintiff received correspondence from Frederick Fajardo representing StateBridge as Plaintiff's Home Retention/Modification contact ***EXHIBIT I***.

40. Plaintiff wrote a letter and called Mr. Fajardo and said that she intended on keeping the property and applying again for loan modification, since Fay Servicing allegedly sold in the middle of being approved for modification.

41. Plaintiff sent to Mr. Fajardo US Mail, and FAX at the number he had provided to her (303) 290-7516 information concerning the modification and alerting him that she would be sending the QWR to learn why there was a difference of $2,892.05, between what Fay claimed, and what StateBridge was claiming ***EXHIBIT J***.

42. RESPA also provides a loan servicer, upon receipt of a QWR, for information related to the servicing of a loan must provide a written response acknowledging receipt of the QWR within 5 business days. 12 U.S.C. § 2605(e)(1)(A).

43. A QWR is a written correspondence that (1) allows the servicer to identify the name and account of the borrower, and (2) includes a statement of the reason for the borrower's belief that the account is in error or provides sufficient detail regarding other information sought by the borrower. Id. § 2605(e)(1)(B).

44. The term "servicing" means receiving any scheduled periodic payments from a borrower under the terms of any loan and making the payments of principal and interest regarding the amounts received from the borrower as may be required by the loan. ***Id.*** § 2605(i)(3). ***Madura v. Bac Home Loans Servicing, LP***, 593 F. App'x 834, 842 (11th Cir. 2014).

45. Plaintiff sent out a QWR to StateBridge on 10/13/2014 requesting specific information about her loan, for example:

> 3) "Why does my Bank of America Statement due for 02/01/2014 for loan # xxxxx9326 (modification number), show $47,713.05; Principal Balance Owed: $272,561.97, and Escrow Balance of $15,127.80".
>
> 5) "Why does the Fay Servicing Statement for 03/01/2014, only one month later show a balance due of $44,821.00", and shows "a late charge of $0.06 will be charged after 03/16/2014". "There was only 1 notable adjustment of $184.84 as an Expense Adjustment on 02/07/2014"?

46. The response Plaintiff received from StateBridge on the QWR, was correspondence stating "NOTICE OF INTENT TO ACCELERATE LOAN xxxxxx1276, ***EXHIBIT K***.

47. The correspondence further informed Plaintiff that she was in default $57,739.88.

48. October 21, 2014 Plaintiff received a letter from StateBridge Borrower Correspondence Team, that they had received the QWR and stated that they would investigate the account, make appropriate correction, and provide Plaintiff with a report of any findings ***EXHIBIT L.***

49. Plaintiff has sent QWR's every year after 2014, and has either gotten no response, or unsatisfactory responses.

50. Even though Plaintiff's property allegedly sold at auction, Plaintiff's neighbor, who will be testifying as a witness at trial, attended the auction all day, as did others, and Plaintiff's property was never called out.

51. Apparently, defendants decided that Georgia statute does not matter; they have been foreclosing in this state for no less than ten (10) years now, and have actual knowledge that they violated O.C.G.A. § 23-2-114, which holds that Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised. In the absence of stipulations to the contrary in the instrument, the time, place, and manner of sale shall be that pointed out for public sales. (Ga. Code Ann. § 23-2-114 (West)).

52. The Deed Under Power ***EXHIBIT M***, shows the property sold for **One Hundred Dollars ($100.00)** and it was not cried out at auction.

53. Further, anyone would have gladly paid $100.01 for the property, defendants have been awarded a windfall at Plaintiff's expense.

54. Plaintiff has been either a victim of bid rigging[5], fraud, or defendants in this action

---

[5] § 16-14-6. Other civil remedies

(a) Any superior court may, after making due provisions for the rights of innocent persons, enjoin violations of Code Section 16-14-4 by issuing appropriate orders and judgments, including, but not limited to:

(1) Ordering any defendant to divest himself ...of any interest in any enterprise, real property, or personal property; (2) Imposing reasonable restrictions upon the future activities or investments ... including, ... prohibiting ... from engaging in the same type of endeavor ... in violation of Code Section 16-14-4; (3) Ordering the dissolution or reorganization of any enterprise; (4) Ordering the suspension or revocation of any license, permit, ...; or (5)...forfeiture of the charter of a corporation organized under the laws of this state...revocation of a certificate ...to conduct business within this state..., in conducting affairs of the corporation, has authorized or engaged in conduct in violation of Code Section 16-14-4 and that, ...the public interest requires that the charter of the corporation be forfeited ...

(b) Any aggrieved person... may institute a civil action...In such civil action, relief ***shall*** be granted in conformity with...granting of injunctive relief from threatened loss or damage in other civil cases, **provided that no showing of special or irreparable damage to the person *shall* have to be made.** Upon... a showing of immediate danger..., a **temporary restraining order and a preliminary injunction may be issued...**

(c) Any person who is injured by...violation of Code Section 16-14-4 ***shall*** **have a cause of action for three times the actual damages sustained and...punitive damages. Such person *shall* also recover attorney's fees in the trial and appellate courts and costs of investigation and litigation reasonably incurred. The defendant or any injured person may demand a trial by jury in any civil action brought pursuant to this Code section.**

**(d) Any injured person *shall* have a right or claim to forfeited property or to the proceeds derived therefrom as set forth in Code Section 9-16-16.**

(e) A conviction in any criminal proceeding ***shall*** estop the defendant in any subsequent civil action or civil forfeiture proceeding under this chapter as to all matters proved in the criminal proceeding. Ga. Code Ann. § 16-14-6 (West)

are guilty of violating Georgia's mortgage fraud act.

55. (1) "Mortgage lending process"

> ... process through which a person seeks or obtains a residential mortgage loan ... including, solicitation, application, or origination, negotiation of terms, **third-party provider services,** underwriting, signing and **closing,** and **funding of the loan...** ***shall*** also include the **execution of deeds under power of sale** ... required to be recorded...Code § 44-14-160... **the execution of assignments...** required to be recorded... (b) of Code § 44-14-162. Documents involved in the mortgage lending process include, but ***shall*** not be limited to, uniform residential loan applications... loan applications; appraisal reports; HUD-1 settlement statements; ...personal documentation ... such as W-2 forms, verifications of income and employment, bank statements, tax returns, and payroll stubs; and any required disclosures.

Ga. Code Ann. § 16-8-101 (West)

56. Loan modifications fall within the parameters of a mortgage lending process.

57. Residential mortgage fraud offenses can also be prosecuted through the Georgia RICO...are considered within the definition of ...racketeering activity *Id.*

58. Effective July 1, 2012, O.C.G.A. § 16-8-101 was amended to provide that the definition of "mortgage lending process" ***shall*** also include the execution of **deeds under power of sale** that are required to be recorded pursuant to O.C.G.A. § 44-14-160 and **the execution of assignments** that are required to be recorded pursuant to subsection (b) of O.C.G.A. § 44-15-162. *Id.*

59. These amendments extend the Georgia Residential Mortgage Fraud Act to foreclosure fraud *Id.*

---

60. Plaintiff alleges that even if the notice had been properly provided, which Plaintiff disputes, the foreclosure and sale under power were never consummated, see ***Building Block Enterprises v. State Bank and Trust Co.***, 314 Ga.App. 147(2), 723 S.E.2d 467 (2012) (foreclosure sale not consummated where purchaser bank did not transfer buyer's interest to itself and **did not apply proceeds of sale to reduce borrower's debt).** ***Peachtree Homes, Inc. v. Bank of Am., N.A.***, 315 Ga. App. 243, 246, 726 S.E.2d 737, 739 (2012)85.

61. A foreclosure sale is not consummated when the lender did not apply the proceeds of the sale to the loan § 21:114. In general, ***3 Ga. Real Estate Law & Procedure*** § 21:114 (7th ed.).

62. "Until a deed under power is transferred and consideration is passed, the sale itself has not occurred; there is only a contract to buy and sell.") (citations and punctuation omitted ***Yellow Creek Investments, LLC v. Multibank 2009-1 CRE Venture, LLC***, 329 Ga. App. 577, 581, 765 S.E.2d 728, 732 (2014).

63. Further, when Plaintiff purchased the property, from "Deutsche Bank National Trust Company, As Trustee" with Litton Loan Servicing, LP as Attorney-In-Fact for Deutsche Bank, the loan had already been sold to a securitized trust.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**
**(Against All Defendants)**

64. Plaintiff incorporates ¶¶ 14 through 57 as if fully restated herein.

65. Plaintiff alleges that the Warranty Deed ***Exhibit A***, and the Security Deed ***Exhibit B*** are contracts.[6]

66. Plaintiff further alleges that when she and her ex signed the closing documents, there were exactly three (3) people at the closing: Plaintiff, her ex, and the party conducting the closing, who may or may not have been an attorney.

67. There were no non-party witnesses, and no notary present at closing.

68. Plaintiff includes all defendants in breach of contract, Plaintiff alleges that everyone who took the loan over, as well as their agents, were bound by contract.

69. It had been alleged that BOA/BAC was the lender, Plaintiff believes the loan was funded by a Wall Street Warehouse Lender.

70. Plaintiff further, alleges that when she purchased the property, it had already been securitized and sold into one or more Trusts.

71. Since the loan was already in a securitized trust when Plaintiff and her ex signed the closing documents, the loan could not be pulled from the trust without hurting all of the investors.

72. When Plaintiff purchased the property, it could not be removed from the Trust,

[6] 1. "The elements for a breach of contract claim in Georgia are the (1) breach and the (2) resultant damages (3) to the party who has the right to complain about the contract being broken." (Citation and punctuation omitted.) ***Dewrell Sacks, LLP v. Chicago Title Ins. Co.***, 324 Ga. App. 219, 223 (2) (a), 749 S.E.2d 802 (2013).

without negative adverse effects.

73. Research indicates Plaintiff therefore alleges, that at the most, BOA/BAC was a third party servicer.

74. Plaintiff alleges that research further indicates that the loan was sold numerous times, which would be impossible with the Note and Deed of Trust, in a securitized trust.

75. The servicing rights were apparently sold numerous times, but that does not explain the many, many different changes in account numbers.

76. Plaintiff paid for an abstract of title/title search ***EXHIBIT N***, to gather information she had repeatedly been denied.

77. Plaintiff alleges that for the first six years, her payments had never been late.

78. In the divorce, Plaintiff's ex quit claimed his share of the property to Plaintiff.

79. Sometime around the time that Plaintiff became the sole owner of the property, Plaintiff was accused of falling behind on her payments, which she vehemently denies.

80. Plaintiff alleges that BAC as servicer, along with the true secured creditor, whoever it is/was, negligently breached the terms of the loan agreements at issue.

81. More specifically, the contract was breached when Plaintiff's payments, were not credited to her debt as shown by the Security Deed § 2:

> "Application of Payments... Except as otherwise described in this Section 2 all payments accepted and applied by Lender shall be applied in the following order of priority
>
> (a) interest due under the Note;
>
> (b) principal due under the Note,
>
> (c) amounts due under Section 3 Such payments shall be applied to each

Periodic Payment in the order in which it became due..."

82. Plaintiff alleges that the payments were improperly credited to the debt, and from Plaintiff's understanding, her payments were held in an "unapplied funds" account even though all payments had been made in full, and were not late.

83. Plaintiff alleges that BOA breached their contractual duties concerning application of her payments and acceleration of the debt found within the security deed and note.

84. Plaintiff alleges that under the provisions of the contract, whoever actually owned the loan, along with the servicer, at all times, were obligated to properly manage and administer the payments made toward the debt, as well as properly administer and manage the escrow account.

85. Plaintiff alleges that the loan servicer defendants, which includes BOA/BAC, Fay, US Bancorp, Statebridge, WSFS, and Primestar, failed to properly maintain and administer her payments to the debt.

86. Plaintiff alleges that the loan servicer defendants, which includes BOA/BAC, Fay, US Bancorp, Statebridge, WSFS, and Primestar, failed to properly maintain and administer the escrow account.

87. Plaintiff alleges that in 2010 she was granted a loan modification, through Bank of America, N.A.

88. Plaintiff alleges that after the loan was modified, Plaintiff eventually learned that BOA had utilized the income of her ex in the modification application without the knowledge or permission, and behind the backs of Plaintiff and/or her ex.

89. Plaintiff alleges that terms of the loan modification would have been different had

her ex's income not been included.

90. Additionally and\or alternatively, Plaintiff alleges that had it not been for including her ex's income, Plaintiff would have received a different modification, such as a reduction of principal owed, and/or she would have been allowed more of a rate reduction, and/or possibly would have received all of the past arrearage forgiven, rather than being added onto the end of the loan.

91. Plaintiff alleges that she has repeatedly sought information concerning the loan, and been denied.

92. Plaintiff alleges that the loan number has been changed so many times, a normal person could not logically be expected to keep up with the changes.

93. Plaintiff has sent out numerous QWRs attempting to find where a default in payment occurred, and to find out the true owner of her loan, but she has never received adequate responses.

94. One of the responses Plaintiff received most often was that they did not have to respond because they had responded to previous QWRs, but the facts show that there had never been adequate responses to the previous QWRs.

95. Plaintiff believes and alleges, that had the identity of the note holder not been secreted from her, she would have been able to negotiate a much better loan modification.

96. For example the property was already in a Trust when Plaintiff purchased the property and she has been continually denied the information necessary for Plaintiff to have someone with Bloomberg terminal access, to research into the Trust, and find that there had been no default in payments as claimed by defendants.

97.   When Plaintiff purchased the property, she purchased from Deutsche Bank National Trust Company, as Trustee [*Ex.A*], but the Special Warranty Deed shows it was signed by Litton Loan Servicing, LP as Attorney-In-Fact, and no Power of Attorney included or attached.

98.   Deutsche Bank, was acting as Trustee, for who?  With Litton Loan Servicing, servicing what loan?  After a foreclosure there is no loan to service, and Litton was not servicer of the loan.[7]

99.   Plaintiff alleges that out of the numerous times the servicing rights for her loan were sold, Plaintiff was not properly noticed of the transfers.

100.   Plaintiff incorporates ¶¶ 22 through 28, 31 through 40.

101.   Plaintiff alleges that the incorporated paragraphs shows breach of contract, with the last breaches concerning the sale of the property at an auction where the property was not called out, and for which the Deed Under Power shows the property sold for $100.00.

102.   Plaintiff alleges that the Deed Under Power [*Ex.M*] shows a fictional statement of who the seller was acting as attorney-in-fact for, "...this 6th day of October 2015, by Oni Roberts and Forrest G. Roberts, Jr..." The DeKalb County Georgia Records clearly show that Forrest G. Roberts Jr. was no longer part of the equation, he had quit claimed to Plaintiff.

103.   Plaintiff alleges that "(Grantor)...Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S.

---

[7] Plaintiff never made payments to Deutsche Bank or to Litton, and she did make payments to Bank of America, but it is Plaintiff's understanding that Bank of America is merely a third party loan servicer, with no interest in the loan or property.

Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A, "Lender")...c/o Busch White Norton, LLP...and Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust ("Grantee"), shows not only a bunch of garble to confuse anyone interested in the facts, but that there are no Power of Attorney documents to back up the garbled claim of "attorney-in-fact".

104. Plaintiff alleges the other reason for making the Deed Under Power so confusing as shown in ¶ 79, was to keep away from the fact that there was no sale at auction, and according to the Deed Under Power, the sale amount was only $100.00 to an entity claiming to have the right to sale, and sold to themselves.

105. Plaintiff alleges that the Security Deed was violated in the following ways:

a) Failure to properly apply Plaintiff's payments toward the debt, violation of Security Deed [*Ex.B,p.4*] § 2;

b) Mismanagement of Plaintiff's Escrow payments and the projections for the following year, in violation of Security Deed [*Ex.B,pp.4-5*] § 3.

c) Violation of Security Deed [*Ex.B,p.12*] § 20 Sale of Note; Change of Loan Servicer...If there is a change of the Loan Servicer, Borrower will be given written notice..." Plaintiff many times did not get notice until after the payment had already been made to the prior entity

d) Violation of Security Deed [*Ex.B,p.13*] § 22. Acceleration, Remedies "Lender ***shall*** give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument...The notice ***shall*** specify: (a) the default; (b) the action required to cure the default; (c) a date not less than 30 days from the date the notice is given to Borrower, by which default must be cured; and (d) that failure to cure the default on or before the date specified ... may result in acceleration of the sums secured ... and sale of the property". (e) "The notice ***shall*** further inform Borrower of the

> right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale..".

106. Plaintiff alleges that these steps were ignored by the alleged lenders and servicers; notice was not in compliance with GA code or the Security Deed, and the contracts were thereby violated.

107. The Security Deed was also breached for the failure to properly notice Plaintiff of changes in the loan servicer.

108. § 20 Sale of Note; Change of Loan Servicer;...The Note...(together with this Security Instrument) can be sold one or more times without prior notice to Borrower...might result in a change in the...loan servicer...If there is a change in the Loan Servicer, Borrower will be given written notice of the change which will state the name and address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing...".

109. Plaintiff alleges that Notice of change of loan servicer was not in compliance with RESPA for several of the changes of loan servicers.[8]

---

[8] (3) Time of notice— (i) In general. Except as provided in paragraphs (b)(3)(ii) and (iii) of this section, the transferor servicer shall provide the notice of transfer to the borrower not less than 15 days before the effective date of the transfer of the servicing of the mortgage loan. The transferee servicer shall provide the notice of transfer to the borrower not more than 15 days after the effective date of the transfer. The transferor and transferee servicers may provide a single notice, in which case the notice shall be provided not less than 15 days before the effective date of the transfer of the servicing of the mortgage loan. (12 C.F.R. § 1024.33). (4) Contents of notice. The notices of transfer shall include the following information:

(i) The effective date of the transfer of servicing; (ii) The name, address, and a collect call or toll-free telephone number for an employee or department of the transferee servicer that can be contacted by the borrower...; (iii) The name, address, and a collect call or toll-free

110. Plaintiff alleges that these defendants breached their contractual duties set forth in the Security Deed and Note, concerning application of payments, acceleration of the debt, and the proper notice they were required to provide Plaintiff.

111. As a direct and proximate cause of Defendants' actions/inactions, Plaintiff has been harmed, injured and made to suffer damages, including the loss of her home.

WHEREFORE, Plaintiff prays for the relief shown in her Final Prayer for Relief.

## SECOND CLAIM FOR RELIEF
## WRONGFUL FORECLOSURE
## (Against Defendants Fay, StateBridge, WSFS, and Primestar)

112. Plaintiff incorporates Exhibits C-K, and ¶¶ 29-78 as if fully restated herein.

113. Plaintiff alleges that the foreclosing entity violated O.C.G.A. § 23-2-114, which holds that "Powers of sale in deeds of trust, mortgages, and other instruments shall be strictly construed and shall be fairly exercised. In the absence of stipulations to the contrary in the instrument, the time, place, and manner of sale shall be that pointed out for public sales". (Ga. Code Ann. § 23-2-114 (West)).

114. Plaintiff alleges that the lender and its loan servicer owed Plaintiff a legal duty to honestly and properly apply her payments toward the debt, and failed to do so.

115. Plaintiff alleges that the lender and its loan servicer further owed Plaintiff a legal duty to honestly and properly supply the escrow account with the money necessary not to

---

telephone number for an employee or department of the transferor servicer that can be contacted by the borrower...; (iv) The date on which the transferor servicer will cease to accept payments ... the date on which the transferee servicer will begin to accept such payments. These dates shall either be the same or consecutive days; ... (vi) A statement that the transfer of servicing does not affect any term or condition of the mortgage loan other than terms directly related to the servicing of the loan. (12 C.F.R. § 1024.33).

pay the payments required of the escrow account, failed to do so.

116. Plaintiff clearly alleges that the foreclosing entity had a legal duty to fairly exercise the power of sale and failed to do so.

117. To exercise the power of sale fairly, the foreclosing party has to timely and properly provide notice to the borrower, which did not happen in the case at bar.

118. Plaintiff alleges that exercising a foreclosure and sale under power without following strict GA law, and in violation of the requirements set forth in the Security Deed, and without providing proper notice is not a sale "fairly exercised".

119. Plaintiff further believes and therefore alleges that the failure to call out the property for a highest bidder falls within the category of not being strictly construed or fairly exercised.[9]

120. The foreclosing entity had an obligation to properly notice Plaintiff of the foreclosure, at least thirty (30) days prior to the sale, which they did not do.

121. The required actions of the foreclosing entity was required to provide:

> "(a) Notice of the initiation of proceedings to exercise a power of sale in a mortgage, security deed, or other lien contract shall be given to the debtor ... no later than 30 days before the date of the proposed foreclosure. Such notice shall be in writing, shall include the name, address, and telephone number of the individual or entity who shall have full authority to negotiate, amend, and modify all terms of the mortgage with the debtor, and shall be sent by registered or certified mail or statutory overnight delivery, return receipt requested, to the property address or to such other address as the debtor may designate by written notice to the secured

[9] Plaintiff had a friend and a neighbor who was there at the auction all day, and is willing to testify to the truth of the matter, that Plaintiff's property was not called out at auction,

creditor..."

Ga. Code Ann. § 44-14-162.2 (West)

122. Plaintiff alleges that Fay, StateBridge, WSFS, and Primestar caused a wrongful foreclosure, and Plaintiff believes that WSFS and Primestar worked closely together to sale the property for as little money as possible with no intent of any money being paid toward the debt.

123. Plaintiff alleges that these three (3) or (4) defendants owed Plaintiff a legal duty, and Fay, StateBridge, WSFS, and Chaness all had actual knowledge that Plaintiff had applied for, and application was pending for, a loan modification, yet they had refused the legal duty of properly responding to a QWR/NEDVR/FOIA Request.

124. The response to Plaintiff from the proper QWR, was Notice of Intent to Accelerate the loan which was the response Plaintiff received from StateBridge, ***Exhibit K***.

125. The foreclosure was begun by StateBridge, who assigned to WSFS prior to auction.

126. Neither StateBridge, nor WSFS took concern with the Fact that Plaintiff was in the middle of a modification application, they just foreclosed anyway, without concern for the consequences of their actions.

127. The Deed Under Power pretty much shows the lack of concern for anything is shown by the fact that Deed Under Power shows that the property, was sold and purchased by the same entity for a whopping One Hundred Dollars ($100.00).

128. Plaintiff is informed, believes, and therefore alleges that if the property had been called out at auction, the price would have been much, much more than One Hundred Dollars ($100.00).

129. Plaintiff, after looking into the auctions that DeKalb County has, and the arrests that have been made because of fraud involved in foreclosure auctions in Georgia, alleges that there was a matter of bid rigging involved.

130. Alternately, one or more of the defendants participated in chilling the bidding.

131. The Security Deed and Georgia law both state that the foreclosing entity may purchase the property at auction, but it must be called out to the highest bidder, and defendant's Deed Under Power claims that the property was called out to the best and highest bidder, and that consideration was in the amount of a whopping One Hundred Dollars ($100.00), to the highest and best bidder.

132. For example:

> "As a general rule the price brought at a public sale, after proper and lawful advertisement, is prima facie the market value of the property sold, absent anything to indicate that there was chilling of the bidding, fraud, or the like adversely affecting the sale. ***Cf. Bearden v. General Motors Accept. Corp.***, 122 Ga.App. 180, 176 S.E.2d 652. 'Evidence of what land was sold for per acre at sheriff's sale was admissible on the question of the value of such land.' ***May v. Leverette,*** 164 Ga. 552(11), 139 S.E. 31. But under the terms of the statute here the applicant may not rely solely on such a prima facie showing; he must introduce evidence showing the value of the property at the time of sale. Here he did so. The court concluded that the sale had been properly and lawfully advertised and the sale properly conducted, and that the price brought represented the true market value".

***Thompson v. Maslia,*** 127 Ga. App. 758, 764, 195 S.E.2d 238, 243 (1972)

133. Plaintiff alleges that DeKalb County Tax Commissioner has the Total Tax is for the amount of Three Hundred Twenty Four Thousand Three Hundred Dollars ($324,300.00) ***EXHIBIT O, page 2*** on the property for 2018 and the amount of taxes owed is Seven Thousand Eight Hundred Sixty-Seven Dollars and sixty-two cents ($7,867.62) ***Exhibit O,***

*page 1.*

134. Plaintiff alleges that $100.00 is not only inadequate, but is ***grossly inadequate***,

> "It is only when the price realized is grossly inadequate and the sale is accompanied by either fraud, mistake, misapprehension, surprise or other circumstances which might authorize a finding that such circumstances contributed **169 to bringing about the inadequacy of price that such a sale may be set aside by a court of equity. ***Smith v. Georgia Loan & Trust Co.***, 114 Ga. 189, 39 S.E. 846; ***Croft v. Sorrell,*** 151 Ga. 92, 106 S.E. 108; ***Massey v. National Homeowners Sales Service Corp. of Atlanta,*** 225 Ga. 93, 99, 165 S.E.2d 854.

***Giordano v. Stubbs***, 228 Ga. 75, 79, 184 S.E.2d 165, 168–69 (1971).

135. Plaintiff alleges that the fact the property was not called out at auction is one of those other "circumstances which would authorize a finding that such circumstances contributed to bringing about the inadequacy of price that such a sale may be set aside by a court of equity".

136. Plaintiff believes and therefore alleges that there were also circumstances such as fraud involved, and/or possibly bid-rigging and/or other means of chilling the bidding was involved.

137. Of course, Plaintiff ***has*** also complained herein, that she was not provided with proper notice prior to foreclosure and sale under power, and that the failure to provide proper notice is another one of the circumstances, that when combined with the grossly inadequate sales price, is enough to push it over the edge for the Court to set the sale aside.

138. Plaintiff alleges, given the amount of money involved in the sale, that the sale was never consummated.

139. "A foreclosure sale is not consummated when the lender did not apply the proceeds

of the sale to the loan" § 21:114. In general, ***3 Ga. Real Estate Law & Procedure*** § 21:114 (7th ed.).

140. As a direct and proximate cause of the actions/inactions concerning the wrongful foreclosure of her home by Defendants Fay, StateBridge, WSFS, and Primestar, Plaintiff has been injured, harmed and has suffered damages.

WHEREFORE Plaintiff prays for the relief shown in her final prayer for relief.

**THIRD CLAIM FOR RELIEF**
**VIOLATIONS OF 12 U.S.C. §§ 2601 and 2605 *et seq***
**(Against Defendants US Bancorp, Fay, StateBridge, WSFS, and Primestar)**

141. Plaintiff alleges that her loan is a "federally related mortgage loan"[10] pursuant to 12 U.S.C.A. §§ 2601 and 2605 (West)

---

[10] which "includes any loan which:

(A) is secured by a first or subordinate lien on residential real property... for the occupancy of from one to four families...; and

(B)(i) is made in whole or in part by any lender the deposits or accounts ...are insured by any agency of the Federal Government, or is made in whole or in part by any lender ... regulated by any agency of the Federal Government, or

(ii) is made ..., or insured, guaranteed, supplemented, or assisted...by the Secretary or any other officer or agency of the Federal Government or under or in connection with a housing or urban development program administered by the Secretary or a housing or related program administered by any other such officer or agency; or

(iii) is intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation; or

(iv) is made in whole or in part by any "creditor", as defined in section 1602(f) of Title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year, except that for the purpose of this chapter, the term "creditor" does not include any agency or instrumentality of any State;

142. Plaintiff alleges that defendants violated 12 U.S.C. § 2605(c)(1), which states in pertinent part: "Each transferee servicer to whom the servicing of any federally related mortgage loan is assigned, sold, or transferred shall notify the borrower of any such assignment, sale, or transfer," 12 U.S.C. § 2605(c)(1); ***De Souza v. JP Morgan & Chase Co.***, No. 1:13-CV-2447-TWT, 2014 WL 1338762, at *2 (N.D. Ga. Apr. 2, 2014).

143. And such notice must generally "be made to the borrower not more than 15 days after the effective date of transfer of the servicing of the mortgage loan," 12 U.S.C. § 2605(c)(2)(A). ***Id.***

144. "Whoever fails to comply with any provision of [section 2605] shall be liable to the borrower." 12 U.S.C. § 2605(f). ***Id.***

145. "Any action pursuant to ... section 2605 ... may be brought ... within 3 years ... of a violation of section 2605." 12 U.S.C. § 2614 (emphasis added). ***Id.***

146. Plaintiff alleges that for the past several years, she has sent out QWRs (, Notices of Error, and Requests for Information pursuant to Regulation X

147. Sections 1024.35 (Notice of Error) and 1024.36 (Request for Information) of Regulation X were both promulgated pursuant to Section 6 of RESPA and thus subject to RESPA's private right of action[11].

---

(9) the term "Bureau" means the Bureau of Consumer Financial Protection.

[11] See 78 Fed. Reg. 10696, 10714, FN. 64 (Feb. 14, 2013)("The [CFPB] notes that regulations established pursuant to section 6 of RESPA are subject to section 6(f) of RESPA, which provides borrowers a private right of action to enforce such regulations"). See also 78 Fed. Reg. at 10737, 10753 (the CFPB noting that Section 1024.35 and 1024.36 implement Section 6(k)(1)(C) and 6(k)(1)(D) respectively).

148. The CFPB's authority to prescribe such regulations under Section 2605(k)(1)(E), is stated in Section 2617 of RESPA.[12]:

149. Plaintiff alleges that the listed servicers, Fay, StateBridge, WSFS, and Primestar have repeatedly failed and refused to comply with 12 C.F.R. § 1024.36(d) in that they all failed and refused to provide adequate responses to numerous requests for information within the required timeframe.

150. As such, Fay, StateBridge, WSFS, and Primestar have violated 12 U.S.C. § 2605(k)(1)(E).

151. Further, Fay, StateBridge, WSFS, and Primestar failed or refused to comply with 12 C.F.R. § 1024.36(d)(2)(i)(A) in that they did not address or provide relevant contact information for the true "owner" of Plaintiff's Promissory Note within ten (10) days after receiving such request.

152. As such, Plaintiff alleges that Fay, StateBridge, WSFS, and Primestar have violated 12 U.S.C. § 2605(k)(1)(D).

153. Plaintiff further alleges that US Bancorp has never responded to QWRs, NEDVRs, or FOIAs.

154. Defendants US Bancorp, Fay, StateBridge, WSFS, and Primestar have demonstrated and continue to demonstrate a pattern and practice of repeatedly and intentionally/knowingly violating 12 U.S.C. § 2601 et seq. [also known and referred to as the Real Estate Settlement Procedures Act of 1974 or "RESPA", the "Cranston-Gonzalez

[12] "The [CFPB] is authorized to prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617.

National Affordable Housing Act" and or "Regulation X"] in conjunction with the servicing of Plaintiff's Loan/Account at issue in this case.

155.   Over the past several years, Plaintiff has sent all of these defendants requests for information, to which defendants most often, never provided a response.

156.   Plaintiff alleges that she has consistently requested information about her loan and identity of her lender, and the information has always been withheld from her.

157.   Plaintiff is entitled to actual damages as a result of Defendants' failures to comply with Regulation X and RESPA, pursuant to 12 U.S.C. § 2605(f)(1)(A), including but not limited to: photocopying costs and postage costs incurred as a result of having to send additional correspondences due to StateBridge's failure to adequately respond to Plaintiff's requests for information.

158.   Plaintiff is entitled to statutory damages in an amount not greater than $2000 pursuant to 12 U.S.C. § 2605(f)(1)(B), as a result of defendants' pattern or practice of noncompliance with Regulation X and RESPA.

159.   StateBridge has also violated Regulation X with respect to numerous loans it services, including, but not limited to the following loans:

(1) With respect to loan number ******9791, StateBridge violated 12 C.F.R. § 1024.36(d)(2)(i)(B) by failing to provide an adequate written response to a request for information within the required timeframe.

(2) With respect to loan number ******3460, StateBridge violated 12 C.F.R. § 1024.36(d)(2)(i)(B) by failing to provide an adequate written response to a request for information within the required timeframe.

(3) With respect to loan number ******0479, StateBridge violated 12 C.F.R. § 1024.36(d)(2)(i)(B) by failing to provide an adequate written response to a request for information within the required timeframe.

160. Plaintiff is entitled to the costs of this action, together with a reasonable attorney's fee as determined by the Court, pursuant to 12 U.S.C. § 2605(f)(3).[13]

<u>FOURTH CLAIM FOR RELIEF</u>
<u>VIOLATIONS OF 15 U.S.C. § 1639g AND § 1641(f)(2)</u>
<u>(Against All Defendants)</u>

161. Section 1639g of TILA states: "A creditor or servicer of a home loan ***shall*** send an accurate payoff balance within a reasonable time but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." <u>15 U.S.C. §1639g.</u>

162. Plaintiff alleges that the loan servicers, Fay, StateBridge, WSFS, and Primestar ("the servicers" or "these servicers") failed and refused to confirm the identity of, and to provide the address and telephone number for, the owner or holder of the note, true secured creditor contrary to 15 U.S.C. § 1641(f)(2).

163. Plaintiff is a consumer[14], who has been denied payoff requests, made pursuant to 15 U.S.C. §1639g. and 12 C.F.R. 1026.36(c)(3) Regulation Z.

164. BOA/BAC is a "creditor"[15] within: 15 U.S.C. §1639(t) states: "(2) Prompt delivery.

[13] Plaintiff understands and realizes that she cannot be awarded attorney's fees as a litigant proceeding in ***Propria Persona***, but Plaintiff has never had and intent on remaining Pro Se, and continues attempting to locate and retain competent legal counsel. The attorney's fees are requested only for an attorney retained to complete the case.

[14] This section defines a consumer as follows: "(i)...'consumer', used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes" (15 U.S.C.A. § 1602 (West)).

[15] "The term 'creditor' refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which

Payoff balances shall be provided within 5 business days after receiving a request by a consumer or a person authorized by the consumer to obtain such information". 15 U.S.C.A. § 1639 (West).

165. Plaintiff alleges that the rest of the defendants fall within the definition of servicer in this code section. "A creditor or servicer[16] of a home loan shall send an accurate payoff balance within a reasonable time, but in no case more than 7 business days, after the receipt of a written request for such balance from or on behalf of the borrower." 12 C.F.R. § 1026.36(c)(3).

166. Plaintiff alleges that to date, these loan servicers have failed and refused to provide an accurate payoff statement, contrary to 15 U.S.C. § 1639g.

167. Fay, StateBridge, WSFS, and Primestar were obligated to disclose the identity of the owner of the obligation, as well as its address and telephone number pursuant to 12 C.F.R. § 1024.36(d)(2(i)(A) of Regulation X, which they failed and refused to disclose.

168. More specifically, § 1641(f)(2) states in part: "Upon written request by the obligor, the servicer shall provide the obligor, to the best knowledge of the servicer, with the name, address, and telephone number of the owner of the obligation..." (15 U.S.C.A. § 1641 (West)).

169. Plaintiff was never provided the required information, the name, address, and

---

is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness..." (15 U.S.C.A. § 1602 (West)).

[16] Servicer means a person responsible for the servicing of a federally related mortgage loan (including the person who makes or holds such loan if such person also services the loan). 12 C.F.R. § 1024.2

telephone number of the owner of the obligation; which was the investors of the Trust; Plaintiff was denied the name of the Trust.

170. 12 C.F.R. § 1024.36(d)(2)(i)(A) requires a servicer to provide a response "not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the ***identity*** of, and address, or other relevant contact information for, the ***owner*** or assignee of a mortgage loan" (emphasis added).

171. Plaintiff did not receive a response prior to the expiration of the ten days.

172. The servicers were all obligated, but failed, to provide a written response to Plaintiff within thirty (30) business days, which included the requested information, or stated that the "requested information is not available to the servicer" and the "basis for the servicer's determination". See 12 C.F.R. § 1024.36(d), which to date, they have failed and refused to provide.

173. The CFPB has acknowledged that "There is evidence that borrowers [have been] subjected to improper fees that servicers had no reasonable basis to impose, improper force-placed insurance practices, and improper foreclosure and bankruptcy practices." ***78 Fed. Reg. 10902, 10906*** (Feb. 14, 2013)(emphasis added).

174. Plaintiff alleges that she had not defaulted when her payments began going into a suspense, of unapplied fund account, and the servicer had purposefully caused a default on the loan.

175. Plaintiff believes and therefore alleges that the servicer was collecting the penalties and fees added to the debt for the servicer's on use.

176. The Note signed by Plaintiff in connection with the loan serviced by Statebridge,

Fay, WSFS, and/or Primestar is a consumer credit transaction[17] within the meaning of, and subject to TILA.

177. Plaintiff's loan is a "residential mortgage transaction" as defined by 15 U.S.C. § 1602(x)[18]

178. Both Plaintiff, and her auditor specifically requested the "full name, address and telephone number of the current owner of the original note.

179. Plaintiff alleges that, to date, no one has complied with 15 U.S.C. § 1641(f)(2).

180. Plaintiff alleges that Statebridge, Fay, WSFS, and/or Primestar have repeatedly failed and refused to provide an accurate payoff statement, in violation of 15 U.S.C. § 1639g. ***Exhibit R***.

181. Plaintiff further alleges that Statebridge, Fay, WSFS, and/or Primestar have repeatedly failed and refused to properly address specific inquiries for a detailed explanation of specific fees and charges, including, but not limited to inspections, force placed insurance, escrow payments, unapplied funds accounts.

182. Upon information and belief, one of the very specific functions the Servicing Agreement was designed to cover was loan servicers' responding to requests for

[17] The term consumer credit transaction is defined as "a credit transaction, primarily for a personal, family, or household purpose, that bears a finance charge, or such a transaction payable in more than four installments without a finance charge (designed to exclude sales with a down payment and thirty/sixty/ninety days 'same as cash' but to include longer-term credit with a finance charge built into the price).

[18] The term "residential mortgage transaction" means a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling.

information, notices of error, and requests for payoff statements.

183. Having personally observed the numerous changes in loan servicers first hand, Plaintiff alleges that the owner of the loan can terminate the loan servicer at any time.

184. Plaintiff sent out several ***Notice of Error/Debt Validation/Request for Information*** to different servicers around once a year, pursuant to 15 U.S.C. §1641(f)(2) of TILA the full name, address and telephone number of the current owner of the original mortgage note, and stated that it was also a Request for Information pursuant to 12 C.F.R. §1024.26(d)(2)(i)(A), and that they must acknowledge the request within five (5) days, and respond within ten (10) business days after receiving the request.

185. The last request for validation of the debt, and payment history was made by the auditor/investigator Plaintiff hired, hoping to get the full information she was seeking ***EXHIBIT P page 3***.

186. Plaintiff has repeatedly attempted to obtain a full payment history in order to determine where a default had occurred, and has yet to obtain such payment history.

187. According to the Auditor, and as told to Plaintiff when she sought information, the only payment history existing begins on 09/15/2014 and goes through 11/15/2017.

188. The information omits 96 months of Plaintiff's payment history that no one apparently has possession of, making validation of the debt impossible ***Exhibit P page 3***.

189. A fact that Plaintiff did not know, because the repeated refusals to provide the information Plaintiff had repeatedly attempted to obtain.

190. The servicers have all repeatedly refused to provide Plaintiff, and now the auditor, with truthful answers concerning the full loan history, and the identity of who owns the

loan.

191. As a direct and proximate cause of the loan servicers' actions/inactions, Plaintiff has been harmed, injured, and suffered damages.

192. Plaintiff is entitled to the following damages for violations by the listed loan servicers: statutory damages of not less than $400, nor greater than $4,000.00 pursuant to 15 U.S.C. §1640(a)(2)(A)(iv), and the costs of this action together with reasonable attorney's fees as determined by the Court and pursuant to 15 U.S.C. § 1640(a)(3).

## FIFTH CLAIM FOR RELIEF
## NEGLIGENCE
## (Against All Defendants)

193. Defendants owed numerous duties to Plaintiff with respect to the servicing of her mortgage, including, but not limited to the following:

(i) Duty to meet the ordinary standard of care for professionals in the loan servicing industry;

(ii) Duty of care not to inflict harm upon Plaintiff by reporting false information to credit bureaus;

(iii) Duty of care to properly administer the payments Plaintiff made to the lender;

(iv) Duty of care not to foreclose on Plaintiff's home while she was in the middle of her loan application be granted or denied;

(v) Duty of care to service Plaintiff's loan in a non-negligent manner once Defendants undertook the servicing of Plaintiff's loan;

(vi) Duty of care to diligently investigate Plaintiff's claims that she had not missed any payments;

(vii) Duty of care not to publish false and defamatory information in the

public records of DeKalb County Georgia Records;

(viii) Duty of care to maintain proper and accurate loan records; and

(ix) Duty of care to institute reasonable safeguards to prevent the breach of the above duties of care.

194. The servicer defendants' actions breached the above duties of care in at least the following ways:

(i) Failing to properly credit Plaintiff's accounts for the payments she made on the mortgage;

(ii) Failing to diligently investigate Plaintiff's numerous and repeated claims via mail and telephone that she had not missed any payments;

(iii) Transmitting false and defamatory information to its agent law firm charged with performing the foreclosure;

(iv) Publishing false and defamatory information to the credit bureaus;

(v) Publishing and recording into the DeKalb County Georgia Records, false and defamatory information by way of the Deed Under Power;

(vi) Wholly failing to institute reasonable safeguards to prevent the above breaches.

195. As a direct and proximate cause of the servicers' and their agent's breaches, Plaintiff has suffered severe economic, emotional, and physical harm as a result of the servicer defendants' actions/inactions.

WHEREFOR, Plaintiff Prays for the relief shown in the Final Prayer for Relief.

## SIXTH CLAIM FOR RELIEF
## FEDERAL DEBT COLLECTION PRACTICES ACT VIOLATIONS
## (Against Chaness, Statebridge, Fay, WSFS, and Primestar)

196. § 1692a of the FDCPA defines "debt collector" as the following:

> The term "debt collector" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly, or indirectly, debts owed or due or asserted to be owed or due another... For the purpose of §1692f(6) of this title, such term also includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests..."

15U.S.C. § 1692a(6).

197. The substantive provisions of the FDCPA that follow § 1692a prohibit "debt collectors" from taking certain actions, which Plaintiff alleges were taken regarding her loan and the attempts to collect a debt.

198. The letters attached as ***EXHIBIT Q*** indisputably show the very first thing on the first page at the top states in extra-large bold font: **"This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose."**

199. The referenced subject of the letter is: Promissory Note …in favor of Wilmington Savings Fund Society, FSB…(assignee of U.S. Bank National Association, as Trustee…as assignee of Bank of America, N.A., ..secured by that certain Security Deed…each of the above described instruments being referred to herein as the "Loan Documents".

200. On the second page of the letter dated Sept. 25, 2015, is stated: "Since the above amount was not paid ...then in accordance with the terms and conditions of the Loan

Documents, the entire amount of the present outstanding balance of both the principal and accrued interest at the default rate on indebtedness evidenced by the Loan Documents and secured by the Loan Documents, all late charges incurred on the indebtedness evidenced by the Loan Documents, all interest incurred at the default rate specified in the Loan Documents and all other charges provided for under the Loan documents...shall be considered without further action or notice by Lender or its counsel, declared immediately due and payable.".

201.    The letter goes on to state that any money expended by Lender in accordance with the terms and conditions of the Loan Documents shall be added....

202.    The last page, above the blue ink signature of Guillermo Todd, in large bold letters states:  **"This law firm is acting as a debt collector.  This is an attempt to collect a debt and any information obtained will be used for that purpose."**

203.    Also on page three, "Notice is also hereby given to you pursuant to O.C.G.A. § 13-4-4, that Lender continues to rely on and hereby continues to require strict compliance with each and every term and condition of the Loan Documents and the other documents evidencing and securing the indebtedness evidenced by the Secured Indebtedness..."

204.    The letter further stated "This letter shall also serve as notice that lender intends to initiate foreclosure proceedings on the first Tuesday of October, 2015 and may also exercise other rights under the Loan Documents, which rights will be in addition to the rights which are exercised, noticed or discussed herein. [*Ex Q,p.2*]

205.    The advertisement shows Primestar as attorney in fact for Plaintiff and her ex, who had quit claimed the property to Plaintiff in the divorce.

206. Plaintiff received three such letters, the dates of which were December 31 ,2014, August 21, 2015, and September 25, 2015. [*Ex. Q]* the two later letters both had a Notice of Sale Under Power advertisement as the last page, for a sale date of the first Tuesday in October, 2015.

207. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. §1692a(3), in that Defendant sought to collect from Plaintiff a debt incurred for personal, family or household purposes as defined in the FDCPA at 15 U.S.C. 1692a(3).

208. Plaintiff had sent a QWR letter that was not responded to; and applied for a loan modification.

209. Defendants Chaness, US Bancorp, Statebridge, Fay, WSFS, and Primestar is, ***inter alia***, regularly engaged in the business of collecting debts owed to others incurred for personal, family or household purposes by acquiring those debts after they were in default for the purposes of collecting the debts for others.

210. According to what defendants claim, each of them acquired the debt at issue herein while the debt was in default.

211. The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. (15 U.S.C. § 1692a(5)). ***Reese v. Ellis, Painter, Ratterree & Adams, LLP***, 678 F.3d 1211, 1216 (11th Cir. 2012).

212. Plaintiff alleges that under the above definition encompasses Plaintiff's payment

obligations under the promissory note.

213. Under the promissory note, Plaintiff is a consumer who must pay money to lender, or holder of the note, which obligation arose from a transaction involving Plaintiff's personal, family, or household purposes, in that she lives on the property.

214. The promissory note is a "debt" within the plain language of § 1925(a)(5); a letter requesting payment on a promissory note secured by a mortgage as an attempt at debt collection within the meaning of FDCPA.

215. Plaintiff alleges that the servicer defendants are clearly debt collectors under the definition of FDCPA.

216. Pursuant to 15 U.S.C. § 1692a(4), the definition of creditor is: "creditor" means any person who offers or extends credit creating a debt or to whom a debt is owed, but such term does not include any person to the extent that he receives an assignment or transfer of a debt in default solely for the purpose of facilitating collection of such debt for another, which is what defendants did in this case.

217. A promissory note is a contract evidencing a debt and specifying terms under which one party will pay money to another. See Black's Law Dictionary 1089 (8th ed. 2004) (defining "promissory note" as an "unconditional written promise, signed by the maker, to pay absolutely and in any event a certain sum of money either to, or to the order of, the bearer or a designated person"); see also Ga.Code Ann. § 11–9–102(a)(64) (" 'Promissory note' means an instrument that evidences a promise to pay a monetary obligation....") ***Reese v. Ellis, Painter, Ratterree & Adams, LLP***, 678 F.3d 1211, 1216 (11th Cir. 2012)\

218. By contrast, a security interest is not a promise to pay a debt; it is an interest in some

collateral that a lender can take if a debtor does not fulfill a payment obligation. See Black's Law Dictionary 1384 (8th ed. 2004) (defining a "security" as "[c]ollateral given or pledged to guarantee the fulfillment of an obligation"). A mortgage is a type of security interest with real property as the collateral. See Black's Law Dictionary 1031 (8th ed. 2004); see also Ga.Code Ann. § 44–14–30 ("A mortgage in this state is only security for a debt and passes no title."). *Id.*

219. The FDCPA prohibits a "debt collector" from using a "false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

220. Each of the letters shows that payment was being demanded, and brought up that the author of the letter could negotiate, as the Lender could, with Plaintiff, See ***Gburek v. Litton Loan Servicing LP***, 614 F.3d 380, 386 (7th Cir.2010) (holding that a letter threatening foreclosure while also offering to discuss "foreclosure alternatives" qualified as a communication related to debt collection activity within the meaning of § 1692e).

221. A party can qualify as a "debt collector" either by using an "instrumentality of interstate commerce or the mails" in operating a business that has the principal purpose of collecting debts or by "regularly" attempting to collect debts.

222. According to LinkedIn[19], the firm's specialties are: Financial Institutions, Corporate Transactions & Securities, Intellectual Property & Technology, Litigation & Dispute Resolution, Real Estate, Development & Construction, and Lending, Workout &

[19] https://www.linkedin.com/company/busch-slipakoff-&-schuh-llp/ see Also Company details Website: http://www.bssfirm.com/attorneys/bryan-busch/. They have offices @ 3330 Cumberland Blvd, in Atlanta, Jacksonville, FL, and West Palm Beach Florida.

Foreclosure.

223. ***Exhibit Q*** indicates "Because of interest, late charges, and other charges that may vary from day to day, the amount due on he day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information write the undersigned of call (770) 790-3550".

224. Plaintiff alleges that Chaness violated FDCPA, and that as a direct and proximate cause, Plaintiff has been harmed, injured and made to suffer damages.

225. WHEREFORE, the Plaintiff prays for the relief shown in the final prayer for releief.

<u>SEVENTH CLAIM FOR RELIEF</u>
<u>CONVERSION</u>
<u>(Against all Servicer Defendants)</u>

226. Plaintiff alleges that the servicer defendants repeatedly converted her money by holding her monthly mortgage payments in a separate account rather than applying them to her loan, for the sole purpose of charging Plaintiff late fees, interest and other charges.

227. The loan servicer, in control of the money used as payment, then holding it in either an unapplied funds account or a suspense account, rather than applying the funds contractually due, defendants asserted dominion over the funds.

228. The servicer began withholding the payments in a suspense account or unapplied funds account, thereby there was an actual conversion of the funds.

229. Actual conversion means: "any distinct act of dominion and control wrongfully asserted over another's personal property" in denial or inconsistent with his right of

ownership.

230. Plaintiff alleges that when she made her monthly mortgage payments to the loan servicer, the servicer failed to appropriately apply her payments to the outstanding debt.

231. Once the payments was made, the funds were no longer in Plaintiff's control.

232. Withholding the payments, and not properly posting them in satisfaction of the amounts contractually due, the servicer wrongfully asserted dominion over the funds.

233. As a direct and proximate cause of the servicer defendants' actions/inactions, Plaintiff has been harmed, injured, and made to suffer damages.

WHEREFORE, Plaintiff prays for the relief shown in her final prayer for relief.

## JURY TRIAL DEMANDED

Plaintiff demands that a jury be called for determination of all questions of fact.

## FINAL PRAYER FOR RELIEF

Plaintiff prays that the judge will find in her favor on all claims and for the following relief:

a) For the first claim for relief, Breach of Contract, Plaintiff prays the Court will Grant her a modification, consisting of a principal reduction, a fixed interest rate of 1.0 or 2.0% for the life of the loan, and/or for the relief a jury finds she is

entitled to, and/or the terms the Court feels fair and just;

b) For the second claim for relief, Wrongful Foreclosure, Plaintiff prays that the Court will Grant her a loan modification, consisting of a principal reduction, with a fixed interest rate of .00% for the life of the loan, and/or for the relief a jury finds she is entitled to, and/or the terms the Court feels fair and just;

c) For the third claim for relief, for violations of 12 U.S.C. §§ 2601 and 2605 Plaintiff prays that the Court will Grant her the maximum allowable, and costs of this action, together with a reasonable attorney's fees, should Plaintiff find and retain legal counsel, and as determined by the Court, pursuant to 12 U.S.C. § 2605(f)(3), and/or for the relief a jury finds she is entitled to, and/or the terms the Court feels fair and just.;

d) For the fourth claim for relief, violations of 15 U.S.C. § 1639g AND § 1641(f)(2), Plaintiff prays that the Court will Grant her statutory damages of not less than $400, nor greater than $4,000.00 pursuant to 15 U.S.C. §1640(a)(2)(A)(iv), and the costs of this action together with reasonable attorney's fees as determined by the Court and pursuant to 15 U.S.C. § 1640(a)(3), and/or for the relief a jury finds she is entitled to, and/or the terms the Court feels fair and just;

e) For the fifth claim for relief, Negligence, Plaintiff prays that the Court find in her favor and Grants her statutory damages, punitive damages, and the maximum allowable other allowable damages, that a jury finds her entitled to, and/or the terms the Court feels fair and just;

f) For the sixth claim for relief, FDCPA violations, Plaintiff prays that the Court will grant her the maximum allowable under the FDCPA, and/or the terms the Court feels fair and just;

g) For the seventh claim for relief, Conversion, Plaintiff prays that the Court finds in her favor and grants statutory damages, punitive damages, and the maximum allowable other allowable damages, that a jury finds her entitled to, and/or the terms the Court feels fair and just;

h) Plaintiff prays for any relief that she is entitled to, but failed to list, and any relief that the Court feels fair and just under the circumstances stated above.

Respectfully submitted, this 12th day of October, 2018.

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083
(404) 518-6496

VERIFICATION

Oni Roberts having appeared before me, the undersigned notary, who after being duly sworn deposes and says:

I am over the age of twenty-one (21) and competent to testify in this matter, I suffer from no known disabilities, and I make this statement under penalty of perjury. I have prepared and reviewed the foregoing Complaint, all statements and facts are true and correct to the best of my knowledge and belief, and come from first-hand knowledge. All Exhibits are true, correct, unaltered copies. If called upon to testify at trial, I will testify exactly as I have herein.

Oni Roberts

Sworn to and Subscribed Before Me
This 12 day of October, 2018

NOTARY PUBLIC, State of Georgia

Janet Diane McDonald
NOTARY PUBLIC
DeKalb County
State of Georgia
My Commission Expires February 13, 2022

My Commission Expires: ______________

## EXHIBIT INDEX

| | |
|---|---|
| EXHIBIT A | Special Warranty Deed |
| EXHIBIT B | Security Deed |
| EXHIBIT C | Assignment to Fay or notice letter from lender(s) |
| EXHIBIT D | Assignment to US Bank |
| EXHIBIT E | Evidence of application for loan modification with Fay |
| EXHIBIT F | 09/16/2014 Letter from StateBridge and loan # to xxxxx1276 |
| EXHIBIT G | 09/24/2014 Letter from StateBridge currently due $309,440.98 |
| EXHIBIT H | Wilmington Savings as Trustee for Prime changed loan number |
| EXHIBIT I | 09/23/2014 correspondence from Frederick Fajardo |
| EXHIBIT J | Communication back to Fajardo difference of $2,892.05 |
| EXHIBIT K | StateBridge re to QWR:  Notice of Intent to Accelerate Loan |
| EXHIBIT L | November 26, 2014 Letter from StateBridge about QWR |
| EXHIBIT M | Deed Under Power, property sold for $100.00! |
| EXHIBIT N | Pages from Abstract of Title |
| EXHIBIT O | Tax Commissioner $324,300.00, owed is $7,867.62 |
| EXHIBIT P | Audit |
| EXHIBIT Q | Foreclosure Notice Letters |
| EXHIBIT R | Defendants repeatedly refused to provide accurate payoff. |

# EXHIBIT A

## Special Warranty Deed

Deed Book 19045 Pg 29
Filed and Recorded Aug-15-2006 08:16am
2006-0155444
Real Estate Transfer Tax $302.00
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

File #5032 / 5371 Charity Way
Oni Roberts

Return to:
Shuping, Morse & Ross, LLP
6259 Riverdale Road
Riverdale, GA 30274
Attn: Reconveyance Dept.

**SPECIAL WARRANTY DEED**

**STATE OF TEXAS**
**COUNTY OF HARRIS**

**THIS INDENTURE** is made the 25th day of July, in the year **TWO THOUSAND SIX** between

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE**

as party or parties of the first part, hereinafter called Grantor and

**ONI ROBERTS and FORREST G. ROBERTS, JR.**

as party or parties of the second part, hereinafter called Grantee (the words "Grantor" and "Grantee" to include their respective heirs, successors, and assigns where the context requires or permits).

**WITNESSETH** that: **GRANTOR,** for and in consideration of the sum of Ten and no/100 Dollars ($10.00) and other valuable considerations in hand paid at and before the sealing and delivery of these presents, the receipt whereof is hereby acknowledged, has granted, bargained, sold, aliened, conveyed and confirmed, and by these presents does grant, bargain, sell, alien, convey and confirm unto the said Grantee:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PURPOSE OF INCORPORATING HEREIN.

**THIS CONVEYANCE** is executed subject to all easements, covenants and restrictions of record.

**TO HAVE AND TO HOLD** the said tract or parcel of land, with all and singular the

Deed Book 19045 Pg 30
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

rights, members and appurtenances thereof, to the same being, belonging, or in anywise appertaining to the proper use, benefit and behoof of said Grantee forever in **FEE SIMPLE.**

**AND THE SAID GRANTOR WILL WARRANT AND FOREVER DEFEND** the right and title to the above described property unto the said Grantee against the claims of all persons claiming by, through or under Grantor only.

**IN WITNESS WHEREOF,** the Grantor has signed and sealed this deed, the day and year above written.

**DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE**

By: Stacey Bayley
Name: Stacey Bayley
Title: Vice President
LITTON LOAN SERVICING, LP
ATTORNEY-IN-FACT
By: ______
Name: ______
Title: ______

(CORPORATE SEAL)

Signed, sealed and delivered in the presence of:

Rosemarie Salazar
Witness

Notary Public

CAROL C. CHARLTON
MY COMMISSION EXPIRES
APRIL 19, 2010

EXHIBIT "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PURPOSE OF INCORPORATING HEREIN.

# EXHIBIT B

## Security Deed

Deed Book 19045 Pg 31
Filed and Recorded Aug-15-2006 08:14am
2006-0155445
Georgia Intangible Tax Paid $906.00
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

Return To: LOAN # 6864351371
FL9-700-01-01
JACKSONVILLE POST CLOSING
BANK OF AMERICA
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256

RETURN TO:
SHUPING, MORSE & ROSS
6259 Riverdale Road
Riverdale, GA 30274-1608

Prepared By:
CHRISTINA PAYNE
BANK OF AMERICA, N.A.
9000 SOUTHSIDE BLVD., #600
JACKSONVILLE, FL 322560000

5032
ROBERTS

(Space Above This Line For Recording Data)

LOAN # 6864351371

# SECURITY DEED

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated JULY 26, 2006, together with all Riders to this document.
(B) "Borrower" is ONI ROBERTS AND FORREST G ROBERTS JR., MARRIED

Borrower is the grantor under this Security Instrument.
(C) "Lender" is BANK OF AMERICA, N.A.

Lender is a NATIONAL BANKING ASSOCIATION organized and existing under the laws of THE UNITED STATES OF AMERICA.

GEORGIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT Form 3011 1/01

-6(GA) (0005)
Page 1 of 15 Initials:
VMP MORTGAGE FORMS - (800)521-7291

CVGA 07/24/06 12:47 PM 6864351371

STONE MOUNTAIN JUDICIAL CIRCUIT
SUPERIOR COURT
DEKALB COUNTY, GA
State of Georgia, DeKalb County
The undersigned officer of DeKalb Superior Court certifies that this is a true and correct copy of the original document which is on file and of record in the Office of the Clerk of Superior Court. Witness my hand and seal of the Superior Court of DeKalb County Georgia.
This 9th day of Nov. 20 15
Signature
Deputy Clerk, DeKalb County Superior Court
Deed BOOK 19045 PAGE 31-47

Lender's address is 9000 SOUTHSIDE BLVD., #600, JACKSONVILLE, FL 322560000

Lender is the grantee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated JULY 25, 2006. The Note states that Borrower owes Lender THREE HUNDRED TWO THOUSAND AND 00/100 Dollars (U.S. $ 302,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than AUGUST 01, 2036.
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |

WAIVER OF BORROWER'S RIGHTS AND CLOSING ATTORNEY'S AFFIDAVIT

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and



restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the COUNTY [Type of Recording Jurisdiction] of DEKALB [Name of Recording Jurisdiction]:

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF." EXHIBIT "A"

Parcel ID Number: 1607402043 which currently has the address of
5371 CHARITY WAY [Street]
STONE MOUNTAIN [City], Georgia 30083 [Zip Code]
("Property Address"):

TO HAVE AND TO HOLD this property unto Lender and Lender's successors and assigns, forever, together with all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the



Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the



term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.



Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was

required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.



8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property (as set forth below). Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, making repairs, replacing doors and windows, draining water from pipes, and eliminating building or other code violations or dangerous conditions. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and



Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security



Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with

Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental



protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale granted by Borrower and any other remedies permitted by Applicable Law. Borrower appoints Lender the agent and attorney-in-fact for Borrower to exercise the power of sale. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give a copy of a notice of sale by public advertisement for the time and in the manner prescribed by Applicable Law. Lender, without further demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Lender determines. Lender or its designee may purchase the Property at any sale.

Lender shall convey to the purchaser indefeasible title to the Property, and Borrower hereby appoints Lender Borrower's agent and attorney-in-fact to make such conveyance. The recitals in the Lender's deed shall be prima facie evidence of the truth of the statements made therein. Borrower covenants and agrees that Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it. The power



and agency granted are coupled with an interest, are irrevocable by death or otherwise and are cumulative to the remedies for collection of debt as provided by Applicable Law.

If the Property is sold pursuant to this Section 22, Borrower, or any person holding possession of the Property through Borrower, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Borrower or such person shall be a tenant holding over and may be dispossessed in accordance with Applicable Law.

23. Release. Upon payment of all sums secured by this Security Instrument, Lender shall cancel this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. Waiver of Homestead. Borrower waives all rights of homestead exemption in the Property.

25. Assumption Not a Novation. Lender's acceptance of an assumption of the obligations of this Security Instrument and the Note, and any release of Borrower in connection therewith, shall not constitute a novation.

26. Security Deed. This conveyance is to be construed under the existing laws of the State of Georgia as a deed passing title, and not as a mortgage, and is intended to secure the payment of all sums secured hereby.



**BORROWER ACCEPTS AND AGREES** to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

IN WITNESS WHEREOF, Borrower has signed and sealed this Security Instrument.

| | |
|---|---|
| _______________ (Seal) -Borrower | _______________ (Seal) ONI ROBERTS -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) -Borrower |
| _______________ (Seal) -Borrower | _______________ (Seal) FORREST O ROBERTS JR -Borrower |

STATE OF GEORGIA, CLAYTON County ss:

Signed, sealed and delivered in the presence of:

_______________
Unofficial Witness

_______________
Notary Public, Fayette County
State of Georgia

C. H. MORSE JR
COM. EXP.
NOTARY
PUBLIC
MAR 9, 2007
FAYETTE COUNTY, GEORGIA

**EXHIBIT "A"**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PURPOSE OF INCORPORATING HEREIN.



GEORGIA -

Deed Book 19045 Pg 47
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

GRANTOR: ONI ROBERTS

LENDER: BANK OF AMERICA, N.A.

DATE OF SECURITY DEED: 07/25/06

**WAIVER OF BORROWER'S RIGHTS**

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY: (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN HEREIN TO LENDER TO SELL THE PREMISES BY NONJUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE PROVISIONS HEREOF; (2) WAIVES ANY AND ALL RIGHTS WHICH GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES, OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND TO JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER, EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED HEREOF; (3) ACKNOWLEDGES THAT GRANTOR HAS READ THIS DEED AND SPECIFICALLY THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THIS DEED; (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION; AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

READ AND AGREED BY GRANTOR:

Signed, Sealed and delivered in the presence of:

_________________________ (Seal)
ONI ROBERTS -Grantor

_________________________ (Seal)
-Grantor

_________________________
Notary Public

_________________________ (Seal)
-Grantor

_________________________ (Seal)
-Grantor

C. H. MORSE JR. COM. EXP. NOTARY PUBLIC FAYETTE COUNTY GEORGIA

**CLOSING ATTORNEY'S AFFIDAVIT**

Before the undersigned attesting officer personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above loan, but prior to the execution of the Deed to Secure Debt and "Waiver of the Borrower's Rights" by the Borrower(s), I reviewed with and explained to the Borrower(s) the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing the Lender to sell the secured property by a nonjudicial foreclosure under a power of sale, together with the "Waiver of Borrower's Rights" and informed the Borrower(s) of Borrower's rights under the Constitution of the State of Georgia and the Constitution of the United States to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Borrower(s) of Borrower's rights. After said review with and explanation to Borrower(s), Borrower(s) executed the Deed to Secure Debt and "Waiver of Borrower's Rights."

Based on said review with and explanation to the Borrower(s), it is my opinion that Borrower(s) knowingly, intentionally and willingly executed the waiver of Borrower's constitutional rights to notice and judicial hearing prior to any such nonjudicial foreclosure.

Sworn to and subscribed before me on the date set forth above.

_________________________
Notary Public

_________________________
Closing Attorney

**FORECLOSURE CLOSING DISCLOSURE**

O.C.G.A. Section 7-1-1014(3) requires that we inform you that if you fail to meet any condition or term of the documents that you sign in connection with obtaining a mortgage loan you may lose the property that serves as collateral for the mortgage loan through foreclosure.

_________________________
ONI ROBERTS

_________________________

# EXHIBIT C

## Assignment to Fay or notice letter from lender(s)

Servicing Transfer Letter

February 10, 2014

ONI ROBERTS
5371 CHARITY WAY
STONE MTN GA 30083-3660

**New Loan Number:** **48404**
**Property Address:** **5371 CHARITY WAY, STONE MOUNTAIN GA 30083**
**Prior Servicer:** **Bank of America, N.A.**
**Investor:** **U.S. Bank National Association, as Trustee for PROF-2013-M4 Grantor Trust I**
**Current Principal Balance:** **272561.97**
**Current Escrow Balance:** **-14942**

Dear Borrower:

Welcome to Fay Servicing, LLC (Fay Servicing). We are pleased to have you as our new customer. PLEASE READ THIS LETTER CAREFULLY. It contains important information about making payments on your mortgage loan.

**SERVICING TRANSFER**

**LETTER FROM PREVIOUS SERVICER:** You should have received a letter from your previous mortgage company explaining that the servicing of your home loan would be transferred to Fay Servicing. The transfer does not affect the terms and conditions of your loan; it affects only the details associated with the servicing of your loan, such as the loan number and payment address. If you have any questions please contact Bank of America, N.A. at 1.800.655.1491.

**TRANSFER DATE:** Fay Servicing will begin accepting your mortgage payments on February 1, 2014. All payments received after the Transfer Date will be processed by Fay Servicing. If your mortgage payment was received by your previous servicer prior to the Transfer Date, it was processed upon receipt. However, any payments received by your previous servicer after the Transfer Date must be sent to Fay Servicing and will be subject to processing delays.

**MAKING MORTGAGE PAYMENTS**

**BY MAIL (USPS):** If you are making payments by mail, please submit each monthly payment with a Fay Servicing Mortgage Statement that will be mailed to you shortly in a self-addressed envelope that will be sent separately. Make your check payable to Fay Servicing, LLC, write your Fay Servicing Loan Number on your check or money order, and mail your payment to us at the following Payment Processing Address:

*Fay Servicing*
*Customer Service Payment Processing*
*PO Box 3187*
*Carol Stream, IL 60132-3187*

Please allow 6- 10 business days for payment processing. It is important that you mail payments to this Payment Processing Address. Mailing your payment to any other address will result in a delay in posting your payment.

**BY AUTOMATIC PAYMENT (ACH):** If you enroll in our Automatic Payment Plan, your payment will be withdrawn from your bank account on the date your loan payment is due (generally the first day of the month). You can enroll with the ACH Enrollment Form included with this Welcome Kit.

**ONLINE PAYMENTS:** You may make your payment electronically via our secure payment website. You may also choose to GO GREEN and elect paperless billing and viewing of your monthly statement. If you prefer to make payments online, please contact your Account Manager to obtain your Username and Password in order to log in at www.fayservicing.com.

We are a debt collector, and information you provide to us may be used to collect a debt. However, if you have filed for bankruptcy, we will fully respect any applicable automatic stay, modification or discharge. Further, if you filed Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt to collect, recover or offset the discharged debt as your personal liability.



**MILITARY & THIRD PARTY PAYMENTS:** If your payment is made by military allotment or a third party payment service - You must contact the Defense Finance and Accounting Service or your payment service company immediately and instruct them to send your payments to Fay Servicing instead of the previous company. Your payment must include the Payment Processing Address above and your new loan number.

**OTHER IMPORTANT TRANSFER INFORMATION**

**TAX AND INTEREST STATEMENTS:** By January 31, 2012 Fay Servicing and your previous mortgage company will mail statements of mortgage interest and property taxes paid during the period your loan was serviced by each company this year.

**OPTIONAL INSURANCE:** Fay Servicing does not provide any form of optional insurance. Please call us at 800-495-7166 with any questions you may have regarding optional insurance.

**SHRED PREVIOUS SERVICER'S ENVELOPES:** Shred your previous servicer's envelopes. The bar code on the old envelopes will send your payment to the previous servicer even if you write our address on the envelope.

**LOAN PAYOFFS:** If you plan to pay off your loan within thirty days of the Transfer Date, payoff statements will not be available from Fay Servicing or your previous mortgage company for approximately 14 days.

**SYSTEM UPDATE:** Fay Servicing may require one or two business days following the Transfer Date to update our system and access your loan information. We apologize in advance for this delay and appreciate your patience.

**QUESTIONS:** If you have any questions please contact your personal Home Loan Consultant or call us toll free at **800-495-7166.** Our office is open Mon - Fri **9:00 a.m. to 5:00 p.m. (CT) and Saturday 10:00 a.m. to 2 p.m. (CT).** Fay Servicing is committed to providing honest and impeccable service. We look forward to serving you. If you wish to contact Fay Servicing in writing, please do so at Fay Servicing Customer Correspondence, PO Box 220720 Chicago, IL 60622.

**COMPLAINTS:** If you have problems after your loan is transferred during any potential Modification process or for any reason you can send a note to the Office of the President at complaints@fayservicing.com.

**IL RESIDENTS:** The primary regulatory agency having jurisdiction over the Fay Servicing in Illinois is the Illinois Department of Financial and Professional Regulation (IDFPR), 122 S. Michigan Ave., 19th Floor, Chicago, IL 60603.

Sincerely,

Matthew Schuster
Vice President of Servicing

We are a debt collector, and information you provide to us may be used to collect a debt. However, if you have filed for bankruptcy, we will fully respect any applicable automatic stay, modification or discharge. Further, if you filed Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt to collect, recover or offset the discharged debt as your personal liability.

**EXHIBIT D**

**Assignment to US Bank**

2014091439 DEED BOOK 24438 Pg 660
Filed and Recorded:
08/24/2014 12:07:34 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

9 November 15
Deed Book 24438 660-661

This space for Recorder's use

DocID# 1848725393261965 3

Property Address:
5371 Charity Way
Stone Mountain, GA 30083-3660
GA0-ASD 2014C487 3/11/2014 FAY01X

Recording Requested By:
Bank of America
Prepared By:
Yomari Quintanilla
800-444-4302
101 S. Marengo Ave.
Pasadena, CA 91101

When recorded mail to:

Avenue 365 Lender Services, LLC
401 Plymouth Road
Suite 550
Plymouth Meeting, PA 19462
Chicago, IL 60642

# ASSIGNMENT OF SECURITY DEED

For Value Received, the undersigned holder of a Security Deed (herein "Assignor") whose address is 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063 does hereby grant, sell, assign, transfer and convey unto U.S. BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR PROF-2013-S3 REMIC TRUST III, whose address is 60 LIVINGSTON AVENUE, EP-MN-WS3D, ST. PAUL, MN 55107, ATTENTION: STRUCTURED FINANCE SERVICES – PROF all beneficial interest under that certain Security Deed described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Security Deed.

| | |
|---|---|
| Beneficiary: | BANK OF AMERICA, N.A. |
| Made By: | ONI ROBERTS AND FORREST G ROBERTS JR., MARRIED |
| Date of Security Deed: | 7/25/2006 |
| Original Loan Amount: | $302,000.00 |

Recorded in DeKalb County, GA on: 8/15/2006, book 19045, page 31 and instrument number 2006-0155445

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Security Deed to be executed on MAR 19 2014

BANK OF AMERICA, N.A.

By: ______ Trisha Jackson, Assistant Vice President

By: ______ Mercedes Judilla, Assistant Vice President

Witness: ______ Talisha Wallace

Witness: ______ Srbui Muradyan

State of California
County of Los Angeles

On ______ before me, ______, Notary Public, personally appeared ______ and ______, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person (s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(SEE ATTACHED)

Notary Public: ______ (Seal)
My Commission Expires: ______

DEED BOOK 24438 Pg 661
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

ACKNOWLEDGMENT Doc ID ~~644104665929 91329 89~~ 184872659324191653

State of California
County of VENTURA )

On MAR 19 2014 before me, Carmen L. Morse, NOTARY PUBLIC
(insert name and title of the officer)

personally appeared Trisha Jackson AND Mercedes Judilla, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature]
Carmen L. Morse

(Seal) CARMEN L. MORSE
Commission # 1958848
Notary Public - California
Los Angeles County
My Comm. Expires Oct 18, 2015



# EXHIBIT E

## Evidence of application for loan modification with Fay

February 20, 2014

Fay Servicing Mortgage Transfer Department

Matthew Schuster (Vice President Of Servicing)
P.O. Box 3187
Carol Stream, IL 60132-3187

Fay Servicing Customer Correspondence
P.O. Box 220720
Chicago, IL 60603

I have received your correspondence regarding the loan transfer from Bank Of America to Fay Servicing.

I request the opportunity and application of a modification on my mortgage loan from Bank Of America that is apparently now being serviced by Fay Servicing. I have never worked with a servicer, only Bank Of America's Mortgage Department, Directly.

Please send me more information on what a servicer does and what the current payoff is as well as the application for modification. I would also like any additional information that would provide clarity as to how this process works and details of the balance of the loan from Bank Of America as well as the accounting records.

I look forward to hearing from you Matthew Schuster, Vice President Of Servicing.

Sincerely,

Oni Roberts

FAY SERVICING

Joanne E. Thomas
BANKRUPTCY ACCOUNT MANAGER

Fay Servicing, LLC
440 S. LaSalle St., Suite 2000
Chicago, IL 60605

Direct 630.282.7590
Fax 630.282.7539
Toll Free 800.495.7166

jthomas@fayservicing.com
www.fayservicing.com

FAY SERVICING

S SUBURBAN
IL 604
21 MAY '14
PM 10 L

$ 000.48
MAILED FROM ZIP CODE 60605

Oni Roberts
PO Box 2890
1244 Clairmont Road
Suite 222
Decatur GA 30031

Fay Servicing is a debt collector, and information you provide may be used to collect debt. If you have filed for bankruptcy, we will fully respect any applicable automatic stay, and will not consider discharged debt as your personal liability. Our office hours are Monday-Friday 9am to 5pm Saturday 10am to 2pm Central. NMLS ID# 88244 Call today: 1-800-495-7166

05/20/2014

Hello,

I have been making attempts to reach by phone without success. Want to introduce myself as your Personal Account Manager at Fay Servicing.

We need to discuss options for your intent regarding property at

5371 Charity Way
Stone Mountain GA 30083

Please give me a call

Jonne Thomas
630-282-7590

February 20, 2014

Fay Servicing Mortgage Transfer Department

Matthew Schuster (Vice President Of Servicing)
P.O. Box 3187
Carol Stream, IL 60132-3187

Fay Servicing Customer Correspondence
P.O. Box 220720
Chicago, IL 60603

I have received your correspondence regarding the loan transfer from Bank Of America to Fay
Servicing.

I request the opportunity and application of a modification on my mortgage loan from Bank Of
America that is apparently now being serviced by Fay Servicing. I have never worked with a
servicer, only Bank Of America's Mortgage Department, Directly.

Please send me more information on what a servicer does and what the current payoff is as
well as the application for modification. I would also like any additional information that would
provide clarity as to how this process works and details of the balance of the loan from Bank Of
America as well as the accounting records.

I look forward to hearing from you Matthew Schuster, Vice President Of Servicing.


Sincerely,

Oni Roberts

# EXHIBIT F

## 09/16/2014 Letter from StateBridge and loan # to xxxxx1276



STATEBRIDGE

September 16, 2014

ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083

NOTICE OF ASSIGNMENT, SALE AND TRANSFER OF SERVICING RIGHTS

RE: FAY SERVICING LLC (Previous Servicer) Loan Number: 0000048404
Statebridge Company, LLC (New Servicer) Loan Number: 0000021276

Property Address: 5371 CHARITY WAY
STONE MOUNTAIN, GA 30083

Dear ONI ROBERTS,

In accordance with Section 6 of the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. Section 2605), we are informing you that effective September 3, 2014, the servicing of your mortgage loan, that is the right to collect payments from you, has been assigned and transferred to Statebridge Company, LLC. Except in limited circumstances, the law requires that your new servicer, Statebridge Company, LLC must send you this notice of the sale and transfer no later than 15 days after the effective date of transfer or at closing.

Please be assured that transactions of this type are common among financial institutions and have absolutely no bearing on your credit standing. The assignment, sale and transfer of your mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. The transfer of servicing rights, however, may affect the terms of, or the continued availability of, mortgage life or disability insurance or any other type of optional insurance. Not everyone has this type of insurance, but if you do, you should contact your independent insurance agent for alternative coverage options, since it may not be transferable.

Effective September 3, 2014 FAY SERVICING LLC will cease to accept payments relating to your loan. Please direct your payments to Statebridge Company, LLC. Any payments received by FAY SERVICING LLC after September 2, 2014 will be forwarded to Statebridge Company, LLC. Please be advised that any ACH arrangements with FAY SERVICING LLC were discontinued effective September 2, 2014. The address for Statebridge Company, LLC is as follows:

| Send Payments to: | Send Correspondence to: |
|---|---|
| Statebridge Company, LLC | Statebridge Company, LLC |
| Attn: Payment Processing Dept | Attn: Borrower Correspondence Dept |
| 5680 Greenwood Plaza Blvd, Suite 100 S | 5680 Greenwood Plaza Blvd, Suite 100 S |
| Greenwood Village, CO 80111 | Greenwood Village, CO 80111 |

If you have any questions relating to the transfer of ownership and servicing from FAY SERVICING LLC to Statebridge Company, LLC you may contact the customer service department at FAY SERVICING LLC at (800) 495-7166 or you may contact customer service at Statebridge Company, LLC toll free at 1-866-HOME360 (1-(866) 466-3360), between Monday – Thursday 8:00 AM to 9:00 PM, Friday 8:00 AM to 7:00 PM and Saturday 9:00 AM to 1:00 PM CT.

**This is for informational purposes and is not an attempt to collect a debt.**

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF OWNERSHIP OF MORTGAGE LOAN
(15 U.S.C. § 1641(g))

You are receiving this notice because the ownership of your mortgage loan identified below has been sold, assigned, or transferred to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust ("Creditor"). You may contact the prior holder of your mortgage loan, or the servicer of your mortgage loan, if you want to confirm the sale/assignment/transfer of your mortgage loan to the new Creditor.

Information about your Mortgage Loan:

| | |
|---|---|
| Borrower Name(s): | UNI ROBERTS |
| Loan Number: | 1040002932 |
| Address of Mortgaged Property: | 5371 CHARITY WAY<br>STONE MOUNTAIN, GA 30083 |

*Please note the following information regarding the sale/assignment/transfer of your mortgage loan:*

1. Address of the new Creditor:

   P.O. BOX 447
   Odessa, FL 33556

2. Effective date of sale/assignment/transfer of your mortgage loan: 9/3/2014

3. How to reach the party who has authority to act on behalf of the new Creditor, the Servicer of your loan:

   The current Servicer of your loan is Statebridge Company, LLC (your "Mortgage Loan Servicer"). Your Mortgage Loan Servicer is responsible for collecting your mortgage payments, for sending you billing statements and escrow statements and for answering any questions you may have about your mortgage loan.

   The mailing address and phone number of the new Mortgage Loan Servicer for your mortgage loan is:
   Statebridge Company, LLC
   5680 Greenwood Plaza Blvd, Suite 100 S
   Greenwood Village, CO 80111
   Telephone: 1-866-466-3360

4. The transfer of ownership will be recorded in the office of the public land records for the county or local jurisdiction where the property is located.

5. Additional information:

   The transfer of ownership of your loan does not affect any term or condition of your mortgage loan, other than terms directly related to the ownership of your loan.
   This notice does not change the address where you send your mortgage loan payments, as noted above.

# EXHIBIT G

## 09/23/2014 Letter from StateBridge currently due $307,526.47


STATEBRIDGE

November 28, 2014

ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN GA 30083

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: 0X00021270
ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083
Loan Type: Conventional

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address. Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit. The payoff is subject to final audit when presented. Any overpayment or refunds will be mailed directly to the borrower. We will prepare the release of our interest in the property after all funds have cleared.

| | |
|---|---|
| Projected Payoff Date | 12/15/2014 |
| Principal Balance | $272,531.97 |
| Interest Thru 12/15/2014 | $21,548.11 |
| Fees | $391.00 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $14,942.00 |
| Funds owed to borrower | $0.00 |
| Total Payoff | $309,440.28 |
| Per diem | $20.54 |

The next payment due is 3/1/2012. Payments are made by Billing on a Monthly basis. The current interest rate is 2.75000% and the P & I payment is $1,261.40.

PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.

Statebridge Company, LLC
5680 Greenwood Plaza Blvd Suite 100 S
Greenwood Village, CO 80111
(303) 962-6753
(866) 418-3360
(303) 200-7516 Fax

11/10/2015 2:35:20PM

Statebridge Company, LLC

5680 Greenwood Plaza Blvd
Suite 100 S
Greenwood Village CO 80111
Toll Free Number (866) 466-3360

**Loan History Statement**

ONI ROBERTS

Loan ID 0000021276

5371 CHARITY WAY
STONE MOUNTAIN GA 30083

| Trans Date | Eff Date | Due Date | Transaction Amt | Principal | Interest | Escrow | Description |
|---|---|---|---|---|---|---|---|
| 09/15/14 | 09/15/14 | 03/01/12 | $0.00 | | | ($14,942.00 | New Loan |
| 10/16/14 | 10/16/14 | 03/01/12 | ($161.50) | | | | FC Attorney Cost Disburse |
| 11/17/14 | 11/15/14 | 03/01/12 | ($11.45) | | | | Inspections Disburse |
| 11/17/14 | 11/15/14 | 03/01/12 | ($11.45) | | | | Inspections Disburse |
| 01/07/15 | 01/07/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 01/09/15 | 01/09/15 | 08/01/14 | ($2,490.53) | | | ($2,490.53) | County Bill 1 |
| 01/09/15 | 01/09/15 | 10/01/14 | ($2,490.53) | | | ($2,490.53) | County Bill 2 |
| 01/13/15 | 01/13/15 | 03/01/12 | ($450.00) | | | | FC Attorney Fee Disburse |
| 01/16/15 | 01/16/15 | 03/01/12 | ($260.00) | | | | FC Attorney Cost Disburse |
| 01/22/15 | 01/22/15 | 03/01/12 | ($250.00) | | | | FC Attorney Fee Disburse |
| 02/27/15 | 02/10/15 | 03/01/12 | $49.81 | | | $49.81 | Escrow Only Payment |
| 02/27/15 | 02/07/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 03/26/15 | 03/17/15 | 03/01/15 | ($64.07) | | | | Late Charge Assess |
| 04/10/15 | 04/03/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 04/17/15 | 04/17/15 | 04/01/15 | ($64.07) | | | | Late Charge Assess |
| 04/30/15 | 04/28/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 04/30/15 | 04/30/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 05/29/15 | 05/29/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 06/26/15 | 06/26/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 07/10/15 | 06/17/15 | 06/01/15 | ($64.07) | | | | Late Charge Assess |
| 07/17/15 | 07/17/15 | 07/01/15 | ($64.07) | | | | Late Charge Assess |
| 08/14/15 | 08/11/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 08/18/15 | 08/17/15 | 08/01/15 | ($64.07) | | | | Late Charge Assess |
| 08/31/15 | 08/03/15 | 03/01/12 | $1,020.62 | | | $1,020.62 | Tax Refund Report |
| 09/04/15 | 09/04/15 | 03/01/12 | $320.35 | | | | Late Charge Waive |
| 09/11/15 | 09/09/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 10/09/15 | 10/09/15 | 03/01/12 | $0.00 | | | | Foreclosure (Non-Cash) |
| 10/14/15 | 10/13/15 | 03/01/12 | ($12.00) | | | | Inspections Disburse |
| 11/05/15 | 11/05/15 | 09/30/15 | ($1,947.17) | | | ($1,947.17) | County Bill 1 |
| 11/05/15 | 11/05/15 | 11/15/15 | ($1,947.17) | | | ($1,947.17) | County Bill 2 |
| | | | ($9,069.37) | $0.00 | $0.00 | ($22,746.97) | |

| | | | | | |
|---|---|---|---|---|---|
| Ending Principal Balance | $272,561.97 | Gross Interest Paid | $0.00 | Escrow Int /Div Paid | $0.00 |
| Ending Escrow Balance | ($22,746.97) | Assistance Paid | $0.00 | Escrow Int /Div Withheld | $0.00 |
| Ending Unapplied Balance | $0.00 | Net Interest Paid | $0.00 | Taxes Paid | ($7,854.78) |
| Ending Late Charge Balance | $0.00 | Late Charges Paid | $0.00 | Insurance Paid | $0.00 |
| Ending Reserve Acct Balance | $0.00 | | | | |



12/01/2014 3:31:54PM

Statebridge Company, LLC

5680 Greenwood Plaza Blvd
Suite 100 S
Greenwood Village CO 80111
Toll Free Number (866) 466-3360

Loan History Statement

ONI ROBERTS

Loan ID 0000021276

5371 CHARITY WAY
STONE MOUNTAIN GA 30083

| Trans Date | Eff Date | Due Date | Transaction Amt | Principal | Interest | Escrow | Description |
|---|---|---|---|---|---|---|---|
| 09/15/14 | 09/15/14 | 03/01/12 | $0.00 | | | ($14,942.00) | New Loan |
| 10/16/14 | 10/16/14 | 03/01/12 | ($161.50) | | | | FC Attorney Cost Disburse |
| 11/17/14 | 11/15/14 | 03/01/12 | ($11.45) | | | | Inspection Disburse |
| 11/17/14 | 11/15/14 | 03/01/12 | ($11.45) | | | | Inspection Disburse |
| | | | ($184.40) | $0.00 | $0.00 | ($14,942.00) | |

| | | | | | |
|---|---|---|---|---|---|
| Ending Principal Balance | $272,561.97 | Gross Interest Paid | $0.00 | Int On Escrow Paid | $0.00 |
| Ending Escrow Balance | ($14,942.00) | Assistance Paid | $0.00 | Int On Escrow Withheld | $0.00 |
| Ending Suspense Balance | $0.00 | Net Interest Paid | $0.00 | Taxes Paid | $0.00 |
| Ending Late Charge Balance | $0.00 | Late Charges Paid | $0.00 | Insurance Paid | $0.00 |
| Ending Restricted Acct Balance | $0.00 | | | | |

# EXHIBIT H

## Wilmington Savings as Trustee for Prime changed loan number

2014187020 DEED BOOK 24720 Pg 754

Filed and Recorded:
12/26/2014 12:20:15 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**PREPARED BY:**
**U.S. Bank National Association, as trustee for PROF-2013-S3 REMIC Trust III**
**60 Livingston AVE, EP-MN-WS3D**
**St. Paul, MN 55107**
**WHEN RECORDED RETURN TO:**
**Avenue 365 Lender Services**
**401 Plymouth RD, Ste. 550**
**Plymouth Meeting, PA 19462**

**Parcel ID: 1807402043**

## ASSIGNMENT OF SECURITY DEED

**FOR VALUE RECEIVED,** the undersigned, **U.S. Bank National Association,** as trustee for **PROF-2013-S3 REMIC Trust III,** located at **60 Livingston AVE, EP-MN-WS3D, St. Paul, MN 55107** ("ASSIGNOR/GRANTOR"), hereby grants, conveys, assigns to: **Wilmington Savings Fund Society, FSB,** not in its individual capacity but solely as Trustee for the **PrimeStar-H Fund I Trust,** located at **P.O. BOX 447, Odessa, FL 33556** ("ASSIGNEE/GRANTEE") all beneficial interest under that certain **SECURITY DEED** dated **7/25/2006,** and executed by **ONI ROBERTS AND FORREST G ROBERTS JR., MARRIED,** borrower(s) to: **BANK OF AMERICA, N.A.,** as original lender, and certain instrument recorded **8/15/2006,** in **Book: 19045 Page: 31,** or **Instrument: 2006-0155445,** in the Official Records of **DEKALB** County, the State of **Georgia,** given to secure a certain Promissory Note in the amount of **$302,000.00** covering property located at: **5371 CHARITY WAY, STONE MOUNTAIN, Georgia 30083.**

**TOGETHER** with the note or notes therein described and secured thereby, the money due and to become due thereon, with interest, and all rights accrued or to accrue under said Mortgage including the right to have reconveyed, in whole or in part, the real property described therein.

DEED BOOK 24720 Pg 755
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Dated: December 16, 2014

ASSIGNOR: U.S. Bank National Association, as trustee for PROF-2013-S3 REMIC Trust III by Avenue 365 Lender Services LLC, its attorney-in-fact*

Witness MARK RENDA

Witness Paul Whitley

By: ______________________

Name: Corian Kane

Title: Authorized Signatory

*Power of Attorney recorded in DeKalb County, Georgia as Instrument #2014146912, Book 24643, Page 679

State of Pennsylvania

County of Montgomery

Before me, Steven Travascio, duly commissioned Notary Public, on this day personally appeared Corian Kane, Authorized Signatory for Avenue 365 Lender Services LLC, attorney-in-fact for U.S. Bank National Association, as trustee for PROF-2013-S3 REMIC Trust III, personally known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he/she executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 16th day of December, 2014.

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
STEVEN TRAVASCIO, Notary Public
City of Philadelphia, Phila. County
My Commission Expires February 19, 2018

Notary Public's Signature

Printed Name: Steven Travascio

My Commission Expires: 2/19/2018

# EXHIBIT I

09/23/2014 correspondence from Frederick Fajardo



STATEBRIDGE.

September 24, 2014

ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083

866-466-3360
Melissa Schaefer
Ext. 2559

Loan Number: 0000021276
Property Address: 5371 CHARITY WAY, STONE MOUNTAIN, GA 30083
Unpaid Principal Balance: $272,561.97

Dear ONI ROBERTS,

I'd like to welcome you to Statebridge Company, your new mortgage servicer. At Statebridge, we understand the importance of homeownership and we are dedicated to making sure you receive the individual attention and debt management assistance you deserve. The current creditor of your loan is .

I have been assigned to be your Servicing Specialist and will be your main point of contact. I understand today's mortgage market and care about you and your home.

Below are the items included in this welcome packet as well as a brief description of each item.

**Loss Mitigation Information:** If you are in default please review this letter carefully and contact your Servicing Specialist as soon as possible to determine if there is a loss mitigation option that will work for you. If you are not in default, please retain this letter for future reference.

**ACH Enrollment Form:** This form offers you the ability to directly debit a checking or savings account to make your monthly mortgage payment. Once set up, your payment will be automatically drafted each month which will help you avoid the time and hassle of mailing your payment each month and avoid any late fees caused by mail delays.

**3rd Party Authorization Form:** This form allows you to authorize Statebridge to speak to a 3rd party regarding your loan.

**Authorization for Electronic Communication Form:** We understand that many of our customers are using the internet and e-mail to conduct their personal business. Electronic communication reduces paper waste and telephone expenses and is oftentimes more convenient. If you would like to communicate with Statebridge and receive information regarding your loan through e-mail, please complete the attached authorization form.

**Privacy Statement:** This statement describes our privacy policy in accordance with the Gramm Leach Bliley Act.

We look forward to providing you with the service and care you expect and deserve from your mortgage servicer. If you have any questions, please do not hesitate to contact me, or visit our website at www.statebridgecompany.com.

Sincerely,
Frederick Fajardo
Statebridge Company, LLC
5680 Greenwood Plaza Blvd, Suite 100 S
Greenwood Village, CO 80111
866-HOME360 or (866) 466-3360

Fax: 303-290-7516

Statebridge Company, LLC is a debt collector and is attempting to collect a debt. Any information obtained may be used for that purpose. If you are in active bankruptcy or have previously received a discharge in bankruptcy, this correspondence is not and should not be construed to be an attempt to collect a debt, but a possible enforcement of a lien against property.



## Loss Mitigation Information

Statebridge Company, LLC realizes that it can be distressing when you fall behind on your mortgage payments. We want to work with you to help you avoid foreclosure if possible.

The following summarizes some of the loss mitigation strategies Statebridge Company utilizes to help keep borrowers in their homes. Qualifying for individual programs may be dependent upon allowances and requirements as established by the owner or insurer of your mortgage.

**Forbearance Plan-** A forbearance agreement is a written agreement to reduce or suspend payments due on your loan for a limited and specific time period. During the forbearance period, Statebridge will forbear from initiating foreclosure action. Because a forbearance plan may not fully reinstate the loan, the plan will often be followed by the borrower reinstating by one of the following methods based on his/her ability to pay:

| A Lump Sum Payment | Loan Modification |
|---|---|
| A Reinstatement Plan | Short Sale |
| A Repayment Plan | |

Eligibility Requirements for this option are determined on your current ability to pay and the nature of the hardship.

**Repayment Plan-** A repayment plan is an executed plan wherein you agree to pay your currently monthly payment plus an additional amount and a down payment to repay the outstanding debt owed in an established amount of time. If you remit all payments, late charges and advances (property inspections, BPO's, etc.) the completion of the plan results in you bringing your loan current.

Eligibility Requirements for this option require a portion of the unpaid past due debt as a down payment, with the remainder of the unpaid debt being spread out over a period of months. You will make the additional payment along with your regular monthly mortgage payment. In order to qualify for this option, you must be able to make the required payments as outlined in the plan.

**Loan Modifications-** A modification is a structured agreement where one or more terms of your mortgage are changed to enable you to bring your defaulted loan current, and help you to keep it current.

Eligibility Requirements for this option are determined by your ability to pay (which may require a down payment), the current value of your home, and the hardship suffered.

**Short Sales-** A short sale occurs when you sell your property and the proceeds from the sale are less than the total amount owed. Statebridge may be able to approve your short sale and forgive the remaining debt owed.

Eligibility Requirements on this option are that you must no longer be able to maintain the mortgage payments, and you must demonstrate that the current property value is below your current indebtedness. The lender may ask you to complete a financial questionnaire (which may require a hardship letter) in order to evaluate your ability to pay the debt. The property must have been listed with a real estate agent. You must also have a buyer willing to purchase the property for the current fair market value. You must provide an arms-length Real Estate purchase Agreement (with no contingencies), Estimated Settlement Statement and Listing Agreement to the servicer for review. If requested, you must allow the lender/servicer access to appraise/value your property.

**Deeds in Lieu-** A Deed in Lieu occurs when you agree to sign over your property to Statebridge in exchange for Statebridge not foreclosing on your home.

Eligibility Requirements for this option include your inability to pay the debt. Your lender may ask you to complete a financial questionnaire (which may require a hardship letter). Also there can no other liens or judgments against the property other than your mortgage obligation that is currently in default. In other words, title must be "clear and marketable". In some circumstances your lender may want you to prove that your taxes, insurance and utilities are current.

Statebridge Company, LLC is a debt collector and is attempting to collect a debt. Any information obtained may be used for that purpose. If you are in active bankruptcy or have previously received a discharge in bankruptcy, this correspondence is not and should not be construed to be an attempt to collect a debt, but a possible enforcement of a lien against property.



## Authorization for Automatic Payments (ACH)

Add ☐ Delete ☐ Change ☐

Name (Please Print) ____________________

Address: ____________________

City: ____________ State: ________ Zip: ________

Phone: ____________________

Statebridge Loan Number: ____________

### Funds Settlement Information

Name of Bank or Financial Institution: ____________________

Primary Account Holder's Name: ____________________

Address: ____________________

City: ____________ State: ________ Zip: ________

Routing Number (9 digits): ____________

Account Number: ____________

### Monthly Debit Information

Day to Debit: ____________ Beginning Debit Date: ____________

Dollar Amount: ____________ Checking Account ☐ Savings Account ☐

* Please note that you are authorizing a recurring debit on this account. Debits are posted the day after the "Day Each Month to Debit" you have noted above.

### AUTHORIZATION

I understand that I will receive a "Welcome" letter describing when my first draft, as well as subsequent drafts for the year, will occur before any draft is initiated.

Statebridge Company reserves the right to cancel this program at anytime. Similarly, I may cancel my ACH option at anytime with 30 days written notice. Statebridge Company also reserves the right to cancel my enrollment in the program should any of my payments be returned for insufficient funds (NSF).

If the servicing of my loan is sold at anytime or transferred to another servicer, my enrollment in the program will be canceled.

I (we) hereby authorize and request Statebridge Servicing to initiate electronic debit entries or effect a change by any other commercially accepted practice to my (our) account indicated below in the financial institution below ("BANK"), and I (we) authorize and request BANK to honor the debit entries initiated by Statebridge on the transaction date specified in the "Welcome" letter described above. This authority is to remain in force and effect until the schedule of payments is completed or until Statebridge and BANK have received written notification from me (or either of us) of its termination in such a time and such a manner as to afford Statebridge and BANK a reasonable opportunity to act on it.

Account Owner Signature: ____________________

Date: ____________________

PLEASE BE ADVISED THAT STATEBRIDGE IS ACTING AS A DEBT COLLECTOR AND IS ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION PROVIDED BY YOU WILL BE USED FOR THAT PURPOSE.

**ATTACH VOIDED CHECK TO FORM - Fax to (303) 290-7516**



STATEBRIDGE

## Authorization for Electronic Communication

I, ______________________________ hereby authorize Statebridge Company, LLC to provide statements, letters and other loan-specific information regarding my account via electronic mail (e-mail). I have provided the e-mail address below and understand that if my e-mail address changes or for any reason I choose to discontinue receiving information from Statebridge Company via e-mail, I will provide a written notice to Statebridge Company within 30 days.

______________________________ ______________________________
(Please print name) Loan number

______________________________
E-mail address

______________________________ ______________________________
Signature Date

Please return this authorization to:

Statebridge Company, LLC
Attn: Servicing
5680 Greenwood Plaza Blvd. Suite 100 S
Greenwood Village, CO 80111

Or via fax at 303-290-7516

In lieu of printing and returning this document, you may send an e-mail to info@statebridgecompany.com with "E-mail Authorization" in the subject line. In the message, please provide your name and loan number, and specify that you are granting Statebridge authorization to communicate loan specific information via e-mail communication.



STATEBRIDGE.

**Authorization to Release**
**Information to a Third Party**

Borrower's Name(s):

______________________________

______________________________

Borrower's Loan Number:____________________________

Borrower's Social Security Number: __________________________

Name(s) of individual(s) to whom the Statebridge Company is authorized to disclose information about the above - named borrower(s):

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

Company name (if applicable) and address of individuals authorized to receive information about the above-named borrower:

______________________________________________________________________

______________________________________________________________________

______________________________________________________________________

I ______________________________, hereby certify that I am the individual named above as the subject of these records. I understand that the knowing and willful request for, or acqu isition of, a record pertaining to an individual under false pretenses is a criminal offense under the Privacy Act subject to a $5000 fine. I hereby authorize Statebridge Company to disclose information in my records regarding my Mortgage and Note held by Statebridge Company to the individual(s) named above.

Signature__________________________ Date: __________________________

Please return this authorization to:

Statebridge Company, LLC
Attn: Servicing
5680 Greenwood Plaza Blvd, Suite 100 S
Greenwood Village, CO 80111

Or via fax at: (303) 290-7516



## Privacy Policy

This privacy policy sets out how Statebridge Company, LLC uses and protects any information that you give Statebridge Company.

Statebridge Company is committed to ensuring that your privacy is protected. When you entrust us with your sensitive personal financial information, you can be assured that it will only be used in accordance with this privacy policy.

Statebridge Company, along with other financial institutions, is required to provide our customers with a document illustrating the types of customer information we collect and the circumstances under which we may share it. This document describes our practices.

### What We Do With the Information We Gather

We require certain information to understand your needs and provide you with better service and, in particular, for the following reasons:

- Provide you with the services you requested;
- Offer you other financial products and services;
- Make doing business with Statebridge more convenient for you;
- Internal record keeping;
- We may use the information to improve our products and services and/or design new products or services;
- We may periodically send emails that include information which we think you may find interesting or useful, using the email address that you have provided;
- From time to time, we may also use your information to contact you for market research purposes. We may contact you by email, phone, fax or mail; and/or
- We may use the information to customize the Web site according to your interests.

We do not provide account or personal information to non-Statebridge affiliated companies for the purpose of independent telemarketing or direct mail marketing of any non-financial products or services.

This policy statement takes the place of any previous privacy policies issued by Statebridge Company or any of its subsidiaries. If, in addition to federal law, you are protected by specific state or local regulations, Statebridge will fully comply with those regulations as well.

### Types of Information We Collect

When we receive servicing rights on your loan we will be provided with information about your financial status, such as employment, income, monthly expenses and assets, as well as identifying information such as your address, telephone number and Social Security number.

In most cases, we will receive this information from your previous servicer or from our contact with you. If we need to know about your credit and repayment history, we will also obtain information from consumer reporting agencies and other creditors.

### Once You Become a Customer

We maintain information about your transactions, about account balances, securities holdings, and repayment history. Because it's important to know how to best service you and your loan, we obtain statistics and demographic information about current and prospective customers and from third party valuation and analytic providers.

### Who Has Access to this Information?

Within Statebridge Company, employees are permitted access to the information they need to perform their jobs on your behalf. We maintain strict internal policies against unauthorized disclosure or use of customer information by employees and contractors.



### Companies That You Ask Us to Share With

From time to time, we will make available the services of other financial firms. We will get your permission before sharing any information with the outside firm.

Statebridge may get your written, online or verbal permission to share your information. If you grant us permission to share your information, your consent will apply only for the program or programs you specify. If you have previously requested that we block the sharing of your information, that request will remain in place for all other situations.

### Outside Service Providers

We have arrangements with companies whose experience is essential for our own services to operate properly. For example, we work with firms that execute securities transactions, enable online banking, and make account statements possible for Statebridge customers. In addition, we have relationships with third party providers that help us better and more efficiently service your loan.

These companies perform their functions at Statebridge's direction and we only share customer information that is necessary to allow them to perform these functions. As with all of our business partners, these companies are required to safeguard your information, use it only for authorized purposes and stay within the guidelines we establish for the protection of your information.

### Customer Reporting Agencies

In compliance with standard mortgage banking industry practice, state and federal regulation and state law, Statebridge routinely provides data about customer loan repayment and transactions to these agencies and other creditors.

### Courts and Government Bodies

Certain federal and state laws may require us to share information about you. For example, if you are involved in a legal matter with a third party, we may be ordered to provide information to a court or other party. In these circumstances, only the specific information required by law, subpoena, or court order will be shared.

### Former Customers

We may share information about former customers with Statebridge affiliates, marketing partners and other third parties as described above; however, former customers can also elect not to have their information shared, even if their relationship ends with us.

### How to Elect Not to Have Your Information Shared

You clearly have the choice to limit sharing your information, but please consider this: By making customer information available across the Statebridge family, we're able to provide better service and offer better financial solutions we believe will further benefit our customers. Some of our products or services may not be available if you do not allow us to share your information.

If you prefer, you may direct us not to share personal information about you that isn't publically available. This is commonly known as "opting-out" of information sharing. You can "opt out" by writing us at:

Statebridge Company
5680 Greenwood Plaza Blvd. Suite 100 S
Greenwood Village, Colorado 80111

We make every effort to process an "opt-out" request within 30 days of receipt.

Even if you elect not to have information shared, the Fair Credit Reporting Act and other laws allow us to share specific details about your transactions and experience with us. This may include information about your account balances or payment history. The use of this information is limited by federal law to specific permission purposes, however, such as applications for credit, insurance or employment.



**How We Protect Your Privacy Online**

We are committed to ensuring that your information is secure. In order to prevent unauthorized access or disclosure, we have put in place suitable physical, electronic and managerial procedures to safeguard and secure the information we collect online.

**Links to Other Web sites**

Our Web site may contain links to other Web sites of interest; however, once you have used these links to leave our site, you should note that we do not have any control over the linked Web site. Therefore, we cannot be responsible for the protection and privacy of any information which you provide while visiting such sites, and such sites are not governed by this privacy statement. You should exercise caution and look at the privacy statement applicable to the Web site in question.

**Controlling Your Personal Information**

You may choose to restrict the collection or use of your personal information in the following ways:

- Whenever you are asked to fill in a form on the Web site, look for the box that you can click to indicate that you do not want the information to be used by anybody for direct marketing purposes
- If you have previously agreed to us using your personal information for direct marketing purposes, you may change your mind at any time by writing to us at the address below, or emailing us, at info@statebridgecompany.com

We will not sell, distribute or lease your personal information to third parties unless we have your permission or are required by law. We may use your personal information to send you promotional information about third parties that we think you may find interesting if you tell us that you wish for this to happen.

You may request details of personal information that we hold about you under the Data Protection Act 1998. A small fee will be payable. If you would like a copy of the information held on you please write to 4600 S. Syracuse Street, Suite 700 Denver, Colorado 80237.

If you believe that any information we are holding on you is incorrect or incomplete, please write to, or email us, as soon as possible, at the following address. We will promptly correct any information found to be incorrect.

Statebridge Company
5680 Greenwood Plaza Blvd. Suite 100 S
Greenwood Village, Colorado 80111
info@statebridgecompany.com

**Controlling Your Personal Information**

Direct Marketing Preference Services

If you wish to limit direct mail and telemarketing offers from companies other than Statebridge, you may contact the Direct Marketing Association Mail Preference and Telephone Preference Services as follows:

Mail Preference Service
The Direct Marketing Association
P.O. Box 9008

Telephone Preference Service
The Direct Marketing Association
P.O. Box 9014

# EXHIBIT J

## Communication back to Fajardo difference of $2,892.05

October 13, 2014

To: Whom It May Concern and Frederick Fajardo
    StateBridge Company, LLC
    5680 Greenwood Plaza Blvd., Suite 100-S
    Greenwood Village, CO 80111
    866-HOME360 or (866) 466-3360
    FAX: 303-290-7516

Dear Mr. Fajardo,

Thank you for your recent correspondence regarding a loan modification. I have sent along with this a QWR or Qualified Written Request due to some alarming accounting errors.

I have included bank statements from Bank Of America and Fay Servicing that show a major discrepancy in the accounting of this loan. There is a difference of $2,892.05 between February 2014 and March 2014.

I need proof of ownership and validation of debt to proceed further under these circumstances of obvious missed accounting. I'm sure you can understand my concern with whom StateBridge Company, LLC is as a servicer and not my bank that I signed my loan with.

Please honor my QWR and provide me with proof and correction of these accounting errors so that we may proceed in good faith.

Sincerely,

Oni Roberts

Bank of America Home Loans

PO Box 5170
Simi Valley, CA 93062-5170

0021587 02 AV 0.357 **AUTO 7 0 1171 30083-366071 -C19-P21608-I 2 5
MSR A2D00101 0311000000000000 BBKDISCL - MLENVCRE 2CCIRSTE
ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN GA 30083-3660

**Customer service information**

Customer service: 1.800.669.6607

TDD/TTY users only: 1.800.300.6407

En Español: 1.800.295.0025

Monday-Friday 7a.m. to 7p.m. Local Time

| | |
|---|---|
| Account number | 872539326 |
| Payment due date | December 1, 2013 |
| **Total Amount Due** | **$43,442.95** |

# Your Home Loan Account

Statement date: November 18, 2013

THIS STATEMENT IS BEING SENT FOR INFORMATIONAL AND/OR COMPLIANCE PURPOSES ONLY. IT SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, A DEMAND FOR PAYMENT OR AN ATTEMPT TO MODIFY ANY APPLICABLE BANKRUPTCY PLAN TERMS OR DISCHARGE INJUNCTION. IF YOU HAVE RECEIVED A DISCHARGE OF YOUR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED WITH THE REFERENCED LOAN, Bank of America, N.A. WILL NOT TAKE ANY ACTION AGAINST YOU BUT HAS RETAINED THE RIGHT TO ENFORCE ITS RIGHTS AGAINST THE PROPERTY SECURING THIS LOAN.

## Account information

| | |
|---|---|
| Principal balance | $272,561.97 |
| Escrow balance | -$15,127.80 |
| Interest rate | 2.750% |
| Prepayment penalty | No |

## Past payments breakdown

| | Paid since last statement | Paid year to date* |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (taxes and insurance) | $0.00 | $0.00 |
| Fees, charges, and advances | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

## Explanation of total amount due

| | |
|---|---|
| Principal | $689.12 |
| Interest | $592.28 |
| Escrow (taxes and insurance) | $853.65 |
| **Regular monthly payment** | **$2,135.05** |
| Current period fees and charges | $0.00 |
| Outstanding payments, fees, and charges | $41,307.90 |
| **Total amount due** | **$43,442.95** |

**Please see the 'Other important information' section of this statement*

Bank of America Home Loans

**Amount due on December 1, 2013** **$2,135.05**

Account number: 872539326

Property address:
5371 CHARITY WAY

Bank of America, N.A.
PO Box 650070
Dallas, TX 75265-0070

Additional principal $

Additional escrow $

Total enclosed $

872539326100000213505000213505

⑆586990058⑆872539326⑈

1171 10 00 0021587 0001 0005855

## Additional account information

| | |
|---|---|
| Property Address | 5371 CHARITY WAY |
| Loan type | *Conv Adj Rate Mtge* |
| Contractual remaining term | 24 Years, 09 Months |

## Transaction activity (10/31/13 to 11/18/13)

No transaction activity for this statement period

## Additional contact information

Housing Counselor Information: If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 1.800.569.4287.

| General Inquiries | To mail a payment | Overnight mail | Insurance matters |
|---|---|---|---|
| PO Box 5170<br>Simi Valley, CA 93062-5170 | PO Box 650070<br>Dallas, TX 75265-0070 | Retail Payment Services,<br>TX1-160-06-01<br>Dallas InfoMart, STE 6020<br>1950 N Stemmons FWY<br>Dallas, TX 75207-3134 | Insurance Dept.<br>PO Box 961291<br>Fort Worth, TX 76161-0291 |

Notice of Error, Requests for Information and Qualified Written Requests (as defined in RESPA) must be sent to: PO Box 942019, Simi Valley, CA 93094-2019. You have certain rights under federal law to resolve errors and request information related to your account. For more information about these rights, you can go to bankofamerica.com or contact us.

## Payment processing information.

*Payments are considered received by Bank of America, N.A. when received from your payment coupon. If your loan is in default, based on certain* conditions, such as bankruptcy or foreclosure, you may be unable to make a payment using one or more of the means or locations listed in the You can make your payment section. For mailed payments, if you do not mail your payment coupon with your payment or do not mail your payment to the designated payment location, it may cause delays in the processing of your payment. Payments mailed with the payment coupon to the designated location which are received by 5:00 p.m. in the time zone of the designated payment location will be credited to your account effective on that business day, unless otherwise specified on the remittance coupon provided. All payments mailed to Bank of America, N.A. must be in the form of a check or *money order (drawn in United States dollars and payable by a United States financial institution or the United States Postal Service) made payable to* Bank of America, N.A. Certified or other forms of payment may be required if previously advised.

If you are planning to pay off your loan, please contact us at least 10 days before your scheduled draft date to cancel your service at 1.800.669.6607. This will avoid any drafts occurring in conjunction with your payoff transaction.

Any full periodic payment that is received and accepted will be applied to the longest outstanding periodic payment owed, unless otherwise expressly prohibited or limited by your loan documents, the owner/insurer/guarantor of your loan or applicable law. Payments will be applied as described in your loan documents, including any modifications to the original documents. If your loan is current, please specify how you want any additional amounts you pay to be applied to your account. If you do not specify, subject to your loan documents, additional amounts will first be applied to fees or other amounts owed on your account and the remainder applied as a principal reduction. If we are unable to apply additional amounts to your account as you specify, we may return the funds to you. Postdated checks will be processed on the date received unless an authorized representative agrees to honor the date

## You can make your payment

- By phone - call 1.800.669.6607
- By mail using the enclosed envelope

**For checks or money orders**

- Make your check payable to Bank of America, N.A.
- Please write your loan number on the check or money order
- Include this payment coupon with your check (do not staple your check to the coupon)
- Please do not send cash or include correspondence

Bank of America, N.A. Member FDIC. Equal Housing Lender. © 2013 Bank of America Corporation.

**Bank of America Home Loans**

PO Box 5170
Simi Valley, CA 93062-5170

0004302 01 AV 0.357 **AUTO 4 1 0171 30083-366071 -C20-P04306-I1
MSR A2000101 0311000000000000 88KOISCL - MLENVCBE
ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN GA 30083-3660

**Customer service information**

Customer service: 1.800.669.6607

TDD/TTY users only: 1.800.300.6407

En Español: 1.800.295.0025

Monday-Friday 7a.m. to 7p.m. Local Time

| | |
|---|---|
| Account number | 872539326 |
| Payment due date | February 1, 2014 |
| **Total Amount Due** | **$47,713.05** |

## Your Home Loan Account

Statement date: January 16, 2014

THIS STATEMENT IS BEING SENT FOR INFORMATIONAL AND/OR COMPLIANCE PURPOSES ONLY. IT SHOULD NOT BE CONSTRUED AS AN ATTEMPT TO COLLECT A DEBT, A DEMAND FOR PAYMENT OR AN ATTEMPT TO MODIFY ANY APPLICABLE BANKRUPTCY PLAN TERMS OR DISCHARGE INJUNCTION. IF YOU HAVE RECEIVED A DISCHARGE OF YOUR PERSONAL OBLIGATION TO REPAY THE DEBT ASSOCIATED WITH THE REFERENCED LOAN, Bank of America, N.A. WILL NOT TAKE ANY ACTION AGAINST YOU BUT HAS RETAINED THE RIGHT TO ENFORCE ITS RIGHTS AGAINST THE PROPERTY SECURING THIS LOAN.

### Account information

| | |
|---|---|
| Principal balance | $272,561.97 |
| Escrow balance | -$15,127.80 |
| Interest rate | 2.750% |
| Prepayment penalty | No |

### Past payments breakdown

| | Paid since last statement | Paid year to date* |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (taxes and insurance) | $0.00 | $0.00 |
| Fees, charges, and advances | $0.00 | $0.00 |
| **Total** | **$0.00** | **$0.00** |

### Explanation of total amount due

| | |
|---|---|
| Principal | $692.28 |
| Interest | $589.12 |
| Escrow (taxes and insurance) | $853.65 |
| **Regular monthly payment** | **$2,135.05** |
| Current period fees and charges | $0.00 |
| Outstanding payments, fees, and charges | $45,578.00 |
| **Total amount due** | **$47,713.05** |

*Please see the 'Other important information' section of this statement

---

**Bank of America Home Loans**

**Amount due on February 1, 2014** **$2,135.05**

Account number: 872539326
ONI ROBERTS

Property address:
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083

Bank of America, N.A.
PO Box 650070
Dallas, TX 75265-0070

Additional principal $

Additional escrow $

Total enclosed $

872539326100000213505000213505

⑆586990058⑆872539326⑈

0171-20-00-0004302-0001-0011233

## Additional account information

| | |
|---|---|
| Property Address | 5371 CHARITY WAY |
| Loan type | Conv Adj Rate Mtge |
| Contractual remaining term | 24 Years, 09 Months |

## Transaction activity (12/17/13 to 01/16/14)

No transaction activity for this statement period

## Additional contact information

Housing counselor information: If you would like counseling or assistance, you can contact the U.S. Department of Housing and Urban Development (HUD). For a list of homeownership counselors or counseling organizations in your area, go to hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 1.800.569.4287.

| General inquiries | To mail a payment | Overnight mail | Insurance matters |
|---|---|---|---|
| PO Box 5170<br>Simi Valley, CA 93062-5170 | PO Box 650070<br>Dallas, TX 75265-0070 | Retail Payment Services,<br>TX1-160-06-01<br>Dallas InfoMart STE 6020<br>1950 N Stemmons FWY<br>Dallas, TX 75207-3134 | Insurance Dept.<br>PO Box 961291<br>Fort Worth, TX 76161-0291 |

Notice of Error, Requests for Information and Qualified Written Requests (as defined in RESPA) must be sent to: PO Box 942019, Simi Valley, CA 93094-2019. You have certain rights under federal law to resolve errors and request information related to your account. For more information about these rights, you can go to bankofamerica.com or contact us.

You can make your payment

- By phone - call 1 800 669 6607
- By mail using the enclosed envelope

**For checks or money orders**

- Make your check payable to Bank of America, N.A.
- Please write your loan number on the check or money order
- Include this payment coupon with your check (do not staple your check to the coupon)
- Please do not send cash or include correspondence

Bank of America, N.A. Member FDIC Equal Housing Lender © 2014 Bank of America Corporation.



P.O.Box 220720
Chicago, IL 60622

**Mortgage Statement**
Statement Date 02/10/2014

If questions or concerns about your statement, please contact us at 1-800-495-7166 between the hours of 9:00am and 5:00pm Monday through Friday.

4-775-00791-0016422-004-1-000-100-000-000

ONI ROBERTS
5371 CHARITY WAY
STONE MTN GA 30083-3660

| | |
|---|---|
| Account Number | 48404 |
| Payment Due Date | 03/01/2014 |
| **Amount Due** | **$44,821.00** |

*If payment is received after 03/16/2014, $0.06 late fee will be charged.*

Property Address:
5371 CHARITY WAY
STONE MOUNTAIN GA 30083

| Account Information | |
|---|---|
| Outstanding Principal | $272,561.97 |
| Interest Rate | 2.750% |
| Prepayment Penalty | No |

| Explanation of Amount Due | |
|---|---|
| Principal | $693.87 |
| Interest | $587.53 |
| Escrow (for Taxes & Insurance) | $511.44 |
| Regular Monthly Payment | $1,792.84 |
| Overdue Payments | $43,028.16 |
| Total Fees Charged | $0.00 |
| Total Amount Due | $44,821.00 |

| Past Payments Breakdown | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Suspense (Unapplied Funds) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Total | $184.84 | $0.00 |

**Important Messages**

*We are a debt collector, and information you provide to us may be used to collect a debt. However, if you have filed for bankruptcy, we will fully respect any applicable automatic stay, modification or discharge. Further, if you filed Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt to collect, recover or offset the discharged debt as your personal liability. Please be advised that Fay Servicing will report both negative and positive information to the credit bureaus regarding your account.*

DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT

| Account Number | Due Date | Regular Payment | Past Due | Payments Due | Other Amounts |
|---|---|---|---|---|---|
| 48404 | 03/01/2014 | $1,792.84 | $43,028.16 | 24 | $0.00 |

| | |
|---|---|
| Regular Monthly Payment | $1,792.84 |
| Overdue Payments | $43,028.16 |
| Total Fees Charged | $0.00 |
| Total Amount Due | $44,821.00 |

## Past Payments Breakdown

| | Paid Since Last Statement | Paid Year to Date |
|---|---|---|
| Principal | $0.00 | $0.00 |
| Interest | $0.00 | $0.00 |
| Escrow (for Taxes & Insurance) | $0.00 | $0.00 |
| Suspense (Unapplied Funds) | $0.00 | $0.00 |
| Fees | $0.00 | $0.00 |
| Total | $184.84 | $0.00 |

## Important Messages

*We are a debt collector, and information you provide to us may be used to collect a debt. However, if you have filed for bankruptcy, we will fully respect any applicable automatic stay, modification or discharge. Further, if you filed Chapter 7 bankruptcy, received a discharge, and this loan was not reaffirmed in the bankruptcy case, we will exercise only in rem rights as allowed under applicable law and will not attempt to collect, recover or offset the discharged debt as your personal liability. Please be advised that Fay Servicing will report both negative and positive information to the credit bureaus regarding your account.*

005-0814-1100F

DETACH AND RETURN BOTTOM PORTION WITH YOUR PAYMENT

FAY SERVICING

| Account Number | Due Date | Regular Payment | Past Due | Payments Due | Other Amounts |
|---|---|---|---|---|---|
| 48404 | 03/01/2014 | $1,792.84 | $43,028.16 | 24 | $0.00 |

| Amount Due | |
|---|---|
| Due By 03/01/2014: | $44,821.00 |
| *If payment is received after 03/16/2014, $0.06 late fee will be charged.* | |
| Additional Principal | $ |
| Additional Escrow | $ |
| Total Amount Enclosed | $ |

FAY SERVICING

P.O. Box 3187
Carol Stream, IL 60132-3187

## Important Information To Help Us Serve You Better

**Payments via Overnight or Express Mail**

Fay Servicing
Attn: Payment Processing
939 W. North Avenue #680
Chicago, IL 60642

Payments cannot be made in person at this location

**Correspondence**

Fay Servicing
P.O. Box 220720
Chicago, IL 60622

*Remember to include your name and account number on all payment remittances and written correspondence.*

**Transaction Activity (01/10/2014 - 02/10/2014)**

| Date | Description | Total | Principal | Interest | Escrow | Late Charges | Other |
|---|---|---|---|---|---|---|---|
| 02/07/14 | EXPENSE ADJUSTMENT | $184.84 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

***Qualified Written Requests must be submitted to Fay Servicing, LLC, 901 S. 2nd St., Suite 201, Springfield, Illinois 62704.***

Be sure to check box on reverse. Please print.

Account Number: ____________________

# EXHIBIT K

## StateBridge re to QWR:  Notice of Intent to Accelerate Loan

Name: Oni Roberts

Bank: Unknown

Servicer: STATEBRIDGE COMPANY, LLC

Date: October 13, 2014

Loan:

(alleged) borrower name : Oni Roberts

Property Address: 5371 CHARITY WAY

STONE MOUNTAIN, GA 30083

RE: RESPA Qualified Written Request, Complaint, and Dispute of Debt and Validation of Debt Letter

Dear Correspondence Department:

I am writing to you to request specific itemized information about the accounting and servicing of my mortgage in order to assist me in understanding various charges, credits, debits, transactions, actions, payments, analyses and records related to the servicing of my loan from its inception to the present date.

I am disputing the validity of the current debt you claim that I owe. To date, your company has failed to a bill of particulars, including full documentation of my closing paperwork. I have reason to believe that your calculations are in error.

To independently validate this debt, I need to conduct a complete exam, audit, review and accounting of my mortgage loan from its inception until the present date. Upon receipt of this letter, please refrain from reporting any negative credit information to any credit reporting agencies until you have fully responded to this request.

In order to conduct this examination and audit, I need to have full and immediate disclosure including copies of all pertinent information regarding my loan. The documents requested and answers to questions are needed to ensure the following:

- Forward the CUSIP number from the application of this transaction.

- That each servicer and sub-servicer of my mortgage has serviced my mortgage in accordance with the terms of my mortgage, promissory note and/or deed of trust;
- That each servicer and sub-servicer of my mortgage has serviced my mortgage in compliance with local, state and federal statutes, laws and regulations;
- That my loan has properly been credited, debited, adjusted, amortized and charged correctly;
- That interest and principal have been properly calculated and applied to my loan;
- That my principal balance has been properly calculated and accounted for;
- That no charges, fees or expenses that I am not contractually bound to pay have been charged or assessed to or collected on my account;

In order to validate my debt and audit my account, I need copies of pertinent documents to be provided and answers in writing to various servicing questions to be sent to me at the above-noted address.

For each record kept on computer or in any other electronic file or format, please provide a paper copy of all information in each field or record in each computer system, program or database used by you that contains any information on my account.

As such, please send to me, at the address above, copies of the documents requested below as soon as possible. Please provide me copies of:

- All deeds in lieu, modifications to my mortgage, promissory note or deed of trust from the inception of my loan to the present date.
- All contracts or agreements bearing my signature, specifically including but not limited to the original mortgage agreement.
- The front and back of each and every canceled check, money order, draft, debit or credit notice issued to any servicer of my account for payment of any monthly payment, other payment, escrow charge, fee or expense on my account.
- All escrow analyses conducted on my account from the inception of my loan until the date of this letter;
- The front and back of each and every canceled check, draft or debit notice issued for payment of closing costs, fees and expenses listed on my disclosure statement including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, hazard insurance premiums, commissions, etc.
- Front and back copies of all payment receipts, checks,.money orders, drafts, automatic debits and written evidence of payments made by me or by others on my account.
- All copies of property inspection reports, appraisals, BPOs and reports done on my property.
- All invoices for each charge such as including, but not limited to, appraisal fees, inspection fees, title searches, title insurance fees, hazard insurance premiums, commissions, or any other expense which has been charged to my mortgage account from the inception of my loan to the present date.
- All loan servicing records, payment payoffs, payoff calculations, ARM audits, interest rate adjustments, payment records, transaction histories, loan histories,

accounting records, ledgers, and documents that relate to the accounting of my loan from the inception of my loan until present date.

- All loan servicing transaction records, ledgers, registers and similar items detailing how my loan has been serviced from the from the inception of my loan until present date.

Further, in order to conduct the audit and review of my account, and to determine all proper amounts due, I need the following answers to questions concerning the servicing and accounting of my mortgage account from its inception to the present date. Accordingly, please provide me, in writing, detailed answers to the questions listed below.

DEBITS & CREDITS

1) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every credit on my account and the date such credit was posted to my account as well as the date any credit was received.

2) In a spreadsheet form or in letter form in a columnar format, please detail for me each and every debit on my account and the date such credit was posted to my account as well as the date any debit was received.

3) For each debit or credit listed, please provide me with the definition for each corresponding transaction code you utilize.

ORIGINAL DOCUMENTANTION

1) Where is the original promissory note or mortgage I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

2) Where is the original deed of trust I signed located? Please describe its physical location and anyone holding this note as a custodian or trustee if applicable.

LATE FEES

1) Have you reported the collection of late fees or late charges on my account as interest in any statement to me or to the IRS?

CORRESPONDENCE

1) Do you deny the receipt of my correspondence.

Please provide me with the documents I have requested and a detailed answer, in writing, to each of my questions within the required lawful time frame. Upon receipt of the documents and answers, an exam and audit may be conducted that may lead to a further document request and answers to questions under an additional QWR letter.

I understand that under Section 6 of RESPA you are required to acknowledge this request within 20 business days and must demonstrate a good faith effort to resolve the issue within 60 business days. As such, I anticipate and appreciate your thorough and timely response so that this matter may be swiftly and fully resolved.

Sincerely,

10/13/14

ONI ROBERTS

All rights reserved without recourse



STATEBRIDGE

October 17, 2014

ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083

NOTICE OF INTENT TO ACCELERATE - LOAN 0000021276

Dear ONI ROBERTS,

This letter shall serve as notice to you, prior to acceleration, of, among other things: a) the default of your Promissory Note; (b) the action required to cure the default; (c) when the default must be cured, and (d) that failure to cure the default as specified may result in acceleration of the sums secured by the security instrument securing the indebtedness, foreclosure by judicial proceeding or otherwise, and sale of the property. You are further informed that you have the right to reinstate after acceleration and a right to assert in the foreclosure proceeding the non-existence of a default or any other defense you may have to acceleration and foreclosure.

**Notice of Default**

Please note that your Promissory Note ("Note") and Security Instrument (Mortgage, Deed of Trust, etc.) are in default because you failed to pay the 3/1/2012 payment and the payment(s) due thereafter.

**Action Required to Cure**

You are hereby notified that you must pay by certified funds the full amount of the default on this loan, plus all late charges, interest, and any payments that may become due between the date of this notice and the date the default is cured. Therefore, the total amount due as of the date of this letter is $57,739.88. Because of interest, late charges and other charges that may vary from day to day, the amount due on the day you remit payment may be greater. For the exact amount you must pay to bring your loan current, please contact Frederick Fajardo at (866) 466-3360. Please include your loan number and property address with your payment and send to:

Statebridge Company, LLC
5680 Greenwood Plaza Blvd
Suite 100 S
Greenwood Village, CO 80111

This letter is in no way intended as a payoff statement for your Mortgage/Deed of Trust, it merely states an amount necessary to cure the current delinquency.

**When Default Must be Cured**

You have 35 days from the date of this letter to cure the stated default. Please note, however, that your right to cure this default as referenced herein does not suspend your payment obligations. Pursuant to the terms of your Note, your next monthly installment is still due. Please disregard this notice if a payment sufficient to cure the default has already been sent.

**Failure to Cure May Result in Acceleration, Foreclosure, and Sale**

In the event the default is not cured and the loan reinstated on or before 11/21/2014, all of the unpaid principal and accrued interest owing under the Note and secured by the Security Instrument may result in acceleration of the sums secured by the security instrument; furthermore, the owner of your note may commence with foreclosure on the Deed of Trust/Mortgage which is security for your Note, which may then be scheduled for foreclosure sale in accordance with the terms of the Deed of Trust/Mortgage and applicable state laws.

Statebridge Company, LLC is a debt collector and is attempting to collect a debt. Any information obtained may be used for that purpose. If you are in active bankruptcy or have previously received a discharge in bankruptcy, this correspondence is not and should not be construed to be an attempt to collect a debt, but a possible enforcement of a lien against property.



You are informed that you have the right to "cure" or reinstate the loan after acceleration. You have the right to assert in the foreclosure proceedings the non-existence of a default or assert any other defense you may have to the acceleration and foreclosure sale. Said right to reinstate and discontinue proceedings begun by Wilmington Savings Fund Society, FSB, Not In Its Individual Capacity But Solely As Trustee Of The Primestar-H Fund I Trust. ("Note Holder") shall be available to you at any time prior to the sale date.

If you are unable to make payments or resume payments within a reasonable period of time because of a reduction in your income resulting from a loss or reduction in your employment, you may be eligible for homeownership counseling. Please contact the HUD toll free number (800-569-4287) to obtain a list of HUD approved nonprofit organizations serving your residential area.

It is the policy of the Note Holder of your loan to: 1) report this default, and all foreclosures to the major credit bureaus; and 2) file suit to seek deficiency judgments against borrowers when, as a result of a foreclosure, a deficiency under the laws of the applicable States is established. Foreclosures may have an effect on your taxable income and income tax liability so you may want to consult your accountant regarding consequences. In addition, you may also be liable for reasonable attorney fees and costs incurred in connection with any proceedings on the Note and Security Instrument, and such other costs as the court may allow.

Please be advised that our property inspection company will be making periodic inspections to verify the condition of the subject property in accordance with the terms of the Security Instrument to secure the debt. Your property represents a valuable investment on your part. We urge you to protect this investment by promptly bringing the loan to a current status.

IF YOU HAVE RECEIVED A DISCHARGE OF THE ABOVE -REFERENCED DEBT IN A BANKRUPTCY PROCEEDING, THIS LETTER IS NOT AN ATTEMPT TO IMPOSE PERSONAL LIABILITY UPON YOU FOR PAYMENT OF THAT DEBT AND ANY ACTION TO ENFORCE THAT DEBT WILL BE TAKEN AGAINST THE PROPERTY ONLY . THIS NOTICE IS PROVIDED IN ACCORDANCE WITH THE DEED/MORTGAGE AND APPLICABLE STATE LAW .

You may have options available to help you avoid foreclosure; please contact your Servicing Specialist, Frederick Fajardo, at 1-866-466-3360 between Monday – Thursday 8:00 AM to 9:00 PM, Friday 8:00 AM to 7:00 PM and Saturday 9:00 AM to 1:00 PM CT or visit www.statebridgecompany.com to see what other options are available to you.

Attention Servicemembers and Dependents: Servicemembers on active duty, or a spouse or dependent of such a servicemember, may be entitled to certain protections under the Servicemembers Civil Relief Act ("SCRA") regarding the servicemember's interest rate and the risk of foreclosure. SCRA and certain state laws provide important protections for you, including prohibiting foreclosure under most circumstances. If you are currently in the military service, or have been within the last 12 months, AND joined after signing the Note and Security Instrument now in default, please notify Statebridge Company, LLC immediately. When contacting Statebridge Company, LLC as to your military service, you must provide positive proof as to your military status. Servicemembers and dependents with questions about the SCRA should contact their unit's Judge Advocate, or their installation's Legal Assistance Officer. Homeowner counseling is also available at agencies such as Military OneSource (www.militaryonesource.mil; 1-800-342-9647) and Armed Forces Legal Assistance (www.legalassistance.law.af.mil), and through HUD-certified housing counselors (www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm). You can also contact us toll-free at Statebridge Company, LLC if you have questions about your rights under SCRA.

Statebridge Company, LLC

Statebridge Company, LLC is a debt collector and is attempting to collect a debt. Any information obtained may be used for that purpose. If you are in active bankruptcy or have previously received a discharge in bankruptcy, this correspondence is not and should not be construed to be an attempt to collect a debt, but a possible enforcement of a lien against property.

# EXHIBIT L

## 10/21/2014 Letter from StateBridge about QWR



STATEBRIDGE.

November 26, 2014

*VIA CERTIFIED US MAIL AND USPS*

Oni Roberts
5371 Charity Way
Stone Mountain, GA 30083

**RE: Loan No.: 0000021276**
**Borrower: Oni Roberts**
**Property Address: 5371 Charity Way, Stone Mountain, GA 30083**

Dear Mr. Roberts,

We appreciate your letters dated October 13, 2013, which we received in our office on October 20, 2014. Statebridge is currently in review of your client's file and investigating information as to your concerns and requests. Please allow this letter to serve as our notice to extend the time period for responding to your information request by 15 additional days, as allowed under CFPB Rule 1024.36(d)(2)(B)(ii).

Sincerely,

Lindsey Stoecklein
Borrower Correspondence Team

Spoke to Duston first escalted to Sharri Miller

12/30/14 Sharri Miller - Servicing Supervisor
Ext. 6219
Spoke to

Statebridge Company, LLC is a debt collector and is attempting to collect a debt. Any information obtained may be used for that purpose. If you are in active bankruptcy or have previously received a discharge in bankruptcy, this correspondence is not and should not be construed to be an attempt to collect a debt, but a possible enforcement of a lien against property.

E

**Deed Under Power,**



B 10 (Attachment A) (12/11)

# Mortgage Proof of Claim Attachment

If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See Bankruptcy Rule 3001(c)(2).

**Name of Debtor:** FORREST GENARD ROBERTS, TWANISHA ONI ROBERTS **Case Number:** 12-59208-JRS

**Name of Creditor:** Bank of America, N.A. **Last four digits of any number you use to identify the debtor's account:** XXXXX9326

## Part 1: Statement of Principal and Interest Due as of the Petition Date

**Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).**

**1. Principal due** $272,561.97

**2. Interest due**

| Interest rate | From | To | Amount |
|---|---|---|---|
| 2.7500% | 02/01/2012 | 03/31/2012 | $1,249.24 |
| | | | |
| | | | |
| Total interest due as of the petition date | | | $1,249.24 |

Copy total here $1,249.24

**3. Total principal and interest due** $273,811.21

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | Amount |
|---|---|---|
| 1. Late Charges: Accrued | | $0.00 |
| Uncollected | 5/17/11, 1/19/12 @ $64.07; Balance $120.98 | $120.98 |
| 2. Non-Sufficient Funds (NSF) fees | | $0.00 |
| 3. Attorney's Fees | | $0.00 |
| 4. Filing fees and Court Costs | | $0.00 |
| 5. Advertisement Costs | | $0.00 |
| 6. Sheriff/Auctioneer fees | | $0.00 |
| 7. Title Costs | | $0.00 |
| 8. Recording Fees | | $0.00 |
| 9. Appraisal/Broker's Price Opinion Fees | | $0.00 |
| 10. Property Inspection Fees | | $0.00 |
| 11. Tax Advances (non-escrow) | | $0.00 |
| 12. Insurance Advances (non-escrow) | | $0.00 |
| 13. Escrow shortage or deficiency (Do not include amounts that are part of any installment payment listed in Part 3.) | | $1,030.64 |
| 14. Property Preservation Expenses. Specify: | | $0.00 |
| 15. Other. Specify: Post-Petition BK Attorney Fees | $150 Plan Review, $150 Proof of Claim | $300.00 |
| 16. Other. Specify: | | $0.00 |
| 17. Other. Specify: | | $0.00 |
| 18. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | $1,451.62 |

B 10 (Official Form 10) (12/11)

UNITED STATES BANKRUPTCY COURT NORTHERN DISTRICT OF GEORGIA

**PROOF OF CLAIM**

Name of Debtor: FORREST GENARD ROBERTS
TWANISHA ONI ROBERTS

Case Number: 12-59208-JRS

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

Bank of America, N.A.

COURT USE ONLY

Name and address where notices should be sent:

Bank of America, N.A.
Six Piedmont Center, Suite 700
3525 Piedmont Road, NE
Atlanta, GA 30305

☐ Check this box if this claim amends a previously filed claim.

Court Claim Number:__________
*(If known)*

Filed on:__________

Name and address where payment should be sent (if different from above):

Bank of America, N.A.
P.O. Box 660933
Dallas, TX 75266-0933

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

1. Amount of Claim as of Date Case Filed: $274,232.19

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

x Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

2. Basis for Claim: Money Loaned
(See instruction #2)

3. Last four digits of any number by which creditor identifies debtor:

XXXXX9326

3a. Debtor may have scheduled account as:
(See instruction #3a)

3b. Uniform Claim Identifier (optional):
(See instruction #3b)

4. Secured Claim (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

Nature of property or right of setoff: x Real Estate ☐ Motor Vehicle ☐ Other
Describe: 5371 Charity Way, Stone Mountain, GA 30083

Value of Property: $__________

Annual Interest Rate 2.75000% ☐ Fixed or x Variable
(when case was filed)

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:

$5,037.30

Basis for perfection: Mortgage

Amount of Secured Claim: $274,232.19

Amount Unsecured: $__________

5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a). If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $11,725*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier - 11 U.S.C. §507 (a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507 (a)(5).

Amount entitled to priority:

$__________

☐ Up to $2,600* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. §507 (a)(__).

**Amounts are subject to adjustment on 4/1/13 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

6. Credits. The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

7. **Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. (See instruction #7, and the definition of "redacted".)

**DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.**

If the documents are not available, please explain:

8. **Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.

☐ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)

☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)

☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Dated: 4/27/2012

/s/ Sidney Gelernter
Sidney Gelernter
GA. State Bar No. 289145
Attorney for Bank of America, N.A.
McCurdy & Candler, LLC
Six Piedmont Center, Suite 700
3525 Piedmont Road, NE
Atlanta, GA 30305
Telephone number: (404) 373-1612
Email: sgelernter@mccurdycandler.com

*Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.*



August 13, 2015

ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN GA 30083

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: 0000021276
ONI ROBERTS
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083-3660
Loan Type: Conventional

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address. Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit. The payoff is subject to final audit when presented. Any overpayment or refunds will be mailed directly to the borrower. We will prepare the release of our interest in the property after all funds have cleared.

| **Projected Payoff Date** | **9/11/2015** |
|---|---|
| Principal Balance | $272,561.97 |
| Interest Thru 9/11/2015 | $27,084.55 |
| Fees | $1,756.25 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by borrower | $19,873.25 |
| Funds owed to borrower | $0.00 |
| **Total Payoff** | **$321,276.02** |
| Per diem | $20.54 |

= 272,561.97 + 48,714.05 fees

The next payment due is 3/1/2012. Payments are made by Billing on a Monthly basis. The current interest rate is 2.75000% and the P & I payment is $1,281.40. The taxes are next due 9/30/2015.

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

Statebridge Company, LLC
5680 Greenwood Plaza Blvd
Suite 100 S
Greenwood Village, CO 80111
(303) 962-6753
(866) 466-3360
(303) 290-7516 Fax

Statebridge Company, LLC is a debt collector and is attempting to collect a debt. Any information obtained may be used for that purpose. If you are in active bankruptcy or have previously received a discharge in bankruptcy, this correspondence is not and should not be construed to be an attempt to collect a debt, but a possible enforcement of a lien against property.



**ONI ROBERTS - Loan ID #0000021276**

## FEE DETAILS

| Description | Amount |
|---|---|
| Late Charge Payment | $320.35 |
| FC Attorney Fee | $700.00 |
| Inspections | $106.90 |
| Prior Serv. Misc | $207.50 |
| FC Attorney Cost | $421.50 |
| | $1,756.25 |



**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

August 21, 2015

VIA-CERTIFIED MAIL – RETURN RECEIPT REQUESTED

Oni Roberts
Forrest G Roberts, Jr.
5371 Charity Way
Stone Mountain, Georgia 30083

Re: Promissory Note (as amended, modified, or revised from time to time, the "Note") dated July 25, 2006 in the original principal amount of $302,000.00 by Oni Roberts and Forrest G Roberts, Jr. ("Borrower") and in favor of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), secured by that certain Security Deed dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31 of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as amended, modified, or revised from time to time, the "Security Deed"); each of the above described instruments being referred to herein as the "Loan Documents"

Dear Borrower:

As indicated by my letter of August 21, 2015, this firm represents Lender with respect to the captioned matters. You have committed a monetary default under the Loan Documents.

As a result, I now disclose to you the following, in accordance with the requirements of the Federal Debt Collection Practices Act:

(1) The amount of the debt is $321,782.22. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (770) 790-

3550.

(2) The name of the creditor is Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.).

(3) Please note that unless you dispute the validity of this debt within 30 days after the date of this letter, I will assume the debt to be valid.

(4) Please note that if you notify me in writing within the above 30 day-period that you disputes all or any portion of the debt, I will obtain a verification of the debt, or a copy of the judgment (as the case may be in accordance with the facts surrounding this case), and will mail a copy of such verification or the judgment to you (as the case may be in accordance with the facts surrounding this case).

(5) Please note that if you provide me a written request for the name of the creditor within the same 30 day-period, I will provide such name to you if it is different from Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust.

All inquiries concerning the Loan Documents and any amounts due thereunder should be directed to me at the firm of Busch White Norton, LLP (770-790-3550). I hereby give notice to you that I am empowered to negotiate, amend and modify all terms of the Loan Documents with you. A copy of this letter is being sent to you by certified mail. Refusal of delivery is deemed, under the law, to be equivalent to notice.

**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Sincerely,

Guillermo Todd

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

NOTICE OF SALE UNDER POWER GEORGIA, DEKALB COUNTY

By virtue of a Power of Sale contained in that certain Security Deed from ONI ROBERTS AND FORREST G ROBERTS, JR. to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (by virtue of that certain Assignment of Security Deed, filed and recorded December 26, 2014 in Deed Book 24720, Page 754, DEKALB COUNTY, Georgia Records, assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.) ("PrimeStar"), dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31, DeKalb County, Georgia Records (as amended, modified, or revised from time to time, "Security Deed"), said Security Deed having been given to secure a Note in the original principal amount of THREE HUNDRED TWO THOUSAND AND NO/100THS DOLLARS ($302,000.00) (as amended, modified, or revised from time to time, the "Note"), with interest thereon as provided for therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of DEKALB COUNTY, Georgia, within the legal hours for sale on the first Tuesday in October, 2015, all property described in said Security Deed, including, but not limited to, declarant's rights, if any, and, without limitation, the following described property (or so much thereof as has not, as of said first Tuesday, by duly executed and recorded instrument, previously been released from the lien of the Security Deed):

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLATS ARE HEREBY REFERENCED TO FOR THE PURPOSE OF INCORPORATING HEREIN.

The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed and Note, including, but not limited to, the nonpayment of the indebtedness as and when due. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys' fees and other payments provided for under the terms of the Security Deed and Note.

Said property will be sold subject to the following items which may affect the title to said property: all zoning ordinances; matters which would be disclosed by an accurate survey or by inspection of the property; any outstanding taxes, including, but not limited to, ad valorem taxes, which constitute liens upon said property; special assessments; and all outstanding bills for public utilities which constitute liens upon said property; To the best of the knowledge and belief of the undersigned, the party in possession of the property is ONI ROBERTS AND FORREST G ROBERTS, JR. or tenant(s).

The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the United States Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed. PrimeStar and its counsel are acting as debt collectors. Any information obtained will be used for that purpose.

PrimeStar as Attorney-in-Fact for ONI ROBERTS AND FORREST G ROBERTS, JR.
Contact: Guillermo Todd, Esq.
Busch White Norton, LLP
3330 Cumberland Boulevard, Suite 300
Atlanta, Georgia 30339
Telephone (770) 790-3550

# EXHIBIT R

**Defendants repeatedly refused to provide accurate payoff.**

7014 1820 0002 2868 3103
U.S. POSTAGE PAID
STONE MOUNTAIN, GA
AMOUNT
$6.25
R2304N117802-10
Wilmington Savings Fund FSB Not Individual Capacity As Trustee for Prime Star -H Fund I Trust
c/o Prime Asset Fund
PO Box
Odessa
NIXIE 339 4E 1 0211/26/15
RETURN TO SENDER
UNCLAIMED
UNABLE TO FORWARD
*3024-05139-26-40
CERTIFIED MAIL
Ori Roberts
5371 Charity Way
Stone Mountain, GA
30083
U.S. POSTAGE PAID
STONE MOUNTAIN, GA
AMOUNT
$3.45
R2304N117802-04
7014 1820 0002 2868 5176
Wilmington Savings Fund Society, FSB
Not Its Individual Capacity But Solely
a Trustee of Primestar-H Fund I Trust
c/o Prime Asset Fund
P.O. Box 44
Odessa, FL 33
NIXIE 339 1 3 11/27/2015
RETURN TO SENDER
NOT DELIVERABLE AS ADDRESSED
UNCLAIMED
SORT IN MANUAL ONLY NO AUTOMATION
BC: 56998999955



State of Georgia, DeKalb County,
The undersigned officer of DeKalb Superior Court certifies that this is a true and correct copy of the original document which is on file and of record in the Office of the Clerk of Superior Court. Witness my hand and seal of the Superior Court of DeKalb County Georgia
This 8th day of Dec, 2015
Signature: [signature]
Deputy Clerk DeKalb County Superior Court
Deed BOOK 25259 PAGE 309-317

2015154258 DEED BOOK 25259 Pg 309
Filed and Recorded:
11/13/2015 12:23:16 PM
Real Estate Transfer Tax $0.00
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**[ABOVE SPACE RESERVED FOR RECORDING OFFICE USE]**

**AFTER RECORDING, PLEASE RETURN TO:**
**Matthew B. Norton, Esq.**
**Busch White Norton, LLP**
**3330 Cumberland Boulevard, Suite 300**
**Atlanta, Georgia 30339**

**Cross Reference:**
**Deed Book 19045, Page 31**
**DeKalb County Records**

**STATE OF FLORIDA**

**COUNTY OF HILLSBOROUGH**

**DEED UNDER POWER OF SALE**

**THIS INDENTURE is made as of this 6th day of October, 2015, by Oni Roberts and Forrest G Roberts, Jr., each a Georgia resident ("Grantor"), acting through his duly appointed agent and attorney-in-fact, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), with an address of c/o Busch White Norton, LLP, 3330 Cumberland Boulevard, Suite 300, Atlanta, Georgia 30339, and Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust ("Grantee"), with an address of c/o Statebridge Company, LLC, 5680 Greenwood Plaza Blvd., Suite 100S, Greenwood Village, CO 80111;**

**WITNESSETH:**

**WHEREAS, Grantor executed and delivered to Lender that certain Security Deed, dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31, of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as may have been modified, amended and assigned from time to time, the "Security Deed"), conveying the hereinafter described property, to secure the payment of a promissory note dated July 25, 2006 (as may have**

been replaced, renewed, extended, modified, amended and/or assigned from time to time (as the case may be), the "Note"), together with any and all other indebtedness owing by Grantor to Lender;

WHEREAS, default in the payment of the Note occurred, and whereas by reason of said default, Lender elected pursuant to the terms of the Security Deed and Note to declare the entire outstanding indebtedness secured by the Security Deed immediately due and payable;

WHEREAS, the entire outstanding indebtedness still being in default, Lender on behalf of Grantor, and according to the terms of the Security Deed and the laws of the State of Georgia, did legally and properly advertise the Property (as hereinafter defined) for sale once a week for four (4) consecutive weeks immediately preceding the foreclosure sale in the official newspaper in which the Sheriff of DeKalb County, Georgia published legal advertisement;

WHEREAS, notice of the initiation of proceedings to exercise a power of sale was given pursuant to Official Code of Georgia Section 44-14-162.2;

WHEREAS, Lender did expose the hereinafter described property for sale to the highest and best bidder for cash on the first Tuesday in October, 2015 within the legal hours of sale at the usual place for conducting Sheriff's sales in DeKalb, Georgia, before the Courthouse door in said County and offered said property for sale at public outcry to the highest bidder for cash, when and where Grantee bid ONE HUNDRED AND NO/100THS DOLLARS ($100.00); and

WHEREAS, the aforementioned bid by Grantee was the highest and best bid, the hereinafter described property was knocked off to Grantee for said sum bid by Grantee;

NOW THEREFORE, in consideration of the premises and said sum of money and by virtue of and in the exercise of the power of sale contained in the Security Deed, Grantor has bargained, sold, granted, and conveyed and by these presents does hereby bargain, sell, grant, and convey to Grantee, its heirs, representatives, successors, and assigns, the following described property, to-wit:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLATS ARE HEREBY REFERENCED TO FOR THE PURPOSE OF INCORPORATING HEREIN.

Together with all the rights, members and appurtenances thereto appertaining; also, all the estate, right, title, interest, claim or demand of Grantor, Grantor's representatives, heirs, successors and assigns, legal, equitable or otherwise whatsoever, in and to the same. All of the foregoing are referred to herein as the "Property."

Grantor hereby designates Grantee, as successor-in-title to Grantor by virtue of this instrument as the declarant under any Declaration of Covenants, Conditions, Restrictions and Easements (or any similar document) affecting the Property.



TO HAVE AND TO HOLD the Property and every part thereof unto said Grantee, its successors and assigns, to its own proper use, benefit and behoof in FEE SIMPLE, in as full and ample a manner as Grantor, or its successors, heirs or assigns, did hold and enjoy the same, subject, however, to unpaid real estate ad valorem taxes and governmental assessments and to all prior restrictions, rights-of-way, easements and other matters of record, if any, appearing prior to the date of the Security Deed and those appearing after the date of the Security Deed and consented to by Grantee.

[Balance of this page intentionally left blank]



DEED BOOK 25259 Pg 312
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

IN WITNESS WHEREOF, Lender, as agent and attorney-in-fact for Grantor, has hereunto affixed its hand and seal, as of the day and year first above written.

Signed, sealed and delivered in the presence of:

Unofficial Witness Aaron Carter

Notary Public

My Commission Expires: 11-9-15

Notary Public State of Florida
Amy E Hill
My Commission EE149128
Expires 11/09/2015

[AFFIX NOTARIAL SEAL]

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.)

By: ______________________ [SEAL]
Name: Jamie Rand
Title: Vice President

AS AGENT AND ATTORNEY-IN-FACT FOR GRANTOR



# EXHIBIT N

## Pages from Abstract of Title

Return to:
Document Recording Services
P.O. Box 3008
Tallahassee, FL 32315-3008

File No. 1040002982

MAIL TAX STATEMENTS TO:
**PRIMESTAR FUND I TRS, INC.**
PO BOX 447
ODESSA, FL 33556

2015167978 DEED BOOK 25311 Pg 454
Filed and Recorded:
12/17/2015 2:09:49 PM
Real Estate Transfer Tax $0.00
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

This document prepared by:
RICHARD M. JONES, JR., ESQ.
P.O. BOX 371031
DECATUR, GA 30037
866-333-3081

Tax ID No.: 18 074 02 043

---

## SPECIAL WARRANTY DEED

REF 109263206A

STATE OF GEORGIA
COUNTY OF DEKALB

THIS DEED made and entered into on this 11 day of December, 2015, by and between **WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE PRIMESTAR-H FUND I TRUST**, organized and existing under the laws of the State of Florida, a mailing address of PO BOX 447, ODESSA, FL 33556 hereinafter referred to as Grantor(s) and **PRIMESTAR FUND I TRS, INC.**, a mailing address of PO BOX 447, ODESSA, FL 33556, hereinafter referred to as Grantee(s).

WITNESSETH: That the said Grantor, for and in consideration of the sum of TEN AND 00/100 ($10.00) DOLLARS and other good and valuable consideration, the receipt of which is hereby acknowledged, have this day given, granted, bargained, sold, conveyed and confirmed and do by these presents give, grant, bargain, sell, convey and confirm unto the said Grantee(s) the following described real estate located in DEKALB County, GEORGIA:

SEE ATTACHED EXHIBIT "A" FOR LEGAL DESCRIPTION.

SUBJECT TO EASEMENTS, COVENANTS, CONDITIONS, RESTRICTIONS, RESERVATIONS, AND LIMITATIONS OF RECORD, IF ANY.

Prior instrument reference: BOOK 25259, PAGE 309, Recorded: 11/13/2015

TO HAVE AND TO HOLD the lot or parcel above described together with all and singular the rights, privileges, tenements, hereditaments and appurtenances thereunto belonging or in anywise appertaining unto the said Grantee(s) and unto the heirs, administrators, successors or assigns of the Grantee(s) forever in fee simple.

Grantor hereby warrants to the Grantee(s) that title to the subject real property described herein is the same quality which was received by the Grantor. Grantor's warranty is limited solely to matters arising from the acts or omissions of the Grantor occurring solely during the period of the Grantor's ownership of the subject real property. This limited warranty is binding upon the Grantor, its successors and assigns.

DEED BOOK 25311 Pg 455

Tax ID No.: 18 074 02 043

IN WITNESS WHEREOF, the said Grantor has hereunto set their hand and seal on this 11 day of December, 2015.

WILMINGTON SAVINGS FUND SOCIETY, FSB, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS TRUSTEE FOR THE PRIMESTAR-H FUND I TRUST

BY: ______________________

NAME: JAMIE RAND

TITLE: VICE PRESIDENT

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

Signed, sealed and delivered this 11 day of December, 2015

In the presence of:

______________________
Unofficial Witness (print name below)
Karen Carter

______________________
Notary Public
Print Name: Amy E. Hill

Notary Public State of Florida
Amy E Hill
My Commission FF 924764
Expires 11/09/2019

My commission expires 11-9-19

No title search was performed on the subject property by the preparer. The preparer of this deed makes neither representation as to the status of the title nor property use or any zoning regulations concerning described property herein conveyed nor any matter except the validity of the form of this instrument. Information herein was provided to preparer by Grantor/Grantee and/or their agents; no boundary survey was made at the time of this conveyance.

DEED BOOK 25331 Pg 456
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

**EXHIBIT A**
**LEGAL DESCRIPTION**

**THE FOLLOWING DESCRIBED PROPERTY, TO-WIT:**

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLATS ARE HEREBY REFERENCED TO FOR THE PURPOSE OF INCORPORATING HEREIN.

**TAX ID NUMBER: 18 074 02 043**

**PROPERTY COMMONLY KNOWN AS: 5371 CHARITY WAY, STONE MOUNTAIN, GA 30083**

When Recorded Return to:

Gibbs & Mabe, LLC
160 Clairemont Ave. Ste. 350
Decatur, Georgia 30030

DEED DRAWN UPON REQUEST
NO TITLE SEARCH PERFORMED

2016042929 DEED BOOK 24835 Pg 46
Filed and Recorded:
3/18/2016 2:40:38 PM
Real Estate Transfer Tax $0.00
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

(Space Above This Line for Recording Data)

QUITCLAIM DEED

BY THIS QUITCLAIM DEED, FORREST ROBERTS, herein called Grantor, in consideration of Ten and No/100 ($10.00) Dollars paid by TWANISHA ONI BAKER f/k/a TWANISHA ONI ROBERTS, herein called Grantee, quitclaims to Grantee Grantor's interest in the following described real property in DeKalb County, Georgia:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PURPOSE OF INCORPORATING HEREIN.

This conveyance is made subject to the terms and conditions of the Settlement Agreement in Civil Action File No. 14CV3259-4, DeKalb County Superior Court, DeKalb County, Georgia, being styled Twanisha Oni Roberts v. Forrest Roberts.

The above-described property is conveyed subject to all encumbrances, covenants, conditions, restrictions and easements of record.

TO HAVE AND TO HOLD the said described premises to Grantee, so that neither

DEED BOOK 24835 Pg 47
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Grantor nor any person or persons claiming under Grantor shall at any time, by any means or ways, have, claim, or demand any right or title to said premises or appurtenances, or any rights thereof.

DATED this 7 day of November, 2014.

Signed, sealed and delivered
in the presence of:

WITNESS

F. Roberts
FORREST ROBERTS, Grantor

NOTARY PUBLIC
MY COMMISSION EXPIRES: March 26, 2018

Return To: 160 Clairemont Ave
Suite 200
Decatur, GA 30030

For Office Use:

2015042936 DEED BOOK 24835 Pg 71
Real Estate Transfer Tax $0.00
Filed and Recorded:
3/19/2015 2:46:21 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Prepared By: Rocket Doox
Grantee's Name: Baker Sister Trust
Grantee's Address: 160 Clairemont Ave
Suite 200
Decatur, GA 30030

STATE OF GEORGIA
COUNTY OF DEKALB

QUITCLAIM DEED

This indenture is made this 13 day of March, 2015, by and between GRANTOR (hereinafter "Grantor"), Oni Roberts and GRANTEE (hereinafter "Grantee"), Baker Sister Trust.

KNOW ALL MEN BY THESE PRESENTS that for and in consideration of the sum of Ten and No/100 Dollars ($10.00) and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Grantor does quitclaim unto Grantee all of his/her right, title and interest in and to the following described real property:

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 98, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLAT REFERENCE IS HEREBY MADE FOR THE PURPOSE OF INCORPORATING HEREIN.

5371 Charity Way, Stone Mountain, Georgia 30083

IN WITNESS WHEREOF, Grantor has affixed his/her hand and seal on the date first written.

Grantor (All Rights Reserved Without Prejudice)
Oni Roberts

Unofficial Witness

Sworn to and subscribed before me,
this 18 day of March 2015.

Notary Public

SANDRA N BENNETT
MY COMMISSION EXPIRES
NOTARY PUBLIC
AUGUST 11, 2017
GWINNETT COUNTY, GEORGIA

**File No.** ______________ **County:** DeKalb

***Based On: (Policy or Old File No.)*** ______________

______ **Full Exam** ✓ **Ltd. Exam from date:** 7/25/06

**Recorded title is vested in:** Primestar Fund I TRS, Inc.
b/v/a Special WD 25311/454 (L.7)

**Effective Date:** 3/13/17

**Exhibit "A" Legal Description:**

25311/454

**Appurtenant Easements:** ______________

| **Taxes:** | **Parcel ID:** 18-074-02-043 | | | St. mtn. |
|---|---|---|---|---|
| **Real:** | **Year(s):** 2016 | **Amount:** $4746.92 | **Date pd:** 11/3/16 | included in total |
| **City/Pers:** | **Year(s):** | **Amount:** | **Date pd:** | |

*****EXAMINER -- MAKE SURE TO CHECK CITY TAXES IF APPLICABLE*****

**Property Address:** 5371 Charity Way **Consv/Agr** **(Res.)** **Comm.**

**Recorded Plat filed** ______________, **Plat Book** 118, **Page** 96

**Additional Exceptions: Security Deeds, Covenants, Easements, Liens, Defects and Notes**

① LP LB 1691/334 (L.9)
② State Ct. # 15A 57994 (L.10) transferred to Superior Court # 16 CV 6531 (L.11)
③ CA # 16CV4463 (L.13)
④ CA # 16CV5275 (L.14)
⑤ Info: Dispossessory # 16D75306 (L.15)

Robins Dr / Forest
19045 | 29 WD
24835 | 46 OC
25259 | 309 Dup
24831 | 71 OC
19045 | 31 SD
24438 | 66 O
24720 | 75 4
24835 | 46 OC
Baker Dr
Baker Sister
Wilmington
25259 | 309 Dup
25311 | 454 WD
Primeist Fund II TG Inc
25311 | 454 WD
15
2 hrs
40 copies

Liens 1065 / 533
1694 / 334 P
~~1752 / 565~~
SOS ~~1764 / 365~~

Suits 15A 57994
16 CV 6531
16 D 75306
14 CV 3259
16 CV 4403
16 CV 5275
~~16D 95364~~ 02

(Special WD)

19045/29

Deutsche Bank National Trust Company as Trustee

7/25/06

8/15/06

$302.00 TT

ex OK

↓

On. Roberts and Forrest G. Roberts, Jr.

CC



SD
(Foreclosed)
19045/31
7/25/06
8/15/06
Oni Roberts and
Forrest G. Roberts, Jr.
$302,000.00
due 8/1/36
Bank of America, N.A.

Assignment to U.S. Bank National Association, as Trustee for PROF-2013-S3 REMIC Trust III, d. 3/19/14 f. 6/24/14 at 24438/660

Assignment to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust, d. 12/16/14 f. 12/26/14 at 24720/754



DSD
19678/335
Oni Roberts and
Forrest G. Roberts, Jr.
2/9/07
2/20/07
$50,000.00
due 2/9/17
Associated Credit
Union
Wiped out by
foreclosure of DSD
at 19045/31

QCD

24835/46
11/7/14
3/19/15
ex OC

Forrest Roberts

↓

Twanisha Oni Baker
F/k/a Twanisha Oni Roberts

CC

pursuant to Settlement Agreement in Divorce, CA # 14CV3259-4

(QCD)

24835/71

Oni Roberts**

3/13/15

3/19/15

$ 0 TT

ex OK

↓

Baker Sister Trust*

CC

* No Trustee named

~~(** No conveyance from Robert to Oni)~~

Previous link



25254/309

10/6/15

11/13/15

DUPS

$100.00 consideration

Oni Roberts and Forrest G. Roberts, Jr., acting through AIF, Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for PrimeStar-H Fund I Trust

ex: see * below

↓

same as AIF

* one corp. officer, no corp seal

Special WD

25311/454
12/11/15
12/17/15
$ Ø TT
ex - see below *

Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the Primestar-H Fund I Trust

↓

Primestar Fund I TRS, Inc.

* one corporate officer, no corporate seal

State Tax Exec.

LB 1065/533

11/15/10

1/24/11

$4,592.91

Ga. Dep't of Revenue

↓

Forrest G. Roberts and Oni Roberts

Wiped out by foreclosure of SD at 19045/31

Notice of LP LB 1691/334

12/5/15

Oni Roberts 12/8/15

v.

Statebridge Company, LLC

DeKalb State Court
CA # 15A57994-1

State Court #15A57994
f. 12/4/15

Oni Roberts

v.

Statebridge Company, LLC

---

Transferred to Superior Court 6/9/16

#16CV6531
F. 6/10/16

Oni Roberts

v.

State Bridge Company LLC

Last entry: Response to Plaintiff's Motion
8/25/16

Divorce # 14CV3259

F. 3/20/14

Twanisha Oni Roberts

v

Forrest Roberts

Final J + D

5/12/14

#16CV4403
F. 4/8/16

Oni Roberts

v.

Primestar Fund I TRS, Inc.

Notice of Removal to
to U.S. District Court
No. Distr. of GA
on 5/20/16

#16CV5275
f. 5/4/16

Oni Roberts, Appellant

v.

Primestar Fund I TRS, Inc.

(Appeal from Lower Court)

On 3/20/17, transferred to Court of Appeals



Dispossessary #16D75306
F. 3/16/16

Primestar Fund I TRS Inc.

v.

Oni Roberts &
Forrest G. Roberts

Appealed to Superior Court
4/20/16

**EXHIBIT O**

**Tax Commissioner $324,300.00, owed is $7,867.62**



# 2014 DEKALB COUNTY REAL ESTATE TAX STATEMENT

PAY ONLINE AT www.yourdekalb.com/taxcommissioner
OR BY PHONE AT 404-298-4000

CLAUDIA G. LAWSON
TAX COMMISSIONER

| | |
|---|---|
| OWNER | ROBERTS ONI |
| CO-OWNER | ROBERTS FORREST G JR |
| PARCEL I.D. \ PIN | 18 074 02 043 \ 4294163 |
| PROPERTY ADDRESS | 5371 CHARITY WAY |
| TAX DISTRICT | 84 STONE MTN |

APPRAISAL VALUES AND EXEMPTION INFORMATION

| | | | |
|---|---|---|---|
| TOTAL APPRAISAL | 275,000 | EXEMPTION CODE | H1F |
| 40% ASSESSMENT | 110,000 | BASE ASSESSMENT FREEZE | 164,120 |
| APPEAL ASSESSMENT | 93,500 | NET FROZEN EXEMPTION | 0 |

YOUR TOTAL TAX SAVINGS FOR THIS YEAR IS $1,033.04. THIS YEAR THE STATE PORTION OF YOUR TAX BILL IS BEING REDUCED AND WILL GRADUALLY BE ELIMINATED FROM YOUR TAX BILL. THIS TAX RELIEF WAS PASSED BY THE GOVERNOR AND THE HOUSE OF REPRESENTATIVES AND THE GEORGIA STATE SENATE.

## COUNTY GOVERNMENT TAXES

Levied by the Board of Commissioners: representing 9.49% of your tax statement

| TAXING AUTHORITIES | TAXABLE ASSESSMENT | X | MILLAGE | = | GROSS TAX AMOUNT | FROZEN EXEMPTION | CONST-HMST EXEMPTION | HOST CREDIT | NET TAX DUE |
|---|---|---|---|---|---|---|---|---|---|
| COUNTY OPNS | 93,500 | | .0082200 | | 768.57 | 0.00 | 82.20 | 396.03 | 290.34 |
| HOSPITALS | 93,500 | | .0008000 | | 74.80 | 0.00 | 8.00 | 38.54 | 28.26 |
| COUNTY BONDS | 93,500 | | .0000100 | | 0.94 | 0.00 | 0.00 | 0.00 | 0.94 |
| FIRE | 93,500 | | .0028700 | | 268.35 | 0.00 | 28.70 | 138.29 | 101.36 |
| STM TAXDIST | 93,500 | | .0002700 | | 25.25 | 0.00 | 2.70 | 13.03 | 9.52 |
| POLICE SERVC | 93,500 | | .0004400 | | 41.14 | 0.00 | 4.40 | 21.20 | 15.54 |
| TOTAL COUNTY TAXES | | | | | | | | | $445.96 |

## BOARD OF EDUCATION - SCHOOL TAXES

Levied by Board of Education: representing 41.31% of your tax statement

| TAXING AUTHORITIES | TAXABLE ASSESSMENT | X | MILLAGE | = | GROSS TAX AMOUNT | FROZEN EXEMPTION | CONST-HMST EXEMPTION | HOST CREDIT | NET TAX DUE |
|---|---|---|---|---|---|---|---|---|---|
| SCHOOL OPNS | 93,500 | | .0239800 | | 2,242.13 | 0.00 | 299.75 | 0.00 | 1,942.38 |
| TOTAL SCHOOL TAX | | | | | | | | | $1,942.38 |

## STATE & CITY TAXES, AND OTHER CHARGES

Levied as applicable by State, City, or County: representing 49.20% of your tax statement

| TAXING AUTHORITIES | TAXABLE ASSESSMENT | X | MILLAGE | = | GROSS TAX AMOUNT | FROZEN EXEMPTION | CONST-HMST EXEMPTION | HOST CREDIT | NET TAX DUE |
|---|---|---|---|---|---|---|---|---|---|
| STATE TAXES | 93,500 | | .0001000 | | 9.36 | 0.00 | 0.20 | 0.00 | 9.16 |
| CITY TAXES | 93,500 | | .0220000 | | 2,057.00 | 0.00 | 0.00 | 0.00 | 2,057.00 |
| STORM WATER | 1 UNIT(S) | | 48 | | 48.00 | 0.00 | 0.00 | 0.00 | 48.00 |
| CITY SANI | 1 UNIT(S) | | 198.9 | | 198.90 | 0.00 | 0.00 | 0.00 | 198.90 |
| TOTAL STATE, CITY AND OTHER ASSESSMENTS | | | | | | | | | $2,313.06 |

| TOTAL PROPERTY TAXES | TOTAL MILLAGE | GROSS TAX AMOUNT | FROZEN EXEMPTION | CONST-HMST EXEMPTION | HOST CREDIT | NET TAX DUE |
|---|---|---|---|---|---|---|
| TOTAL DUE | 0.058690 | 5,734.44 | 0.00 | 425.95 | 607.09 | $4,701.40 |

SPECIAL NOTICE: AS REQUIRED BY STATE LAW O.C.G.A 48-5-311, THIS IS A TEMPORARY BILL PENDING THE RESOLUTION OF YOUR APPEAL. IF AN APPEAL HAD NOT BEEN FILED, YOUR TAXES WOULD HAVE BEEN $5,549.92 BASED ON THE ORIGINAL ASSESSMENT OF 110,000. THIS TEMPORARY BILL OF $4,701.40 IS BASED ON AN APPEAL ASSESSMENT OF 93,500. PAYMENTS ARE STILL REQUIRED BY SEPTEMBER 30TH AND NOVEMBER 15TH. THE FINAL AMOUNT WILL BE ADJUSTED WHEN THE APPEAL IS RESOLVED. IF THE APPEAL IS RESOLVED BEFORE NOVEMBER 15TH, A BILL WILL BE ISSUED FOR THE BALANCE DUE OR A REFUND WILL BE SENT FOR ANY OVERPAYMENT. INTEREST APPLIES AFTER NOVEMBER 15TH.

OUR RECORDS INDICATE THAT A MORTGAGE COMPANY IS RESPONSIBLE FOR PAYMENT OF TAXES. IF A MORTGAGE COMPANY IS NOT RESPONSIBLE, PLEASE SUBMIT PAYMENT AS FOLLOWS:

MAKE YOUR CHECK PAYABLE TO:
DEKALB COUNTY TAX COMMISSIONER
P.O. BOX 100004
DECATUR, GA 30031
PAY BY PHONE (404)
online at www.

DUE DATE
NOVEMBER 15, 2014
5% PENALTY FOR LATE PAYMENT
RETURN COUPON WITH PAYMENT

| | |
|---|---|
| PARCEL I.D. | 18 074 02 043 |
| TOTAL ANNUAL TAX | $4,701.40 |
| INSTALLMENT AMOUNT DUE | $2,350.70 |
| ENTER AMOUNT PAID | |

SECOND INSTALLMENT

5-DIGIT 30083

1 of 1
79653/20/355/1

G JR
WAY
MOUNTAIN GA 30083-3660

PIN 4294163

02429416340000002350700000004701406B

IF MAKING FULL PAYMENT TAXES MUST BE PAID ON OR BEFORE



# 2015 DEKALB COUNTY REAL ESTATE TAX STATEMENT

PAY ONLINE AT www.dekalbcountyga.gov/taxcommissioner

CLAUDIA G. LAWSON
TAX COMMISSIONER

IRVIN JOHNSON
CHIEF DEPUTY TAX COMMISSIONER

| | |
|---|---|
| OWNER | ROBERTS ONI TWANISHA |
| CO-OWNER | |
| PARCEL I.D. \ PIN | 18 074 02 043 \ 4294163 |
| PROPERTY ADDRESS | 5371 CHARITY WAY |
| TAX DISTRICT | 84 STONE MTN |

**APPRAISAL VALUES AND EXEMPTION INFORMATION**

| | | | |
|---|---|---|---|
| TOTAL APPRAISAL | 190,000 | EXEMPTION CODE | H1F |
| 40% ASSESSMENT | 76,000 | BASE ASSESSMENT FREEZE | 164,120 |
| APPEAL ASSESSMENT | 0 | NET FROZEN EXEMPTION | 0 |

YOUR TOTAL TAX SAVINGS FOR THIS YEAR IS $875.32. THIS YEAR THE STATE PORTION OF YOUR TAX BILL IS BEING REDUCED AND WILL GRADUALLY BE ELIMINATED FROM YOUR TAX BILL. THIS TAX RELIEF WAS PASSED BY THE GOVERNOR AND THE HOUSE OF REPRESENTATIVES AND THE GEORGIA STATE SENATE.

**COUNTY GOVERNMENT TAXES** — Levied by the Board of Commissioners: representing 14.09% of your tax statement

| TAXING AUTHORITIES | TAXABLE ASSESSMENT | x | MILLAGE | = | GROSS TAX AMOUNT | - | FROZEN EXEMPTION | - | CONST-HMST EXEMPTION | - | HOST CREDIT | = | NET TAX DUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTY OPNS | 76,000 | | .0103900 | | 789.64 | | 0.00 | | 103.90 | | 301.74 | | 384.00 |
| HOSPITALS | 76,000 | | .0008900 | | 67.64 | | 0.00 | | 8.90 | | 25.86 | | 32.88 |
| COUNTY BONDS | 76,000 | | .0000100 | | 0.76 | | 0.00 | | 0.00 | | 0.00 | | 0.76 |
| FIRE | 76,000 | | .0027500 | | 209.00 | | 0.00 | | 27.50 | | 79.86 | | 101.64 |
| STM TAXDIST | 76,000 | | .0003700 | | 28.12 | | 0.00 | | 3.70 | | 10.74 | | 13.68 |
| POLICE SERVC | 76,000 | | .0004200 | | 31.92 | | 0.00 | | 4.20 | | 12.20 | | 15.52 |
| TOTAL COUNTY TAXES | | | | | | | | | | | | | $548.48 |

**BOARD OF EDUCATION - SCHOOL TAXES** — Levied by the Board of Education: representing 38.69% of your tax statement

| TAXING AUTHORITIES | TAXABLE ASSESSMENT | x | MILLAGE | = | GROSS TAX AMOUNT | - | FROZEN EXEMPTION | - | CONST-HMST EXEMPTION | - | HOST CREDIT | = | NET TAX DUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SCHOOL OPNS | 76,000 | | .0237300 | | 1,803.48 | | 0.00 | | 296.62 | | 0.00 | | 1,506.86 |
| TOTAL SCHOOL TAX | | | | | | | | | | | | | $1,506.86 |

**STATE & CITY TAXES, AND OTHER CHARGES** — Levied as applicable by State, City, or County: representing 47.22% of your tax statement

| TAXING AUTHORITIES | TAXABLE ASSESSMENT | x | MILLAGE | = | GROSS TAX AMOUNT | - | FROZEN EXEMPTION | - | CONST-HMST EXEMPTION | - | HOST CREDIT | = | NET TAX DUE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| STATE TAXES | 76,000 | | .0000500 | | 3.80 | | 0.00 | | 0.10 | | 0.00 | | 3.70 |
| CITY TAXES | 76,000 | | .0209000 | | 1,588.40 | | 0.00 | | 0.00 | | 0.00 | | 1,588.40 |
| STORM WATER | 1 UNIT(S) | | 48 | | 48.00 | | 0.00 | | 0.00 | | 0.00 | | 48.00 |
| CITY SANI | 1 UNIT(S) | | 198.9 | | 198.90 | | 0.00 | | 0.00 | | 0.00 | | 198.90 |
| TOTAL STATE, CITY AND OTHER ASSESSMENTS | | | | | | | | | | | | | $1,839.00 |

| TOTAL PROPERTY TAXES | TOTAL MILLAGE | GROSS TAX AMOUNT | FROZEN EXEMPTION | CONST-HMST EXEMPTION | HOST CREDIT | NET TAX DUE |
|---|---|---|---|---|---|---|
| TOTAL DUE | 0.059510 | 4,769.66 | 0.00 | 444.92 | 430.40 | $3,894.34 |

**MAKE YOUR CHECK PAYABLE TO:**
DEKALB COUNTY TAX COMMISSIONER
P.O. BOX 100004
DECATUR, GA 30031-7004
PHONE (404)298-4000
www.dekalbcountyga.gov/taxcommissioner

DUE DATE
**NOVEMBER 15, 2015**
5% PENALTY FOR LATE PAYMENT
RETURN COUPON WITH PAYMENT

| | |
|---|---|
| ADDRESS | 5371 CHARITY WAY |
| PARCEL I.D. | 18 074 02 043 |
| TOTAL ANNUAL TAX | $3,894.34 |
| INSTALLMENT AMOUNT DUE | $1,947.17 |
| ENTER AMOUNT PAID | |

************AUTO**SCH 5-DIGIT 30083
ROBERTS ONI TWANISHA
5371 CHARITY WAY
STONE MOUNTAIN GA 30083-3660

024294163400000194717800000389434 38

CTA

GEORGIA DEPARTMENT OF REVENUE

STATE TAX EXECUTION

| EXECUTION NUMBER | TOTAL |
|---|---|
| REV 10227479 | $4,592.91 (Includes 50.00 Costs) |

GEORGIA, FULTON COUNTY

To ALL and singular sheriffs of this state, the State Revenue Commissioner or his authorized representatives, greetings:

YOU ARE HEREBY COMMANDED, that of the goods and chattels, or if none be found, then the lands and tenements of

FORREST G. ROBERTS
XXX-XX-6929
ONI ROBERTS
XXX-XX-3976
5371 CHEROKEE
STONE MTN WAY, GA 30083-0000

JOINTLY AND SEVERALLY

you cause to be made by levy and sale the sum of the dollars and cents hereinafter shown, said sum representing delinquent tax liabilities of the named taxpayer(s) assessed under the taxing Acts of this State and the Georgia Public Revenue code for the taxable period(s) indicated below together with interest on the total as shown below at the rate specified in Code Section 48-2-40 from the date of this execution until said total amount is paid, plus all collection fees and costs which have accrued and which may hereafter accrue.

You are further commanded to pay over to the Department of Revenue of the State of Georgia the aforesaid amounts upon collection thereof and to have you then and there this writ.

| TAX TYPE | TAX PERIOD | AMOUNT DUE (THRU THIS DATE) |
|---|---|---|
| INDV INCOME | 01/01/08-12/31/08 | $4,542.91 |

Witness the undersigned State Revenue Commissioner of Georgia on this date of NOVEMBER 15, 2010.

Bart L. Graham.
State Revenue Commissioner

| | |
|---|---|
| Principal | $2,629.00 |
| Interest | 499.51 |
| Penalty | 657.25 |
| Collection Fee | 757.15 |
| Costs | 50.00 |
| Total | $4,592.91 |

The State Revenue Commissioner can find no property of the defendant on which to levy the within tax execution.

This ____ day of ______________, ______

Authorized Representative of the State Revenue Commissioner

2011027058 LIEN BOOK 1065 Pg 533
Filed and Recorded: 1/24/2011 3:50:30 PM
Linda Carter
Clerk of Superior Court
DeKalb County, Georgia

______ Page No. ________ at ________ a.m. p.m.

Clerk



# DEKALB COUNTY BOARD OF EQUALIZATION

120 W. TRINITY PL, ROOM 409
DECATUR, GA 30030
PHONE: 404-371-2451
FAX: 404-371-2239

Decision of the DeKalb County Board of Equalization 7

TAX YEAR: 2014

ROBERTS ONI
ROBERTS FORREST G JR
5371 CHARITY WAY
STONE MOUNTAIN GA 30083-3660

RE: Parcel Id.: 18 074 02 043
Account Number: 4294163
Property Address: 5371 CHARITY WAY 30083

We, the undersigned members of the DeKalb County Board of Equalization, having heard all evidence and reviewed all the information submitted, do hearby find the following for each specific issue raised in this appeal.

Your appeal raised the following issue(s):
( ) Taxability ( ) Uniformity (✓) Value ( ) Other

**Decision:**

| 100% TOTAL Value | 190,000 | 40% TOTAL Value | 76,000 |
|---|---|---|---|

**Reason:**

- ☐ We find in favor of the County
- ☑ We find in favor of the Taxpayer
- ☐ The County and Taxpayer agree with value
- ☐ The Taxpayer did not appear

Qualification questions answered in affirmative (Regulation 560-11-2-35):

Member: [signature]

Member: [signature]

Member: [signature]

I, the undersigned member of the DeKalb County Board of Equalization, hereby dissent from the majority decision of the Board.

________________________________

Decision rendered by the majority member of the Board of Equalization, on this 23 day of JUNE 2015.

You may appeal this decision to Superior Court pursuant to Georgia Code 48-5-311. If you wish to continue your appeal to Superior Court, you must do so within thirty (30) days from the date this decision has been rendered. Submit your written letter of appeal along with a check for $207.50 payable to DeKalb County Clerk of Superior Court to: DeKalb County Board of Tax Assessors, 120 West Trinity Place, Room 208,Decatur, GA 30030.

If you have any questions, please feel free to call our staff at 404-371-2451.

Sincerely,
The DeKalb County Board of Equalization

Account No: 4294163

*4294163*

## ANNUAL NOTICE OF ASSESSMENT

**DeKalb County**
Property Appraisal Department
120 West Trinity Place, Room 208
Decatur, GA 30030 PHONE (404) 371-0841

| Notice Date: 05/29/2015 |
|---|
| **This is not a tax bill**<br>**Do not send payment** |
| Last Date to File Appeal:<br>07/13/2015 |
| County property records are available online at:<br>dekalbcountyga.gov/propappr |
| OFFICIAL TAX MATTER - 2015 ASSESSMENT |

************AUTO**SCH 5-DIGIT 30083
ROBERTS ONI TWANISHA
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083-3660

20024/U5271

**The amount of your ad valorem tax bill for the year shown above will be based on the appraised (100%) and assessed (40%) values specified in this notice. You have the right to appeal these values to the County Board of Tax Assessors. All documents and records used to determine the current value are available on request. Additional information on the appeal process may be obtained at http://dor.georgia.gov/documents/property-tax-guide**

**At the time of filing your appeal you must select one of the following options:**

**(1) Appeal to the County Board of Equalization with appeal to the Superior Court. (value, uniformity, denial of exemption, taxability)**
**(2) To arbitration without an appeal to the Superior Court (valuation is the only grounds that may be appealed to arbitration)**
**(3) For a parcel of non-homestead property with a FMV in excess of $1 million, to a hearing officer with appeal to the Superior Court.**

**If you wish to file an appeal, you must do so in writing no later than 45 days after the date of this notice. If you do not file an appeal by this date, your right to file an appeal will be lost. Appeal forms which may be used are available at http://web.co.dekalb.ga.us/PropertyAppraisal/appeal.html**

For further information on the proper method of filing an appeal, you may contact the DeKalb County Board of Tax Assessors which is located at 120 West Trinity Place, Room 208, Decatur, GA 30030 and which may be contacted by telephone at: (404) 371-0841. Your staff contacts are BRIAN ABERNATHY (404) 371-7086 and BRENTNOL BAKER (404) 371-6351

| Account Number | Property ID Number | Acreage | Tax Dist | Covenant Year | Homestead |
|---|---|---|---|---|---|
| 4294163 | 18 074 02 043 | .30 | STONE MTN | | YES - H1F |
| Property Description | R3 - RESIDENTIAL LOT | | | | |
| Property Address | 5371 CHARITY WAY | | | | |
| Fair Market Value | Returned Value | Previous Year Value | Current Year Value | Other Value | |
| 100% Fair Market Value | | 233,000 | 233,000 | | |
| 40% Assessed Value | | [illegible] | 93,200 | | |

**REASONS FOR** [illegible]

Annual Assessment Notice required by GA Law (OCGA-48-5-306)
Based on the following: Review, Property Return or Audit

The estimate of your ad valorem tax bill for the current year is based on [illegible] [fa]ir market value contained in this notice. The actual tax bill you receive may be more or less than t[illegible] [includ]e all eligible exemptions.

| Taxing Authority | Taxable Assessment | X | 2014 Millage | = | Gross Tax Amo[unt] | [illegible] | [illegible]ST [illegible]n | - | Host Credit | = | Net Tax Due |
|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTY OPNS | 93,200 | | .008220 | | 766.1[illegible] | [illegible] | [illegible]0 | | 394.61 | | 289.29 |
| HOSPITALS | 93,200 | | .000800 | | 74.56 | .00 | [illegible].00 | | 38.40 | | 28.16 |
| COUNTY BONDS | 93,200 | | .000010 | | .93 | .00 | .00 | | .00 | | .93 |
| FIRE | 93,200 | | .002870 | | 267.48 | .00 | 28.70 | | 137.78 | | 101.00 |
| STM TAXDIST | 93,200 | | .000270 | | 25.16 | .00 | 2.70 | | 12.96 | | 9.50 |
| POLICE SERVC | 93,200 | | .000440 | | 41.01 | .00 | 4.40 | | 21.12 | | 15.49 |
| SCHOOL OPNS | 93,200 | | .023980 | | 2,234.94 | .00 | 299.75 | | .00 | | 1,935.19 |
| STATE TAXES | 93,200 | | .000100 | | 9.32 | .00 | .20 | | .00 | | 9.12 |
| CITY TAXES | 93,200 | | .022000 | | 2,050.40 | .00 | .00 | | .00 | | 2,050.40 |
| CITY SANI | | | | | 198.90 | | | | | | 198.90 |
| STORMWTR FEE | | | | | 48.00 | | | | | | 48.00 |
| Estimate for County | | | .058690 | | 5,716.80 | .00 | 425.95 | | 604.87 | | 4,685.98 |
| Total Estimate | | | .058690 | | 5,716.80 | .00 | 425.95 | | 604.87 | | 4,685.98 |

899.57
returned to
Stalebridge
Sept 2015

## ANNUAL NOTICE OF ASSESSMENT

**DeKalb County**
Property Appraisal Department
120 West Trinity Place, Room 208
Decatur, GA 30030 PHONE: (404) 371-0841

ROBERTS ONI TWANISHA
5371 CHARITY WAY
STONE MOUNTAIN GA 30083-3660

| Notice Date:06/26/2015 |
|---|
| **This is not a tax bill** **Do not send payment** |
| Last Date To File Appeal: **08/10/2015** |
| County property records are available online at: dekalbcountyga.gov/propappr |
| **OFFICIAL TAX MATTER - 2015 ASSESSMENT** |

**The amount of your ad valorem tax bill for the year shown above will be based on the appraised (100%) and assessed (40%) values specified in this notice. You have the right to appeal these values to the County Board of Tax Assessors. All documents and records used to determine the current value are available on request. Additional information on the appeal process may be obtained at http://dor.georgia.gov/documents/property-tax-guide**

**At the time of filing your appeal you must select one of the following options:**

(1) Appeal to the County Board of Equalization with appeal to the Superior Court. (value, uniformity, denial of exemption, taxability)
(2) To arbitration without an appeal to the Superior Court (valuation is the only grounds that may be appealed to arbitration)
(3) For a parcel of non-homestead property with a FMV in excess of $1 million, to a hearing officer with appeal to the Superior Court.

**If you wish to file an appeal, you must do so in writing no later than 45 days after the date of this notice. If you do not file an appeal by this date, your right to file an appeal will be lost. Appeal forms which may be used are available at http://web.co.dekalb.ga.us/PropertyAppraisal/appeal.html**

For further information on the proper method of filing an appeal, you may contact the DeKalb County Board of Tax Assessors which is located at 120 West Trinity Place, Room 208, Decatur, GA 30030 and which may be contacted by telephone at: (404) 371-0841. Your staff contacts are BRIAN ABERNATHY (404) 371-7086 and BRENTNOL BAKER (404) 371-6351

| Account Number | Property ID Number | Acreage | Tax Dist. | Covenant Year | Homestead |
|---|---|---|---|---|---|
| 4294163 | 18 074 02 043 | .3 | STONE MTN | | YES - H1F |

| Property Description | R3 - RESIDENTIAL LOT |
|---|---|
| Property Address | 5371 CHARITY WAY |

| Fair Market Value | Returned Value | Previous Year Value | Current Year Value | Other Value |
|---|---|---|---|---|
| 100% Fair Market Value | | 190,000 | 190,000 | |
| 40% Assessed Value | | 76,000 | 76,000 | |

**REASONS FOR NOTICE**

Annual Assessment Notice required by GA Law 48-5-306
Based on the following Review, PropertyReturn or Audit

The estimate of your ad valorem tax bill for the current year is based on the previous year's millage rate and the fair market value contained in this notice. The actual tax bill you receive may be more or less than this estimate. This estimate may not include all eligib...

| Taxing Authority | Taxable Assessment | X | 2014 Millage | = | Gross Tax Amount | - | Frozen Exemption | - | CONST-HMST Exemption | - | Host Credit | = | Net Tax Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTY OPNS | 76,000 | | .008220 | | 624.72 | | 0.00 | | 82.20 | | 313.03 | | 229.49 |
| HOSPITALS | 76,000 | | .000800 | | 60.80 | | 0.00 | | 8.00 | | 30.47 | | 22.33 |
| COUNTY BONDS | 76,000 | | .000010 | | .76 | | 0.00 | | 0.00 | | 0.00 | | 0.76 |
| FIRE | 76,000 | | .002870 | | 218.12 | | 0.00 | | 28.70 | | 109.30 | | 80.12 |
| STM TAXDIST | 76,000 | | .000270 | | 20.52 | | 0.00 | | 2.70 | | 10.28 | | 7.54 |
| POLICE SERVC | 76,000 | | .000440 | | 33.44 | | 0.00 | | 4.40 | | 16.76 | | 12.28 |
| SCHOOL OPNS | 76,000 | | .023980 | | 1,822.48 | | 0.00 | | 299.75 | | 0.00 | | 1,522.73 |
| STATE TAXES | 76,000 | | .000100 | | 7.60 | | 0.00 | | 0.20 | | 0.00 | | 7.40 |
| CITY TAXES | 76,000 | | .022000 | | 1,672.00 | | 0.00 | | 0.00 | | 0.00 | | 1,672.00 |
| CITY SANI | | | | | 198.90 | | | | | | | | 198.90 |
| STORMWTR FEE | | | | | 48.00 | | | | | | | | 48.00 |
| Estimate for County | | | .058690 | | 4,707.34 | | 0.00 | | 425.95 | | 479.84 | | 3,801.55 |
| Total Estimate | | | .058690 | | 4,707.34 | | 0.00 | | 425.95 | | 479.84 | | 3,801.55 |

6/23/15 8:05 A

2011 & 2014 & 2015.

Print this page for your records

# Property Tax Information Results

Online Payments are for 2014 Only  Pay Now    Back

For additional assistance, contact (404) 298-4000.

## Property Identification

| | |
|---|---|
| Parcel ID | 18 074 02 039 |
| Pin Number | 4294121 |
| Property Address | 5364 CHARITY WAY |
| Property Type | Real Estate |
| Tax District | 84 - STONE MTN |

## Owner Information

| | Last Name, First Name |
|---|---|
| Jan. 1 st Owner | HUBBELL COREY L |
| Co-Owner | |
| Current Owner | HUBBELL COREY L |
| Co-Owner | |
| Owner Address | 5364 CHARITY WAY<br>STONE MOUNTAIN GA 30083-3660 |
| Care of Information | |

** CHANGE MAILING ADDRESS? **

## Homestead Exemption

| | |
|---|---|
| Exemption Type | H1F - BASIC EXEMPTION WITH FREEZE |
| Tax Exempt Amount | $0.00 |

## Other Exemption Information

| | |
|---|---|
| Exemption Type | |
| Value Exemption Amount | $0.00 |

## Deed Information

| | |
|---|---|
| Deed Type | LIMITEDWARRANTY DEED |
| Deed Book/Page | 24657 / 00417 |
| Plat Book/Page | / 00 0 |

## Property Characteristics/ Sales Information

| | |
|---|---|
| NBHD Code | 0730 |
| Zoning Type | R100 - SF RES DIST |
| Improvement Type | 09-SINGLE FAMILY RESIDENTIAL |
| Year Built | 2004 |
| Condition Code | AVERAGE |
| Quality Grade | GOOD PLUS |
| Air Conditioning | YES |
| Fireplaces | 1 |
| Stories | 2 |
| Square Footage | 2,038 Sq. Ft. |
| Basement Area | 1,172 Sq. Ft. |
| % Bsmt Finished | 0 Sq. Ft. |
| Bedrooms | 4 |
| Bathrooms | 3.5 |
| Last Deed Date | 11/7/2014 |
| Last Deed Amount | $160,000.00 |

Click here to view property map

Additional Property

For additional information on the data above, contact the Property Appraisal Department at 404-371-2471

## Property Value/Billing Assessment

| | |
|---|---|
| Taxable Year | 2015 |
| Land Value | $38,070 |
| Building Value | $121,900 |
| Misc. Improvement Value | $0 |
| Total Value | $159,970 |
| 40% Taxable Assessment | $63,988 |

Information as of 6/23/2015

## Tax Information Summary

| | |
|---|---|
| Taxable Year | 2014 |
| Millage Rate | 0.05869 |
| DeKalb County Taxes Billed | $3,583.82 |
| DeKalb County Taxes Paid | $3,583.82 |
| DeKalb County Taxes Due | $0.00 |
| Total Taxes Billed | $3,583.82 |
| Total Taxes Paid | $3,583.82 |
| Total Taxes Due | $0.00 |
| Last Payment Date for DeKalb County Taxes | 11/19/2014 |
| Last Payment Amount for DeKalb County Taxes | $1,876.09 |

Tax Paid Receipt    Tax Bill Details

-- Choose a Tax Year --    Get Tax Payoff Info.

Prior Years Tax

**Please note that information below may be 7 days old.

DeKalb County Tax

| TaxYear | Total Owed | Total Paid | Total Due | Adjusted Bill Due Date |
|---|---|---|---|---|
| 2014 | $3,583.82 | $3,583.82 | $0.00 | |
| 2013 | $3,872.20 | $3,872.20 | $0.00 | |
| 2012 | $6,867.46 | $6,867.46 | $0.00 | |
| 2011 | $5,261.41 | $5,261.41 | $0.00 | |
| 2010 | $4,619.90 | $4,619.90 | $0.00 | |
| 2009 | $6,083.78 | $6,083.78 | $0.00 | |
| 2008 | $8,169.33 | $8,169.33 | $0.00 | |
| 2007 | $7,711.91 | $7,711.91 | $0.00 | |
| 2006 | $7,526.13 | $7,526.13 | $0.00 | |
| 2005 | $7,270.86 | $7,270.86 | $0.00 | |

## Delinquent Taxes/ Tax Sale Information

Tax Sale File Number
FIFa-GED Book/Page
Levy Date
Sale Date
Delinquent Amount Due

## Property Tax Mailing Address

DeKalb County Tax Commissioner
Collections Division
PO Box 100004
Decatur, GA 30031-7004

For additional assistance, contact (404) 298-4000.

2010 & 2014
BOE.

6/23/15 8:07 A

Print Print this page for your records

# Property Tax Information Results

Online Payments are for 2014 Only  Pay Now    Back

For additional assistance, contact (404) 298-4000.

## Property Identification

| | |
|---|---|
| Parcel ID | 18 074 02 037 |
| Pin Number | 4294104 |
| Property Address | 5348 CHARITY WAY |
| Property Type | Real Estate |
| Tax District | 84 - STONE MTN |

## Owner Information

| | Last Name, First Name |
|---|---|
| Jan. 1 st Owner | POUNDS TERESA I |
| Co-Owner | |
| Current Owner | POUNDS TERESA I |
| Co-Owner | |
| Owner Address | 5348 CHARITY WAY<br>STONE MOUNTAIN GA 30083-3660 |
| Care of Information | |

** CHANGE MAILING ADDRESS? **

## Homestead Exemption

| | |
|---|---|
| Exemption Type | H1F - BASIC EXEMPTION WITH FREEZE |
| Tax Exempt Amount | $0.00 |

## Other Exemption Information

| | |
|---|---|
| Exemption Type | |
| Value Exemption Amount | $0.00 |

## Deed Information

| | |
|---|---|
| Deed Type | WARRANTY DEED |
| Deed Book/Page | 21389 / 00443 |
| Plat Book/Page | 0118 / 0096 |

## Property Characteristics/ Sales Information

| | |
|---|---|
| NBHD Code | 0730 |
| Zoning Type | R100 - SF RES DIST |
| Improvement Type | |
| Year Built | 2004 |
| Condition Code | AVERAGE |
| Quality Grade | GOOD PLUS |
| Air Conditioning | YES |
| Fireplaces | 1 |
| Stories | 2 |
| Square Footage | 2,288 Sq. Ft. |
| Basement Area | 1,226 Sq. Ft. |
| % Bsmt Finished | 0 Sq. Ft. |
| Bedrooms | 4 |
| Bathrooms | 2.5 |
| Last Deed Date | 3/13/2009 |
| Last Deed Amount | $157,200.00 |

Click here to view property map

Additional Property

For additional information on the data above,
contact the Property Appraisal Department at 404-371-2471

## Property Value/Billing Assessment

| | |
|---|---|
| Taxable Year | 2015 |
| Land Value | $55,260 |
| Building Value | $98,240 |
| Misc. Improvement Value | $0 |
| Total Value | $153,500 |
| 40% Taxable Assessment | $61,400 |

Information as of 6/23/2015

## Tax Information Summary

| | |
|---|---|
| Taxable Year | 2014 |
| Millage Rate | 0.05869 |
| DeKalb County Taxes Billed | $3,050.80 |
| DeKalb County Taxes Paid | $3,050.80 |
| DeKalb County Taxes Due | $0.00 |
| Total Taxes Billed | $3,050.80 |
| Total Taxes Paid | $3,050.80 |
| Total Taxes Due | $0.00 |
| Last Payment Date for DeKalb County Taxes | 11/10/2014 |
| Last Payment Amount for DeKalb County Taxes | $1,643.68 |

Tax Paid Receipt    Tax Bill Details

-- Choose a Tax Year --    Get Tax Payoff Info.

Prior Years Tax
**Please note that information below may be 7 days old.
DeKalb County Tax

| TaxYear | Total Owed | Total Paid | Total Due | Adjusted Bill Due Date |
|---|---|---|---|---|
| 2014 | $3,050.80 | $3,050.80 | $0.00 | |
| 2013 | $3,673.40 | $3,673.40 | $0.00 | |
| 2012 | $3,173.10 | $3,173.10 | $0.00 | |
| 2011 | $2,887.70 | $2,887.70 | $0.00 | |
| 2010 | $2,490.24 | $2,490.24 | $0.00 | |
| 2009 | $5,260.26 | $5,260.26 | $0.00 | |
| 2008 | $7,276.68 | $7,276.68 | $0.00 | |
| 2007 | $7,492.06 | $7,492.06 | $0.00 | |
| 2006 | $7,749.49 | $7,749.49 | $0.00 | |
| 2005 | $6,914.34 | $6,914.34 | $0.00 | |

## Delinquent Taxes/ Tax Sale Information

Tax Sale File Number
FiFa-GED Book/Page
Levy Date
Sale Date
Delinquent Amount Due

## Property Tax Mailing Address

DeKalb County Tax Commissioner
Collections Division
PO Box 100004
Decatur, GA 30031-7004

For additional assistance, contact (404) 298-4000.

6/23/15 7:54 A

2011 & 2014 BOE

Print this page for your records

# Property Tax Information Results

Online Payments are for 2014 Only [Pay Now] [Back]

For additional assistance, contact (404) 298-4000.

## Property Identification

| | |
|---|---|
| Parcel ID | 18 074 02 042 |
| Pin Number | 4294155 |
| Property Address | 5375 CHARITY WAY |
| Property Type | Real Estate |
| Tax District | 84 - STONE MTN |

## Owner Information

| | Last Name, First Name |
|---|---|
| Jan. 1 st Owner | FORREST CAROLYN |
| Co-Owner | |
| Current Owner | FORREST CAROLYN |
| Co-Owner | |
| Owner Address | 5375 CHARITY WAY<br>STONE MOUNTAIN GA 30083-3660 |
| Care of Information | |

** CHANGE MAILING ADDRESS? **

## Homestead Exemption

| | |
|---|---|
| Exemption Type | H1F - BASIC EXEMPTION WITH FREEZE |
| Tax Exempt Amount | $0.00 |

## Other Exemption Information

| | |
|---|---|
| Exemption Type | |
| Value Exemption Amount | $0.00 |

## Deed Information

| | |
|---|---|
| Deed Type | LIMITEDWARRANTY DEED |
| Deed Book/Page | 19444 / 00341 |
| Plat Book/Page | 0118 / 0096 |

## Property Characteristics/ Sales Information

| | |
|---|---|
| NBHD Code | 0730 |
| Zoning Type | R100 - SF RES DIST |
| Improvement Type | 09-SINGLE FAMILY RESIDENTIAL |
| Year Built | 2001 |
| Condition Code | AVERAGE |
| Quality Grade | GOOD PLUS |
| Air Conditioning | YES |
| Fireplaces | 1 |
| Stories | 2 |
| Square Footage | 3,239 Sq. Ft. |
| Basement Area | 0 Sq. Ft. |
| % Bsmt Finished | 2,173 Sq. Ft. |
| Bedrooms | 4 |
| Bathrooms | 4.5 |
| Last Deed Date | 11/20/2006 |
| Last Deed Amount | $280,000.00 |

Click here to view property map

[Additional Property]

For additional information on the data above, contact the Property Appraisal Department at 404-371-2471

## Property Value/Billing Assessment

| | |
|---|---|
| Taxable Year | 2015 |
| Land Value | $58,873 |
| Building Value | $119,528 |
| Misc. Improvement Value | $0 |
| Total Value | $178,400 |
| 40% Taxable Assessment | $71,360 |

Information as of 6/23/2015

## Tax Information Summary

| | |
|---|---|
| Taxable Year | 2014 |
| Millage Rate | 0.05869 |
| 1 st Installment Amount | $275.19 |
| 2 nd Installment Amount | $313.69 |
| DeKalb County Taxes Billed | $3,601.44 |
| DeKalb County Taxes Paid | $3,012.56 |
| DeKalb County Taxes Due | $588.88 |
| Total Taxes Billed | $3,601.44 |
| Total Taxes Paid | $3,012.56 |
| Total Taxes Due | $588.88 |
| Last Payment Date for DeKalb County Taxes | 11/4/2014 |
| Last Payment Amount for DeKalb County Taxes | $1,506.28 |

[Tax Paid Receipt] [Tax Bill Details]

[-- Choose a Tax Year --] [Get Tax Payoff Info.]

Prior Years Tax
**Please note that information below may be 7 days old.
**DeKalb County Tax**

| TaxYear | Total Owed | Total Paid | Total Due | Adjusted Bill Due Date |
|---|---|---|---|---|
| 2014 | $3,601.44 | $3,012.56 | $588.88 | 7/21/2015 |
| 2013 | $4,083.30 | $4,083.30 | $0.00 | |
| 2012 | $3,440.44 | $3,440.44 | $0.00 | |
| 2011 | $3,132.76 | $3,132.76 | $0.00 | |
| 2010 | $4,230.62 | $4,230.62 | $0.00 | |
| 2009 | $4,230.62 | $4,230.62 | $0.00 | |
| 2008 | $8,052.58 | $8,052.58 | $0.00 | |
| 2007 | $7,363.46 | $7,363.46 | $0.00 | |
| 2006 | $9,591.02 | $9,591.02 | $0.00 | |
| 2005 | $2,712.62 | $2,712.62 | $0.00 | |

## Delinquent Taxes/ Tax Sale Information

| | |
|---|---|
| Tax Sale File Number | |
| FiFa-GED Book/Page | |
| Levy Date | |
| Sale Date | |
| Delinquent Amount Due | Call 404-298-3053 for Payoff Amount |

## Property Tax Mailing Address

DeKalb County Tax Commissioner
Collections Division
PO Box 100004
Decatur, GA 30031-7004



**DEKALB COUNTY BOARD OF EQUALIZATION**
120 W. TRINITY PL, ROOM 409
DECATUR, GA 30030
PHONE: 404-371-2451
FAX: 404-371-2239

May 22, 2015

DeKalb County Board of Equalization

ROBERTS ONI
ROBERTS FORREST G JR
5371 CHARITY WAY
STONE MOUNTAIN GA 30083-3660

RE: Parcel Id.: 18 074 02 043
Account Number: 4294163
Property Address: 5371 CHARITY WAY 30083
Tax Year: 2014

Dear ROBERTS ONI

Your appeal was received by the Board of Tax Assessors and no changes or corrections were made in the valuation or decision. Therefore, our appeal was certified to the Board of Equalization. The appeal is scheduled to be heard before the Board of Equalization on:

**Date: June 23, 2015**
**Time: 09:00 AM**

**All hearings are scheduled on a first come basis. You will then be called by your assigned appraiser in the order you sign in. Sign-in for hearings will only last for 30 minutes after your scheduled start time. You may reschedule your appeal date one time only. If this is your 2nd notice, you may not reschedule.**

If you wish to reschedue / cancel this hearing, please sign the statement below and fax or mail to the Board of Equalization at the above address at least 24 hours before your hearing date.

The Board of Equalization is made up citizens of DeKalb and appointed by the Grand Jury. Hearings will be no longer than fifteen minutes. Both taxpayer and Board of Tax Assessors shall be allowed to present both written and / or oral evidence. The Board of Equalization will then make their decision on the evidence presented as to value.

Sincerely,

Board of Equalization

Please circle below whether you wish to reschedule or cancel your hearing.
I wish to reschedule / cancel this hearing.

________________ Date

________________ Signature

Account No: 4294163

*4294163*



**DEKALB COUNTY BOARD OF TAX ASSESSORS**
120 W TRINITY PLACE
DECATUR, GA 30030
Phone: 404-371-0841
Fax: 404-371-2947

12/08/2014

ROBERTS ONI
ROBERTS FORREST G JR
5371 CHARITY WAY
STONE MOUNTAIN GA 30083-3660

RE: 18 074 02 043
5371 CHARITY WAY 30083

TAX YEAR : 2014

Dear Property Owner :

The Dekalb County Board Of Tax Assessors has reviewed your appeal and their decision is as follows:

| | Previous | Current |
|---|---|---|
| Fair Market Value | 275,000 | 233,000 |
| 40% Assessment | 110,000 | 93,200 |

PLEASE RESPOND TO THE ABOVE BY SELECTING ONE OF THE FOLLOWING STATEMENTS AND RETURN THIS FORM OR OTHER SUFFICIENT WRITING TO THE ABOVE ADDRESS WITHIN THIRTY (30) DAYS FROM THE DATE OF THIS NOTIFICATION, OR YOUR RIGHTS TO FURTHER THIS APPEAL WILL BE TERMINATED. (OCGA 48-5-311).

______ I accept the proposed valuation and wish to withdraw my appeal.

__X__ I do not accept the proposed valuation and wish to further my appeal to the Board of Equalization.

The Tax Commissioner's office will be notified of any changes affecting your tax bill. You may contact their office at 404-298-4000 for further information concerning your tax bill.

Date: 12,15,14

Signature: [signature]

Account No: 4294163

*4294163*

# Address Search Results

## Property Tracking System

Back

Below are the results of your search for 'CHARITY'.

Please locate the property address then click on the street name, you will be directed to the property information page.

| Property Address | Owner Name | ParcelID |
|---|---|---|
| 3112 CHARITY DR | BUXBAUM INGRID | 15 081 09 010 |
| 3113 CHARITY DR | ISLAS TELLEZ PAULA | 15 081 04 029 |
| 3116 CHARITY DR | COOPER GERALD PHILLIP | 15 081 09 011 |
| 3117 CHARITY DR | ISLAS IGNACIO | 15 081 04 030 |
| 3121 CHARITY DR | ISLAS IGNACIO | 15 081 04 028 |
| 3124 CHARITY DR | COOPER PHILLIP | 15 081 09 016 |
| 3125 CHARITY DR | HABITAT FOR HUMANITY IN ATL | 15 081 04 031 |
| 3128 CHARITY DR | COHRAN CRYSTAL J | 15 081 09 012 |
| 3129 CHARITY DR | HABITAT FOR HUMANITY IN ATL | 15 081 04 032 |
| 3131 CHARITY DR | HABITAT FOR HUMANITY IN ATL | 15 081 04 027 |
| 3133 CHARITY DR | PEMBERTON AND KLEMAN REAL | 15 081 04 040 |
| 3134 CHARITY DR | COHRAN CRYSTAL | 15 081 09 020 |
| 3140 CHARITY DR | VENICE CAPITAL LLC | 15 081 09 019 |
| 3150 CHARITY DR | MINCY HENRY | 15 081 09 013 |
| 3153 CHARITY DR | SPIVEY MARCQUES R | 15 081 04 025 |
| 3157 CHARITY DR | HABITAT FOR HUMANITY IN ATL | 15 081 04 024 |
| 5331 CHARITY WAY | GLOBAL PROFESSIONAL DEVELOPMEN | 18 074 02 048 |
| 5339 CHARITY WAY | BOWMAN SHARON | 18 074 02 047 |
| 5340 CHARITY WAY | THOMAS ANN | 18 074 02 036 |
| 5347 CHARITY WAY | DOCKERY DANIEL JESUS | 18 074 02 046 |
| 5348 CHARITY WAY | POUNDS TERESA I | 18 074 02 037 |
| 5355 CHARITY WAY | DAWIT GIRMAY Y | 18 074 02 045 |
| 5356 CHARITY WAY | BAKHTIARI VERONICA D | 18 074 02 038 |
| 5363 CHARITY WAY | DILLARD ANTHONY | 18 074 02 044 |
| 5364 CHARITY WAY | HUBBELL COREY L | 18 074 02 039 |
| 5371 CHARITY WAY | ROBERTS ONI TWANISHA | 18 074 02 043 |
| 5372 CHARITY WAY | CONLEY ANITA L | 18 074 02 040 |
| 5375 CHARITY WAY | FORREST CAROLYN | 18 074 02 042 |
| 5376 CHARITY WAY | WINBUSH SHIRLEY | 18 074 02 041 |

For additional assistance, contact (404) 298-4000.

6/23/15 7:52 A

Print this page for your records

# Property Tax Information Results

Online Payments are for 2014 Only  Pay Now    Back

For additional assistance, contact (404) 298-4000.

## Property Identification

| | |
|---|---|
| Parcel ID | 18 074 02 043 |
| Pin Number | 4294163 |
| Property Address | 5371 CHARITY WAY |
| Property Type | Real Estate |
| Tax District | 84 - STONE MTN |

## Owner Information

| | Last Name, First Name |
|---|---|
| Jan. 1 st Owner | ROBERTS ONI TWANISHA |
| Co-Owner | |
| Current Owner | BAKER SISTER TRUST |
| Co-Owner | |
| Current Owner Address | 160 CLAIREMONT RD<br>STE 200<br>DECATUR GA 30030 |
| Care of Information | |

** CHANGE MAILING ADDRESS? **

## Homestead Exemption

| | |
|---|---|
| Exemption Type | H1F - BASIC EXEMPTION WITH FREEZE |
| Tax Exempt Amount | $0.00 |

## Other Exemption Information

| | |
|---|---|
| Exemption Type | |
| Value Exemption Amount | $0.00 |

## Deed Information

| | |
|---|---|
| Deed Type | QUIT CLAIM DEED |
| Deed Book/Page | 24835 / 00071 |
| Plat Book/Page | / 01 0 DOG |

## Property Characteristics/ Sales Information

| | |
|---|---|
| NBHD Code | 0730 |
| Zoning Type | R100 - SF RES DIST |
| Improvement Type | 09-SINGLE FAMILY RESIDENTIAL |
| Year Built | 2001 |
| Condition Code | AVERAGE |
| Quality Grade | GOOD PLUS |
| Air Conditioning | YES |
| Fireplaces | 1 |
| Stories | 2 |
| Square Footage | 2,943 Sq. Ft. |
| Basement Area | 0 Sq. Ft. |
| % Bsmt Finished | 1,309 Sq. Ft. |
| Bedrooms | 5 |
| Bathrooms | 3 |
| Last Deed Date | 3/13/2015 |
| Last Deed Amount | $10.00 |

Click here to view property map

Additional Property

For additional information on the data above, contact the Property Appraisal Department at 404-371-2471

## Property Value/Billing Assessment

| | |
|---|---|
| Taxable Year | 2015 |
| Land Value | $58,900 |
| Building Value | $174,100 |
| Misc. Improvement Value | $0 |
| Total Value | $233,000 |
| 40% Taxable Assessment | $93,200 |

Information as of 6/23/2015

## Tax Information Summary

| | |
|---|---|
| Taxable Year | 2014 |
| Millage Rate | 0.05869 |
| DeKalb County Taxes Billed | $4,981.06 |
| DeKalb County Taxes Paid | $4,981.06 |
| DeKalb County Taxes Due | $0.00 |
| Total Taxes Billed | $4,981.06 |
| Total Taxes Paid | $4,981.06 |
| Total Taxes Due | $0.00 |
| Last Payment Date for DeKalb County Taxes | 1/14/2015 |
| Last Payment Amount for DeKalb County Taxes | $5,030.87 |

Tax Paid Receipt    Tax Bill Details

-- Choose a Tax Year --    Get Tax Payoff Info.

Prior Years Tax

**Please note that information below may be 7 days old.

DeKalb County Tax

| TaxYear | Total Owed | Total Paid | Total Due | Adjusted Bill Due Date |
|---|---|---|---|---|
| 2014 | $4,981.06 | $4,981.06 | $0.00 | |
| 2013 | $6,191.84 | $6,191.84 | $0.00 | |
| 2012 | $6,521.26 | $6,521.26 | $0.00 | |
| 2011 | $5,402.44 | $5,402.44 | $0.00 | |
| 2010 | $4,659.80 | $4,659.80 | $0.00 | |
| 2009 | $4,814.40 | $4,814.40 | $0.00 | |
| 2008 | $5,999.88 | $5,999.88 | $0.00 | |
| 2007 | $5,946.10 | $5,946.10 | $0.00 | |
| 2006 | $7,972.46 | $7,972.46 | $0.00 | |
| 2005 | $7,197.24 | $7,197.24 | $0.00 | |

## Delinquent Taxes/ Tax Sale Information

Tax Sale File Number
FiFa-GED Book/Page
Levy Date
Sale Date
Delinquent Amount Due

## Property Tax Mailing Address

DeKalb County Tax Commissioner
Collections Division
PO Box 100004
Decatur, GA 30031-7004

6/23/15 7:57 A

Print this page for your records

# Property Tax Information Results

Online Payments are for 2014 Only  Pay Now  Back

For additional assistance, contact (404) 298-4000.

## Property Identification

| | |
|---|---|
| Parcel ID | 18 074 02 044 |
| Pin Number | 4294171 |
| Property Address | 5363 CHARITY WAY |
| Property Type | Real Estate |
| Tax District | 84 - STONE MTN |

## Owner Information

| | |
|---|---|
| | Last Name, First Name |
| Jan. 1 st Owner | DILLARD ANTHONY |
| Co-Owner | |
| Current Owner | DILLARD ANTHONY |
| Co-Owner | |
| Owner Address | 5363 CHARITY WAY<br>STONE MOUNTAIN GA 30083-3660 |
| Care of Information | |

** CHANGE MAILING ADDRESS? **

## Homestead Exemption

| | |
|---|---|
| Exemption Type | H1F - BASIC EXEMPTION WITH FREEZE |
| Tax Exempt Amount | $0.00 |

## Other Exemption Information

| | |
|---|---|
| Exemption Type | |
| Value Exemption Amount | $0.00 |

## Deed Information

| | |
|---|---|
| Deed Type | WARRANTY DEED |
| Deed Book/Page | 12806 / 00496 |
| Plat Book/Page | 0118 / 0043 |

## Property Characteristics/ Sales Information

| | |
|---|---|
| NBHD Code | 0730 |
| Zoning Type | R100 - SF RES DIST |
| Improvement Type | 09-SINGLE FAMILY RESIDENTIAL |
| Year Built | 2001 |
| Condition Code | AVERAGE |
| Quality Grade | GOOD PLUS |
| Air Conditioning | YES |
| Fireplaces | 1 |
| Stories | 2 |
| Square Footage | 2,640 Sq. Ft. |
| Basement Area | 0 Sq. Ft. |
| % Bsmt Finished | 976 Sq. Ft. |
| Bedrooms | 4 |
| Bathrooms | 3.5 |
| Last Deed Date | 11/23/2001 |
| Last Deed Amount | $252,000.00 |

Click here to view property map

Additional Property

For additional information on the data above, contact the Property Appraisal Department at 404-371-2471

## Property Value/Billing Assessment

| | |
|---|---|
| Taxable Year | 2015 |
| Land Value | $58,900 |
| Building Value | $226,300 |
| Misc. Improvement Value | $0 |
| Total Value | $285,200 |
| 40% Taxable Assessment | $114,080 |

Information as of 6/23/2015

## Tax Information Summary

| | |
|---|---|
| Taxable Year | 2014 |
| Millage Rate | 0.05869 |
| DeKalb County Taxes Billed | $3,287.36 |
| DeKalb County Taxes Paid | $3,287.36 |
| DeKalb County Taxes Due | $0.00 |
| Total Taxes Billed | $3,287.36 |
| Total Taxes Paid | $3,287.36 |
| Total Taxes Due | $0.00 |
| Last Payment Date for DeKalb County Taxes | 11/4/2014 |
| Last Payment Amount for DeKalb County Taxes | $1,643.68 |

Tax Paid Receipt  Tax Bill Details

-- Choose a Tax Year --  Get Tax Payoff Info.

Prior Years Tax

**Please note that information below may be 7 days old.

DeKalb County Tax

| TaxYear | Total Owed | Total Paid | Total Due | Adjusted Bill Due Date |
|---|---|---|---|---|
| 2014 | $3,287.36 | $3,287.36 | $0.00 | |
| 2013 | $3,673.40 | $3,673.40 | $0.00 | |
| 2012 | $3,173.10 | $3,173.10 | $0.00 | |
| 2011 | $2,887.70 | $2,887.70 | $0.00 | |
| 2010 | $2,490.24 | $2,490.24 | $0.00 | |
| 2009 | $4,623.50 | $4,623.50 | $0.00 | |
| 2008 | $5,730.60 | $5,730.60 | $0.00 | |
| 2007 | $5,679.76 | $5,679.76 | $0.00 | |
| 2006 | $5,807.12 | $5,807.12 | $0.00 | |
| 2005 | $5,196.35 | $5,196.35 | $0.00 | |

## Delinquent Taxes/ Tax Sale Information

Tax Sale File Number
FiFa-GED Book/Page
Levy Date
Sale Date
Delinquent Amount Due

## Property Tax Mailing Address

DeKalb County Tax Commissioner
Collections Division
PO Box 100004
Decatur, GA 30031-7004

For additional assistance, contact (404) 298-4000.



# 18 074 02 043 - DeKalb County 2014 Appeal Confirmation

resproperty@dekalbcountyga.gov <resproperty@dekalbcountyga.gov> Wed, Jun 18, 2014 at 3:56 PM
To: atodivinity@gmail.com
Cc: applconf@dekalbcountyga.gov

DeKalb County Property Appraisal Department
2014 Online Appeal Form

**Please do not reply to this email.**

DATE: 6/18/2014 3:56:43 PM
SUBJECT: 2014APPEAL CONFIRMATION

OWNER NAME: ROBERTS ONI
PARCEL ID#: 18 074 02 043
PROPERTY ADDRESS: 5371 CHARITY WAY
Confirmation Number: 201402889859750

Your 2014 appeal has been successfully submitted to the Property Appraisal Department. Our appraisal staff will review your appeal and make a recommendation to the Board of Tax Assessors, who will notify you of the decision in writing. This process can take several weeks or months.

You are hereby notified (and should communicate this notification to any other occupants of your property) that pursuant to O.C.GA 48-5-264.1 (a), representatives of the DeKalb Property Appraisal Department, with proper ID, may enter upon your property during normal business hours, for the purposes of collecting accurate data or any verifications thereof due to any permits issued, return of value filing, revaluations (partial or whole), parcel sales, and appeal reviews. Please contact our office if you have questions.

We appreciate your patience as we give careful consideration to the information you have provided.

**Please print this message and keep a copy for your records.**

If you have additional information to send to us regarding your appeal, please print a copy of this Confirmation Letter and attach it to the front of your documents, then mail to:

DeKalb County Property Appraisal Department
Additional Appeal Information
120 West Trinity Place
Decatur, GA 30030

# ANNUAL NOTICE OF ASSESSMENT

**DeKalb County**
Property Appraisal Department
120 West Trinity Place, Room 208
Decatur, GA 30030 PHONE (404) 371-0841

| Notice Date: 05/28/2013 |
|---|
| **This is not a tax bill**<br>**Do not send payment** |
| Last Date to File Appeal:<br>07/12/2013 |
| County property records are available online at:<br>dekalbcountyga.gov/propappr |
| OFFICIAL TAX MATTER - 2013 ASSESSMENT |

*****************AUTO**5-DIGIT 30083
ROBERTS ONI
ROBERTS FORREST G JR
5371 CHARITY WAY
STONE MOUNTAIN, GA 30083-3660

**The amount of your ad valorem tax bill for the year shown above will be based on the appraised (100%) and assessed (40%) values specified in this notice. You have the right to appeal these values to the County Board of Tax Assessors. All documents and records used to determine the current value are available on request. Additional information on the appeal process may be obtained at https://etax.dor.ga.gov/PTD/adm/taxguide/appeals.aspx**

**At the time of filing your appeal you must select one of the following options:**

**(1) Appeal to the County Board of Equalization with appeal to the Superior Court. (value, uniformity, denial of exemption, taxability)**
**(2) To arbitration without an appeal to the Superior Court (valuation is the only grounds that may be appealed to arbitration)**
**(3) For a parcel of non-homestead property with a FMV in excess of $1 million, to a hearing officer with appeal to the Superior Court.**

**If you wish to file an appeal, you must do so in writing no later than 45 days after the date of this notice. If you do not file an appeal by this date, your right to file an appeal will be lost. Appeal forms which may be used are available at http://web.co.dekalb.ga.us/PropertyAppraisal/appeal.html**

For further information on the proper method of filing an appeal, you may contact the DeKalb County Board of Tax Assessors which is located at 120 West Trinity Place, Room 208, Decatur, GA 30030 and which may be contacted by telephone at: (404) 371-0841. Your staff contacts are JAFARI FARMER (404) 371-7086 and BRENTNOL BAKER (404) 371-6351

| Account Number | Property ID Number | Acreage | Tax Dist | Covenant Year | Homestead |
|---|---|---|---|---|---|
| 4294163 | 18 074 02 043 | .30 | STONE MTN | | YES - H1F |
| Property Description | R3 - RESIDENTIAL LOT | | | | |
| Property Address | 5371 CHARITY WAY | | | | |
| Fair Market Value | Returned Value | Previous Year Value | Current Year Value | Other Value | |
| 100% Fair Market Value | | 332,800 | 332,800 | | |
| 40% Assessed Value | | 133,120 | 133,120 | | |

**REASONS FOR NOTICE**

Annual Assessment Notice required by GA Law (OCGA-48-5-306)
Based on the following: Review, Property Return or Audit

The estimate of your ad valorem tax bill for the current year is based on the previous year's millage rate and the fair market value contained in this notice. The actual tax bill you receive may be more or less than this estimate. This estimate may not include all eligible exemptions.

| Taxing Authority | Taxable Assessment | X | 2012 Millage | = | Gross Tax Amount | - | Frozen Exemption | - | CONST-HMST Exemption | - | Host Credit | = | Net Tax Due |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTY OPNS | 133,120 | | .010430 | | 1,388.44 | | .00 | | 104.30 | | 757.65 | | 526.49 |
| HOSPITALS | 133,120 | | .000940 | | 125.13 | | .00 | | 9.40 | | 68.28 | | 47.45 |
| COUNTY BONDS | 133,120 | | .000700 | | 93.18 | | .00 | | .00 | | .00 | | 93.18 |
| FIRE | 133,120 | | .003290 | | 437.96 | | .00 | | 32.90 | | 238.99 | | 166.07 |
| STM TAXDIST | 133,120 | | .000160 | | 21.30 | | .00 | | 1.60 | | 11.62 | | 8.08 |
| POLICE SERVC | 133,120 | | .000310 | | 41.27 | | .00 | | 3.10 | | 22.52 | | 15.65 |
| SCHOOL OPNS | 133,120 | | .023980 | | 3,192.22 | | .00 | | 299.75 | | .00 | | 2,892.47 |
| STATE TAXES | 133,120 | | .000200 | | 26.62 | | .00 | | .40 | | .00 | | 26.22 |
| CITY TAXES | 133,120 | | .018800 | | 2,502.66 | | .00 | | .00 | | .00 | | 2,502.66 |
| CITY SANI | | | | | 195.00 | | | | | | | | 195.00 |
| STORMWTR FEE | | | | | 48.00 | | | | | | | | 48.00 |
| Estimate for County | | | .058810 | | 8,071.78 | | .00 | | 451.45 | | 1,099.06 | | 6,521.27 |
| Total Estimate | | | .058810 | | 8,071.78 | | .00 | | 451.45 | | 1,099.06 | | 6,521.27 |

THIS IS NOT A BILL DO NOT SEND PAYMENT

# EXHIBIT P

## Audit

GEORGIA SECRETARY OF STATE
BRIAN P. KEMP

HOME (/)

## BUSINESS SEARCH

### BUSINESS INFORMATION

| | | | |
|---|---|---|---|
| Business Name: | PRIMESTAR FUND I TRS INC. | Control Number: | 15001743 |
| Business Type: | Foreign Profit Corporation | Business Status: | Revoked |
| Business Purpose: | NONE | | |
| Principal Office Address: | 8665 East Hartford Dr, Suite 200, Scottsdale, AZ, 85255, USA | Date of Formation / Registration Date: | 1/6/2015 |
| Jurisdiction: | Delaware | Last Annual Registration Year: | 2017 |
| Dissolved Date: | 09/07/2018 | | |

### REGISTERED AGENT INFORMATION

| | |
|---|---|
| Registered Agent Name: | C T Corporation System |
| Physical Address: | 289 S Culver St, Lawrenceville, GA, 30046-4805, USA |
| County: | Gwinnett |

### OFFICER INFORMATION

| Name | Title | Business Address |
|---|---|---|
| Arik Prawer | CFO | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |
| Fred Tuomi | CEO | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |
| Ryan Berry | Secretary | 8665 East Hartford Dr Suite 200, Scottsdale, AZ, 85255, USA |

Back Filing History Name History

Return to Business Search



MFI MIAMI
MORTGAGE FRAUD INVESTIGATIONS

STEPHEN J. DIBERT

265 S. FEDERAL HWY. STE. 279
DEERFIELD BEACH, FL 33441-4146
TELEPHONE: (561) 317-9978
FACSIMILE: (888) 525-4285

# FORENSIC AUDIT REPORT

# FOR

# Oni Roberts aka Twanisha Oni Roberts

## 5371 Charity Way
## Stone Mountain, GA 30083

**Oni Roberts aka Twanisha Oni Roberts**
**5371 Charity Way**
**Stone Mountain, GA 30083**

**Original Lender:**
**Bank of America, N.A.**
9000 Southside Blvd.
Jacksonville, FL 32256

**Servicer:**
**Statebridge Company**
5680 Greenwood Plaza Blvd. Ste. 100
Greenwood Village, CO 90111

**Alleged Note Holder:**
**PrimeStar Fund 1 TRS, Inc.**

**MERS ID#**
N/A

**Loan #**
6864351371

## Origination

On 7/26/2006, Oni Roberts aka Twanisha Oni Roberts (client) and her ex-husband consummated a 30-year fixed mortgage in the amount of $302,000 with an interest rate of 5.575% and a payment of $1,786.45

## Modification

On 4/7/2010, Client and her ex-husband negotiated a loan modification with BAC Home Loan Servicing, the servicer for alleged note holder, Bank of America, N.A. with following terms:

| Time Frame: | Start Date: | Interest: | Principal & Interest Payment: |
|---|---|---|---|
| Years 1-5 | April 2010 | 2.75% | $1,291.40 |
| Year 6 | April 2015 | 3.75% | $1,409.92 |
| Year 7 | April 2016 | 4.75% | $1,539.92 |
| Year 23-30 | April 2017 | 5% | $1,572.14 |

## Note

The note is endorsed in blank by Bank of America AVP Christina M. Schmitt.

## Public Records

Client's Security Deed (Georgia's version of a mortgage) dated 7/26/2006 was recorded with the DeKalb County Clerk of the Superior Court on 8/15/2006.

On 4/5/2012, Client and her ex-husband filed Chapter 13 Bankruptcy and re-affirmed the Bank of America mortgage in the filing.

On 6/24/2014, a mortgage assignment dated 3/19/2014 was recorded with the DeKalb County Clerk assigning this mortgage from Bank of America to US Bank NA as Trustee for Prof 2013-S3 REMIC Trust III

On 12/26/2014, a second mortgage assignment dated 12/16/2014 was recorded with the DeKalb County Clerk indicating that the mortgage was being assigned from US Bank NA as Trustee for Prof 2013-S3 REMIC Trust III to Wilmington Savings Funding Society FSB as Trustee for PrimeStar-H1 Fund 1 Trust.

On 3/19/2015, a Quit Claim Deed dated 11/7/2014 was recorded with the DeKalb County Clerk from Forrest Roberts to Twanisha Oni Roberts.

On 3/19/2015, a second Quit Claim Deed dated 3/13/2015 was recorded with the DeKalb County Clerk from Twanisha Oni Roberts to the Baker Sister Trust

On 12/17/2016, a Special Warranty Deed was recorded with the DeKalb County Clerk indicating the property was being sold by Wilmington Savings Funding Society FSB as Trustee for PrimeStar-H1 Fund 1 Trust to PrimeStar-H Fund 1 Trust.

## REMIC Trusts

However, after reviewing the Securities and Exchange Commission's EDGAR database, it appears that none of the REMIC Trusts named in the various mortgage assignments are registered with the Securities and Exchange Commission (SEC). Therefore, they either don't exist or in violation of Section 5 of the SEC Act of 1933 that requires all entities offering securities to be registered with the SEC or qualify for a Rule 144a exemption from the registration requirements. (http://www.sec.gov/answers/rule144.htm)

## Validation of the Debt

It appears that that Statebridge is unable to validate the debt that is owed on this loan. The transaction history supplied by Statebridge to MFI-Miami begins on 9/15/2014 and goes through 11/15/2017. Nearly 96 months of transaction history are missing. Therefore, validating an accurate amount of the debt would be impossible.

**Disclaimer**

The comments, opinions, conclusions contained in this Mortgage Loan Audit Report are not intended to provide legal advice; and should not be relied on for legal advice. The Applicant(s) is hereby advised that they should consult their legal adviser if they seek legal advice regarding the information contained herein.

**Certification**

The comments, opinions, and conclusions of the Examiner are based on information provided by Applicant(s) in accordance with the Terms and Conditions of the Mortgage Fraud Investigation Agreement. If information was submitted by either the Mortgage Broker, or the Mortgage Lender, or both regarding this Mortgage transaction, whether or not submitted in response to a Qualified Written Request (QWR) if demanded by the Examiner, said information provided has been fully reviewed by Examiner, and given full consideration in the process of forming the comments, opinions, and conclusions contained in this Mortgage Loan Audit Report.

Based on the information submitted by the Applicant(s) and if applicable, all other parties involved with this transaction, it is the opinion of the Examiner that Applicant(s) should seek the advice of a qualified licensed attorney to assess the extent of any legal remedies that may be available, and to what extend pursuing such remedies may provide a benefit to the Applicant(s).

Stephen Dibert, Examiner 8/18/2018
MFI-Miami, LLC-Examiner

# EXHIBIT Q

## Foreclosure Notice Letters


**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

November 22, 2014

**VIA-CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Oni Roberts
Forrest G Roberts, Jr.
5371 Charity Way
Stone Mountain, Georgia 30083

Re: Promissory Note (as amended, modified, or revised from time to time, the "Note") dated July 25, 2006 in the original principal amount of $302,000.00 by Oni Roberts and Forrest G Roberts, Jr. ("Borrower") and in favor of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), secured by that certain Security Deed dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31 of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as amended, modified, or revised from time to time, the "Security Deed"); each of the above described instruments being referred to herein as the "Loan Documents"

Dear Borrower:

This firm represents Lender with respect to the captioned matters. Borrower has committed a monetary default under the Loan Documents in that Borrower has not paid the debt service due under the Loan Documents for several months. As a result, Borrower has committed a default under the Loan Documents, thereby causing the acceleration, attorney's fees and foreclosure provisions of this letter to apply. Nonetheless, this letter is to give notice to you that you may cure this default by paying all accrued but unpaid interest, late fees, and costs incurred by Lender to date in connection with the Loan Documents and the real estate secured by the Loan Documents in the amount of $61,325.56

3330 Cumberland Blvd.
Suite 300
Atlanta, Georgia 30339

P (770) 790-3550
F (770) 790-3520
www.bwnfirm.com

Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (770) 790-3550.

If the above amount is not paid in thirty (30) days, then in accordance with the terms and conditions of the Loan Documents, the entire amount of the present outstanding balance of both the principal and accrued interest at the default rate on indebtedness evidenced by the Loan Documents and secured by the Loan Documents, all late charges incurred on the indebtedness evidenced by the Loan Documents, all interest incurred at the default rate specified in the Loan Documents and all other charges provided for under the Loan Documents (all such monies due on said indebtedness hereinafter collectively referred to as the "Amounts Due") shall be considered, without further action or notice by Lender or its counsel, declared immediately due and payable. After acceleration has occurred Borrower has the right to reinstate and bring a court action should Borrower assert the non-existence of a default or any other defense to acceleration and sale under Georgia law.

Unless the Amounts Due are paid in full within ten (10) days from the expiration of the 30 day period set forth above, the provision for attorneys' fees in the Loan Documents will be enforced, as provided by Official Code of Georgia Annotated ("O.C.G.A.") Section 13-1-11, and you will be required to pay such stipulated attorneys' fees. The payment for attorneys' fees will be <u>in addition to</u> your obligation to pay the Amounts Due. If you pay the Amounts Due within ten (10) days after the expiration of the 30 day period, you will not be required to pay the attorneys' fees. In other words, you can avoid the additional obligation of attorneys' fees if the Amounts Due are fully paid within ten (10) days from the expiration of the 30 day period.

This letter shall also serve as notice that Lender intends to initiate foreclosure proceedings against the Property on the first Tuesday of January, 2015 and may also exercise its other rights under the Loan Documents, which rights will be in addition to the rights which are exercised, noticed or discussed herein. A copy of the Notice of Sale Under Power which shall be submitted to The Champion for publication is enclosed herewith.

Any money expended by Lender in accordance with the terms and conditions of the Loan Documents shall be added to the outstanding principal indebtedness secured by the Loan Documents, shall bear interest at the delinquency rate specified in the Loan Documents, shall be deemed secured by the Loan Documents, and shall be subject to the aforementioned provisions

contained in the Loan Documents governing the payment of attorneys' fees. No attorneys' fees shall be due for such additional money expended until after ten days from your receipt of notice of such additional Amounts Due, and you will have an opportunity to avoid such additional attorneys' fees by the payment of the additional Amounts Due within ten days from receipt of notice.

Notice is also hereby given to you pursuant to O.C.G.A. Section 13-4-4, that Lender continues to rely on and hereby continues to require strict compliance with each and every term and condition of the Loan Documents and the other documents evidencing and securing the indebtedness evidenced by the Secured Indebtedness, and none of the terms or conditions contained in said Loan Documents shall be construed as having been modified by Borrower's failure to make the payments required under the Loan Documents.

All inquiries concerning the Loan Documents and any amounts due thereunder should be directed to me at the firm of Busch White Norton, LLP (770-790-3550). I hereby give notice to you that I am empowered to negotiate, amend and modify all terms of the Loan Documents with you. A copy of this letter is being sent to you by certified mail. Refusal of delivery is deemed, under the law, to be equivalent to notice.

**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Sincerely,

Guillermo Todd

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

**NOTICE OF SALE UNDER POWER GEORGIA, DEKALB COUNTY**

By virtue of a Power of Sale contained in that certain Security Deed from **ONI ROBERTS AND FORREST G ROBERTS, JR.** to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.) ("PrimeStar"), dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31, DeKalb County, Georgia Records (as amended, modified, or revised from time to time, "Security Deed"), said Security Deed having been given to secure a Note in the original principal amount of THREE HUNDRED TWO THOUSAND AND NO/100THS DOLLARS ($302,000.00) (as amended, modified, or revised from time to time, the "Note"), with interest thereon as provided for therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of DEKALB COUNTY, Georgia, within the legal hours for sale on the first Tuesday in January, 2015, all property described in said Security Deed, including, but not limited to, declarant's rights, if any, and, without limitation, the following described property (or so much thereof as has not, as of said first Tuesday, by duly executed and recorded instrument, previously been released from the lien of the Security Deed):

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLATS ARE HEREBY REFERENCED TO FOR THE PURPOSE OF INCORPORATING HEREIN.**

The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed and Note, including, but not limited to, the nonpayment of the indebtedness as and when due. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys' fees and other payments provided for under the terms of the Security Deed and Note.

Said property will be sold subject to the following items which may affect the title to said property: all zoning ordinances; matters which would be disclosed by an accurate survey or by inspection of the property; any outstanding taxes, including, but not limited to, ad valorem taxes, which constitute liens upon said property; special assessments; and all outstanding bills for public utilities which constitute liens upon said property; To the best of the knowledge and belief of the undersigned, the party in possession of the property is ONI ROBERTS AND FORREST G ROBERTS, JR. or tenant(s).

The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the United States Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed. PrimeStar and its counsel are acting as debt collectors. Any information obtained will be used for that purpose.

PrimeStar as Attorney-in-Fact for **ONI ROBERTS AND FORREST G ROBERTS, JR.**
Contact: Guillermo Todd, Esq.
Busch White Norton, LLP
3330 Cumberland Boulevard, Suite 300
Atlanta, Georgia 30339
Telephone (770) 790-3550



B
W
N
Busch
White
Norton

**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

December 31, 2014

**VIA-CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Oni Roberts
Forrest G Roberts, Jr.
5371 Charity Way
Stone Mountain, Georgia 30083

Re: Promissory Note (as amended, modified, or revised from time to time, the "Note") dated July 25, 2006 in the original principal amount of $302,000.00 by Oni Roberts and Forrest G Roberts, Jr. ("Borrower") and in favor of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), secured by that certain Security Deed dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31 of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as amended, modified, or revised from time to time, the "Security Deed"); each of the above described instruments being referred to herein as the "Loan Documents"

Dear Borrower:

As indicated by my letter of December 31, 2014, this firm represents Lender with respect to the captioned matters. You have committed a monetary default under the Loan Documents.

As a result, I now disclose to you the following, in accordance with the requirements of the Federal Debt Collection Practices Act:

(1) The amount of the debt is $310,922.69. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (770) 790-

3550.

(2) The name of the creditor is Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.).

(3) Please note that unless you dispute the validity of this debt within 30 days after the date of this letter, I will assume the debt to be valid.

(4) Please note that if you notify me in writing within the above 30 day-period that you disputes all or any portion of the debt, I will obtain a verification of the debt, or a copy of the judgment (as the case may be in accordance with the facts surrounding this case), and will mail a copy of such verification or the judgment to you (as the case may be in accordance with the facts surrounding this case).

(5) Please note that if you provide me a written request for the name of the creditor within the same 30 day-period, I will provide such name to you if it is different from Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust.

All inquiries concerning the Loan Documents and any amounts due thereunder should be directed to me at the firm of Busch White Norton, LLP (770-790-3550). I hereby give notice to you that I am empowered to negotiate, amend and modify all terms of the Loan Documents with you. A copy of this letter is being sent to you by certified mail. Refusal of delivery is deemed, under the law, to be equivalent to notice.

**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Sincerely,

Guillermo Todd



**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

April 22, 2015

**VIA-CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Oni Roberts
Forrest G Roberts, Jr.
5371 Charity Way
Stone Mountain, Georgia 30083

Re: **Promissory Note (as amended, modified, or revised from time to time, the "Note") dated July 25, 2006 in the original principal amount of $302,000.00 by Oni Roberts and Forrest G Roberts, Jr. ("Borrower") and in favor of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), secured by that certain Security Deed dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31 of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as amended, modified, or revised from time to time, the "Security Deed"); each of the above described instruments being referred to herein as the "Loan Documents"**

Dear Borrower:

As indicated by my letter of April 22, 2015, this firm represents Lender with respect to the captioned matters. You have committed a monetary default under the Loan Documents.

As a result, I now disclose to you the following, in accordance with the requirements of the Federal Debt Collection Practices Act:

(1) The amount of the debt is $319,132.15. Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you before depositing the check for collection. For further information, write the undersigned or call (770) 790-

3550.

(2) The name of the creditor is Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.).

(3) Please note that unless you dispute the validity of this debt within 30 days after the date of this letter, I will assume the debt to be valid.

(4) Please note that if you notify me in writing within the above 30 day-period that you disputes all or any portion of the debt, I will obtain a verification of the debt, or a copy of the judgment (as the case may be in accordance with the facts surrounding this case), and will mail a copy of such verification or the judgment to you (as the case may be in accordance with the facts surrounding this case).

(5) Please note that if you provide me a written request for the name of the creditor within the same 30 day-period, I will provide such name to you if it is different from Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust.

All inquiries concerning the Loan Documents and any amounts due thereunder should be directed to me at the firm of Busch White Norton, LLP (770-790-3550). I hereby give notice to you that I am empowered to negotiate, amend and modify all terms of the Loan Documents with you. A copy of this letter is being sent to you by certified mail. Refusal of delivery is deemed, under the law, to be equivalent to notice.

**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Sincerely,

Guillermo Todd



B
W
N
Busch
White
Norton

**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

May 27, 2015

**VIA-CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Oni Roberts
Forrest G. Roberts, Jr.
5371 Charity Way
Stone Mountain, Georgia 30083

Re: Promissory Note (as amended, modified, or revised from time to time, the "Note") dated July 25, 2006 in the original principal amount of $302,000.00 by Oni Roberts and Forrest G. Roberts, Jr. ("Borrower") and in favor of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), secured by that certain Security Deed dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31 of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as amended, modified, or revised from time to time, the "Security Deed"); each of the above described instruments being referred to herein as the "Loan Documents"

Dear Borrower:

As you know, this firm represents Lender with respect to the captioned matters. Borrower has committed a monetary default under the Loan Documents in that Borrower has not paid the debt service due under the Loan Documents for several months. As a result, Borrower has committed a monetary default under the Loan Documents, thereby causing the acceleration, attorney's fees and foreclosure provisions of this letter to apply. Nonetheless, this letter is to give notice to you that you may cure this monetary default by paying all accrued but unpaid interest, late fees, and costs incurred by Lender to date in connection with the Loan Documents and the real estate secured by the Loan Documents in the amount of $71,756.78.

Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater. Hence, if you pay the amount shown above, an adjustment may be necessary after we receive your check, in which event we will inform you

before depositing the check for collection. For further information, write the undersigned or call (770) 790-3550.

Since the above amount was not paid within thirty (30) days from the date of our prior letter to you dated April 22, 2015, then in accordance with the terms and conditions of the Loan Documents, the entire amount of the present outstanding balance of both the principal and accrued interest at the default rate on indebtedness evidenced by the Loan Documents and secured by the Loan Documents, all late charges incurred on the indebtedness evidenced by the Loan Documents, all interest incurred at the default rate specified in the Loan Documents and all other charges provided for under the Loan Documents (all such monies due on said indebtedness hereinafter collectively referred to as the "Amounts Due") shall be considered, without further action or notice by Lender or its counsel, declared immediately due and payable. After this acceleration has occurred Borrower still has the right to reinstate and bring a court action should Borrower assert the non-existence of a default or any other defense to acceleration and sale under Georgia law.

Unless the Amounts Due are paid in full within ten (10) days from the date of this letter, the provision for attorneys' fees in the Loan Documents will be enforced, as provided by Official Code of Georgia Annotated ("O.C.G.A.") Section 13-1-11, and you will be required to pay such stipulated attorneys' fees. The payment for attorneys' fees will be in addition to your obligation to pay the Amounts Due. If you pay the Amounts Due within ten (10) days after the date of this letter, you will not be required to pay the attorneys' fees. In other words, you can avoid the additional obligation of attorneys' fees if the Amounts Due are fully paid within ten (10) days from the date of this letter.

This letter shall also serve as notice that Lender intends to initiate foreclosure proceedings against the Property on the first Tuesday of June, 2015 and may also exercise its other rights under the Loan Documents, which rights will be in addition to the rights which are exercised, noticed or discussed herein. A copy of the Notice of Sale Under Power which has been submitted to The Champion for publication is enclosed herewith.

Any money expended by Lender in accordance with the terms and conditions of the Loan Documents shall be added to the outstanding principal indebtedness secured by the Loan Documents, shall bear interest at the delinquency rate specified in the Loan Documents, shall be deemed secured by the Loan Documents, and shall be subject to the aforementioned provisions contained in the Loan Documents governing the payment of attorneys' fees. No attorneys' fees shall be due for such additional money expended until after ten days from your receipt of notice of such additional Amounts Due, and you will have an opportunity to avoid such additional attorneys' fees by the payment of the additional Amounts Due within ten days from receipt of notice.

Notice is also hereby given to you pursuant to O.C.G.A. Section 13-4-4, that Lender continues to rely on and hereby continues to require strict compliance with each and every term and condition of the Loan Documents and the other documents evidencing and securing the indebtedness evidenced by the Secured Indebtedness, and none of the terms or conditions contained in said Loan Documents shall be construed as having been modified by Borrower's failure to make the payments required under the Loan Documents.

All inquiries concerning the Loan Documents and any amounts due thereunder should be directed to me at the firm of Busch White Norton, LLP (770-790-3550). I hereby give notice to you that I am empowered to negotiate, amend and modify all terms of the Loan Documents with you. A copy of this letter is being sent to you by certified mail. Refusal of delivery is deemed, under the law, to be equivalent to notice.

**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

Sincerely,

Guillermo Todd

**This is an attempt to collect a debt and any information obtained will be used for that purpose.**

NOTICE OF SALE UNDER POWER GEORGIA, DEKALB COUNTY

By virtue of a Power of Sale contained in that certain Security Deed from **ONI ROBERTS AND FORREST G ROBERTS, JR.** to Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (by virtue of that certain Assignment of Security Deed, filed and recorded December 26, 2014 in Deed Book 24720, Page 754, DEKALB COUNTY, Georgia Records, assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A.) ("PrimeStar"), dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31, DeKalb County, Georgia Records (as amended, modified, or revised from time to time, "Security Deed"), said Security Deed having been given to secure a Note in the original principal amount of THREE HUNDRED TWO THOUSAND AND NO/100THS DOLLARS ($302,000.00) (as amended, modified, or revised from time to time, the "Note"), with interest thereon as provided for therein, there will be sold at public outcry to the highest bidder for cash before the courthouse door of DEKALB COUNTY, Georgia, within the legal hours for sale on the first Tuesday in June, 2015, all property described in said Security Deed, including, but not limited to, declarant's rights, if any, and, without limitation, the following described property (or so much thereof as has not, as of said first Tuesday, by duly executed and recorded instrument, previously been released from the lien of the Security Deed):

**ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 74 OF THE 18TH DISTRICT OF DEKALB COUNTY, GEORGIA, AND BEING LOT 8, IVY RIDGE SUBDIVISION, AS PER PLAT RECORDED IN PLAT BOOK 118, PAGES 43-44, DEKALB COUNTY, GEORGIA RECORDS, AS REVISED AT PLAT BOOK 118, PAGE 96, DEKALB COUNTY, GEORGIA RECORDS, TO WHICH PLATS ARE HEREBY REFERENCED TO FOR THE PURPOSE OF INCORPORATING HEREIN.**

The indebtedness secured by said Security Deed has been and is hereby declared due because of default under the terms of said Security Deed and Note, including, but not limited to, the nonpayment of the indebtedness as and when due. The indebtedness remaining in default, this sale will be made for the purpose of paying the same, all expenses of the sale, including attorneys' fees and other payments provided for under the terms of the Security Deed and Note.

Said property will be sold subject to the following items which may affect the title to said property: all zoning ordinances; matters which would be disclosed by an accurate survey or by inspection of the property; any outstanding taxes, including, but not limited to, ad valorem taxes, which constitute liens upon said property; special assessments; and all outstanding bills for public utilities which constitute liens upon said property; To the best of the knowledge and belief of the undersigned, the party in possession of the property is ONI ROBERTS AND FORREST G ROBERTS, JR. or tenant(s).

The sale will be conducted subject (1) to confirmation that the sale is not prohibited under the United States Bankruptcy Code and (2) to final confirmation and audit of the status of the loan with the holder of the Security Deed. PrimeStar and its counsel are acting as debt collectors. Any information obtained will be used for that purpose.

PrimeStar as Attorney-in-Fact for **ONI ROBERTS AND FORREST G ROBERTS, JR.**
Contact: Guillermo Todd, Esq.
Busch White Norton, LLP
3330 Cumberland Boulevard, Suite 300
Atlanta, Georgia 30339
Telephone (770) 790-3550



**This law firm is acting as a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose.**

August 21, 2015

**VIA-CERTIFIED MAIL – RETURN RECEIPT REQUESTED**

Oni Roberts
Forrest G Roberts, Jr.
5371 Charity Way
Stone Mountain, Georgia 30083

Re: Promissory Note (as amended, modified, or revised from time to time, the "Note") dated July 25, 2006 in the original principal amount of $302,000.00 by Oni Roberts and Forrest G Roberts, Jr. ("Borrower") and in favor of Wilmington Savings Fund Society, FSB, not in its individual capacity but solely as Trustee for the PrimeStar-H Fund I Trust (assignee of U.S. Bank National Association, as Trustee for Prof-2013-S3 Remic Trust III as assignee of Bank of America, N.A., "Lender"), secured by that certain Security Deed dated July 25, 2006, filed and recorded August 15, 2006 in Deed Book 19045, Page 31 of the Official Records of the Clerk of Superior Court of DeKalb County, Georgia (as amended, modified, or revised from time to time, the "Security Deed"); each of the above described instruments being referred to herein as the "Loan Documents"

Dear Borrower:

This firm represents Lender with respect to the captioned matters. Borrower has committed a monetary default under the Loan Documents in that Borrower has not paid the debt service due under the Loan Documents for several months. As a result, Borrower has committed a default under the Loan Documents, thereby causing the acceleration, attorney's fees and foreclosure provisions of this letter to apply. Nonetheless, this letter is to give notice to you that you may cure this default by paying all accrued but unpaid interest, late fees, and costs incurred by Lender to date in connection with the Loan Documents and the real estate secured by the Loan Documents in the amount of $78,776.47

IN THE SUPERIOR COURT OF DEKALB COUNTY,
STATE OF GEORGIA

ONI ROBERTS CASE NO: 18CV10026

PLAINTIFF,

Vs.

BANK OF AMERICA, CORPORATION
FAY SERVICING, LLC; US BANCORP;
STATEBRIDGE COMPANY, LLC;
WILMINGTIN SAVINGS FUND SOCIETY,
FSB, (As Trustee for the Prime Star-H Fund
I Trust); PRIMESTAR FUND, I TRS, INC;
BRET J. CHANESS, ESQ.

DEFENDANT,

AFFIDAVIT OF SERVICE

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Donnie C. Briley, who, first being duly sworn, on oath deposes and states that he is citizen of the United States and 18 years of age or older and is a party having no interest in the above-styled case. Affiant further states that on October 15th 2018 at 2:36 p m, I served StateBridge Company, LLC by serving Jayne Rauser who is authorized to accept for their registered agent, Incorp Services, Inc. at her place of business located at 2000 Riveredge Pkwy., N.W., Suite 885 Atlanta, GA 30328 with the following: SUMMONS, VERIFIED COMPLAINT, AFFIDAVIT OF POVERTY and GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM.

Jayne Rauser fit's the following physical description: White female, 50-60 years old, 5'4"-5'6" in height, 155-165 pounds, and Salt and pepper hair.

I declare under penalty of perjury that the foregoing is true and correct.

This 16th of October, 2017.

Process Server
Donnie C. Briley
2110 Spruce Lake Dr.
Dacula, GA 30019

Subscribed and sworn to
Before me this 16th
Day of October, 2018,
And notarized by me on this date.

Linda S Kieffer
Notary Public
Gwinnett County, Georgia
My Commission Expires
August 9, 2022

IN THE SUPERIOR COURT OF DEKALB COUNTY,
STATE OF GEORGIA

ONI ROBERTS

CASE NO: 18CV10026

PLAINTIFF,

Vs.

BANK OF AMERICA, CORPORATION
FAY SERVICING, LLC; US BANCORP;
STATEBRIDGE COMPANY, LLC;
WILMINGTIN SAVINGS FUND SOCIETY,
FSB, (As Trustee for the Prime Star-H Fund
I Trust); PRIMESTAR FUND, I TRS, INC;
BRET J. CHANESS, ESQ.

DEFENDANT,

AFFIDAVIT OF SERVICE

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Donnie C. Briley, who, first being duly sworn, on oath deposes and states that he is citizen of the United States and 18 years of age or older and is a party having no interest in the above-styled case. Affiant further states that on October 16th 2018 at 10:00 a m, I served PrimeStar Fund I, TRS, Inc. by serving Linda Banks who is authorized to accept for their registered agent, CT Corporation Systems at her place of business located at 289 S. Culver St. Lawrenceville, GA 30046 with the following: SUMMONS, VERIFIED COMPLAINT, AFFIDAVIT OF POVERTY and GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM.

Linda Banks fit's the following physical description: White female, 60-70 years old, 5'1" in height, 120-130 pounds, and Salt and pepper hair.

I declare under penalty of perjury that the foregoing is true and correct.

This 16th of October, 2017.

Process Server
Donnie C. Briley
2110 Spruce Lake Dr.
Dacula, GA 30019

Subscribed and sworn to
Before me this 16th
Day of October, 2018,
And notarized by me on this date.

Linda S Kieffer
Notary Public
Gwinnett County, Georgia
My Commission Expires
August 9, 2022

FILED 10/16/2018 1:11 PM CLERK OF SUPERIOR COURT DEKALB COUNTY GEORGIA TD

IN THE SUPERIOR COURT OF DEKALB COUNTY,
STATE OF GEORGIA

ONI ROBERTS CASE NO: 18CV10026

PLAINTIFF,

Vs.

BANK OF AMERICA, CORPORATION
FAY SERVICING, LLC; US BANCORP;
STATEBRIDGE COMPANY, LLC;
WILMINGTIN SAVINGS FUND SOCIETY,
FSB, (As Trustee for the Prime Star-H Fund
I Trust); PRIMESTAR FUND, I TRS, INC;
BRET J. CHANESS, ESQ.

DEFENDANT,

AFFIDAVIT OF SERVICE

Personally appeared before me, the undersigned officer duly authorized to administer oaths, Donnie C. Briley, who, first being duly sworn, on oath deposes and states that he is citizen of the United States and 18 years of age or older and is a party having no interest in the above-styled case. Affiant further states that on October 16th 2018 at 10:00 a m, I served Bank of America Corporation by serving Linda Banks who is authorized to accept for their registered agent, CT Corporation Systems at her place of business located at 289 S. Culver St. Lawrenceville, GA 30046 with the following: SUMMONS, VERIFIED COMPLAINT, AFFIDAVIT OF POVERTY and GENERAL CIVIL AND DOMESTIC RELATIONS CASE FILING INFORMATION FORM.

Linda Banks fit's the following physical description: White female, 60-70 years old, 5'1" in height, 120-130 pounds, and Salt and pepper hair.

I declare under penalty of perjury that the foregoing is true and correct.

This 16th of October, 2017.

Process Server
Donnie C. Briley
2110 Spruce Lake Dr.
Dacula, GA 30019

Subscribed and sworn to
Before me this 16th
Day of October, 2018,
And notarized by me on this date.

Linda S Kieffer
Notary Public
Gwinnett County, Georgia
My Commission Expires
August 9, 2022